Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Robert E. Weisenburger, SBN 305682
 rweisenburger@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| JOHN DOE, an individual, et al., | Case No.: 3:21-cv-01809-CAB (LL) |
|---|---|
| Plaintiffs, | **Memorandum of Points & Authorities in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously** |
| v. | |
| SAN DIEGO UNIFIED SCHOOL DISTRICT, et al., | |
| Defendants. | |
| | Judge: Hon. Cathy Ann Bencivengo |
| | Courtroom: 15A |
| | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 8

FACTUAL & PROCEDURAL HISTORY ........................................................ 8

LEGAL STANDARD ...................................................................................... 10

ARGUMENT ................................................................................................... 11

    1.    Legal & Jurisprudential Background ................................................. 11

    2.    Likelihood of Success on the Merits & Irreparable Harm ................. 15

        2.1.    The Vaccination Roadmap burdens Plaintiffs' free exercise of their religious beliefs............................................... 16

        2.2.    The Vaccination Roadmap is not neutral and of general application because it imposes more stringent burdens on Religious Exercise than other activities ................ 17

        2.3.    The Vaccination Roadmap is not neutral because it references Religious Exercise for disfavor .............................. 19

        2.4.    The Vaccination Roadmap is not of general application because it contains a system of individualized exemptions...................................................... 20

        2.5.    The Vaccination Roadmap cannot satisfy Strict Scrutiny, both facially and as applied. ..................................... 21

    3.    Balance of Harms & Public Interest ................................................. 24

    4.    Request for Denial of Relief Pending Appeal.................................... 25

    5.    Request for Leave to Proceed Pseudonymously ............................... 25

    6.    The Court Should Dispense with a Bond Requirement................... 29

CONCLUSION................................................................................................ 30

2

Memorandum of Points & Authorities ISO Plaintiffs' Ex Parte Appl. for a TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

# TABLE OF AUTHORITIES

## CASES

*Agudath Israel of Am. v. Cuomo*, ....................................................................... 11, 21
    983 F.3d 620 (2d Cir. 2020)

*All. for the Wild Rockies v. Cottrell*, ................................................................ 10, 11
    632 F.3d 1127 (9th Cir. 2011)

*Bible Club v. Placentia-Yorba Linda Sch. Dist.*, ...................................................... 29
    573 F. Supp. 2d 1291 (C.D. Cal. 2008)

*Brach v. Newsom*, .............................................................................................. 14, 22, 23
    6 F.4th 904 (9th Cir. 2021)

*Brown v. Entertainment Merchs. Ass'n*, ................................................................. 21
    564 U.S. 786 (2011)

*Buck v. Bell*, ........................................................................................................... 13
    274 U.S. 200 (1927)

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, ............................ 16, 18, 19, 20
    508 U.S. 520 (1993)

*City of Boerne v. Flores*, ......................................................................................... 21
    521 U.S. 507 (1997)

*Cmty. House, Inc. v. City of Boise*, ......................................................................... 24
    490 F.3d 1041 (9th Cir. 2007)

*Communities for Equity v. Michigan High Sch. Athletic Ass'n*, ........................... 10
    26 F. Supp. 2d 1001 (W.D. Mich. 1998)

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, ........................................... 14, 21, 22
    __ F. Supp. 3d __, 2021 WL 3891620 (W.D. Mich. 2021)

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, ................................. 15, 17, 21, 22, 24
    __ F.4th __, 2021 WL 4618519 (6th Cir. 2021)

*DiMartile v. Cuomo*, ............................................................................................... 25
    No. 1:20-CV-0859 (GTS/CFH), 2020 WL 4877239 (N.D.N.Y. Aug. 19, 2020)

*Doctor John's, Inc. v. Sioux City*, ......................................................................... 29
    305 F. Supp. 2d 1022 (N.D. Iowa 2004)

# TABLE OF AUTHORITIES — Continued

**Cases**

*Doe v. Smith,* ...................................................................................28
    105 F. Supp. 2d 40 (E.D.N.Y. 1999)

*Doe v. Stegall,* ...................................................................................28
    653 F.2d 180 (5th Cir. 1981)

*Does 1–3 v. Mills,* ...............................................................15, 18, 21 ,23
    ___ S. Ct. ___, 2021 WL 5027177 (2021)

*Does I thru XXIII v. Advanced Textile Corp.* ...............................25, 28
    ,214 F.3d 1058 (9th Cir. 2000)

*Dr. A. v. Hochul,* ...........................................................................*passim*
    ___ F. Supp. 3d ___, 2021 WL 4734404 (N.D.N.Y. 2021)

*E. Bay Sanctuary Covenant v. Trump,* ...............................................25
    932 F.3d 742 (9th Cir. 2018)

*Emp't Div. v. Smith,* .......................................................15, 18, 19, 20, 21
    494 U.S. 872 (1990)

*Espinoza v. Montana Dep't of Revenue,* ........................................19, 20
    140 S. Ct. 2246 (2020)

*Est. of Clayton v. Comm'r,* ...............................................................20
    976 F.2d 1486 (5th Cir. 1992)

*Ex Parte Milligan,* .......................................................................11, 12
    71 U.S. 2 (1866)

*Fraternal Ord. of Police Newark Lodge No. 12 v. City of Newark,* ...............18
    170 F.3d 359 (3d Cir. 1999)

*Friends of the Earth, Inc. v. Brinegar,* ...............................................29
    518 F.2d 322 (9th Cir. 1975)

*Fulton v. City of Philadelphia, Pennsylvania,* ..................................20
    141 S. Ct. 1868 (2021)

*Gateway City Church v. Newsom,* .....................................................14
    141 S. Ct. 1460 (2021)

## TABLE OF AUTHORITIES—Continued

### Cases

*Girouard v. United States,* ................................................................15
   328 U.S. 61 (1946)

*Gish v. Newsom,* ...............................................................................14
   141 S. Ct. 1290 (2021)

*Harvest Rock Church, Inc. v. Newsom,* ..........................................14
   141 S. Ct. 889 (2020)

*Holt v. Hobbs,* ...................................................................................22
   574 U.S. 352 (2015)

*Jacobson v. Commonwealth of Massachusetts,* .....................12, 13, 14
   197 U.S. 11 (1905)

*James v. Jacobson,* ...........................................................................28
   6 F.3d 233 (4th Cir. 1993)

*Jorgensen v. Cassiday,* .....................................................................29
   320 F.3d 906 (9th Cir. 2003)

*Marlowe v. LeBlanc,* .........................................................................25
   810 F. App'x 302 (5th Cir. 2020)

*Masterpiece Cakeshop Ltd. v. Colorado Civ. Rts. Comm'n,* ........19, 20
   138 S. Ct. 1719 (2018)

*Neal v. Bd. of Trustees of California State Universities,* ...............17
   198 F.3d 763 (9th Cir. 1999)

*Page v. Cuomo,* ................................................................................11
   478 F. Supp. 3d 355 (N.D.N.Y. 2020)

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency,* ...............29
   766 F.2d 1319 (9th Cir. 1985)

*Roman Cath. Archbishop of Washington v. Bowser,* ..................15, 16
   __ F. Supp. 3d __, 2021 WL 1146399 (D.D.C. 2021)

*Roman Cath. Diocese of Brooklyn v. Cuomo,* ...........................*passim*
   141 S. Ct. 63 (2020)

5

Memorandum of Points & Authorities ISO Plaintiffs' Ex Parte Appl. for a
TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

1

## TABLE OF AUTHORITIES—Continued

2 **Cases**

3 *Salgado v. Iqvia, Inc.*, .................................................................26
4     No. 18-CV-2785-BAS-WVG, 2020 WL 1322949 (S.D. Cal. Mar. 20, 2020)

5 *Sammartano v. First Judicial Dist. Court*, ...............................24
6     303 F.3d 959 (9th Cir. 2002)

7 *Save Our Sonoran, Inc. v. Flowers*, ........................................29
    408 F.3d 1113 (9th Cir. 2005)

8 *Sherbert v. Verner*, ...............................................................16, 17
9     374 U.S. 398 (1963)

10 *South Bay United Pentecostal Church v. Newsom*, ................25
11     494 F. Supp. 3d 785 (S.D. Cal. 2020)

12 *South Bay United Pentecostal Church v. Newsom*, ................11
13     985 F.3d 1128 (9th Cir. 2021)

14 *South Bay United Pentecostal Church v. Newsom*, ..........*passim*
15     141 S. Ct. 716 (2021)

16 *South Bay United Pentecostal Church v. Newsom*, ................25
17     141 S. Ct. 2563 (2021)

18 *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, ....11
19     240 F.3d 832 (9th Cir. 2001)

20 *Tandon v. Newsom*, .............................................................*passim*
    141 S. Ct. 1294 (2021)

21
22 *Thomas v. Rev. Bd. of Indiana*, ...........................................16, 17
    450 U.S. 707 (1981)

23
24 *Trinity Lutheran Church of Columbia, Inc. v. Comer*, ..........16, 19
    137 S. Ct. 2012 (2017)

25 *United States v. Jordan*, .............................................................24
26     No. 3:18-CR-04496-GPC, 2020 WL 6504958 (S.D. Cal. Nov. 5, 2020)

27 *United States v. Murphy*, ...........................................................24
28     No. 15-CR-03163-CAB, 2021 WL 254267 (S.D. Cal. Jan. 26, 2021)

6

Memorandum of Points & Authorities ISO Plaintiffs' Ex Parte Appl. for a
TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

# TABLE OF AUTHORITIES—CONTINUED

## CASES

*United States v. Virginia,* ..................................................................................21
    518 U.S. 515 (1996)

*W. Va. State Bd. of Educ. v. Barnette,* .................................................................12
    319 U.S. 624 (1943)

*Whitlow v. California,* ..............................................................................13, 18, 19
    203 F. Supp. 3d 1079 (S.D. Cal. 2016)

*Winter v. Natural Res. Def. Council,* ...................................................................10
    555 U.S. 7 (2008)

## FEDERAL RULES

Fed. R. App. P. 8(a)(1)(C) .....................................................................................25

Fed. R. Civ. P. 5.2(a)(3) .........................................................................................26

Fed. R. Civ. P. 10(a)(1) ..........................................................................................25

Fed. R. Civ. P. 17(c) ..............................................................................................10

Fed. R. Civ. P. 65(c) ..............................................................................................29

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. I .............................................................................................15

## INTRODUCTION

As explained in the introduction to the Complaint, this case presents the natural next step of the Supreme Court's three COVID-19 emergency opinions in *Roman Catholic Diocese*, *South Bay United Pentecostal Church*, and *Tandon*. In those opinions, the Supreme Court made clear that COVID-19 can never be used as an excuse to trample on religious rights. This means that if exemptions to COVID-19 rules are made for secular purposes, equal or greater exemptions must be made for religious purposes.

This is a simple rule, and following five rebukes of the Ninth Circuit, California and Governor Newsom finally chose to follow it. (*See* Verif. Compl., ¶ 36.) Defendants San Diego Unified School District, its Board of Education, and its Superintendent, however, seem to not understand this simple rule. On September 28, 2021, they imposed a COVID-19 vaccine mandate and explicitly stated that religious faith is no excuse to compliance: students with disfavored religious beliefs are not welcome.

This mandate is unconstitutional, both facially and as applied, and is causing real harm to real students—including Plaintiff Jill Doe—with no real scientific benefit to anybody. As Plaintiffs' preeminent experts make clear, mandating COVID-19 vaccinations for students is simply bad public health policy. Plaintiffs thus now apply to this Court for a temporary restraining order preventing Defendants from enforcing their COVID-19 vaccine mandate against them, seeking relief in advance of the **November 29, 2021** deadline to take the first dose of the Pfizer vaccine.

## FACTUAL & PROCEDURAL HISTORY

No other State besides California requires vaccination from COVID-19 for students to attend school. (*See* Verif. Compl., Ex. 6.[1]) Even in California, the State-

---

[1] Exhibits 1–7 are attached to the Verified complaint. Exhibits 8 onward are attached to the declaration of Jeffrey M. Trissell, Esq.

wide mandate makes exemptions "for both medical reasons and personal beliefs." (*Id*. at ¶ 36 & Ex. 7.) Nevertheless, in response to several other school districts imposing a COVID-19 vaccine mandate (*see id*. at ¶¶ 25–27), on Tuesday, September 28, 2021, San Diego Unified School District voted to impose a COVID-19 vaccination requirement for both students and staff—without any exemption for religious beliefs. (*Id*. at ¶¶ 28–35.) For students, the mandate only applies if there is a fully FDA approved vaccine for the age group—currently age 16 and up. (*Id*. at ¶¶ 23, 29.) Students and staff need to be fully vaccinated by December 20, 2021. (*Id*. at ¶ 29.)

According to SDUSD's Vaccination Roadmap, SDUSD staff are not required to be vaccinated if their health or religion preclude it. (*Id*. at ¶¶ 3, 59 & Ex. 3, p.3.) If a student's faith precludes her from receiving a COVID-19 vaccination, however, she must enroll in independent online study. (*Id*. at ¶¶ 28, 32 & Ex. 1, p.15.) Only if a student's health precludes vaccination may she continue to attend school. (*Id*. at ¶ 55 & Ex. 1, p.15.) Further, certain categories of students—foster youth, migrant youth, homeless youth, military youth, or students with an IEP—need not get vaccinated regardless of any specific objection because the burden on them is too onerous. (*Id* at ¶¶ 30–31 & Ex. 1, p.15.)

Currently, there is only one vaccine approved for children age 16 and up—the Pfizer vaccine. (*Id*. at ¶ 29.) That vaccine is a double-dose vaccine requiring that students get the first dose, at the latest, by November 29 in order to receive the second dose by the December 20, 2021 deadline. (*Id*. at ¶ 29 & Ex. 1, pp. 8, 13.)

Plaintiffs are a devout Christian family, with a 16-year old daughter (Jill Doe) attending Scripps Ranch High School within the San Diego Unified School District. (*Id*. at ¶¶ 8–10, 39.) Plaintiffs' faith precludes them from taking any of the currently available COVID-19 vaccines. (Verif. Compl., ¶¶ 24, 40–43; Jill Doe Decl., ¶¶ 4–5; Bhattacharya Decl., ¶¶ 62–63.) Plaintiff Jill Doe is a preeminent athlete who is hoping to obtain a college sports scholarship through performing well in her sports

this year. (Verif. Compl., ¶ 41; Jill Doe Decl., ¶ 6.) However, because she cannot receive any COVID-19 vaccine, SDUSD's mandate precludes her from participating in extracurricular activities at Scripps Ranch High School, dooming any chance of a sports scholarship. (Verif. Compl., ¶ 41.)

Plaintiff Jill Doe has already contracted and recovered from COVID-19, granting her greater immunity than from any COVID-19 vaccine. (Verif. Compl., ¶ 44; Jill Doe Decl., ¶ 5; *see also* French Decl., ¶¶ 40–48; Bhattacharya Decl., ¶¶ 12–26.)

In light of the conflict between SDUSD's Vaccination Roadmap and Plaintiffs' religious beliefs, on Friday, October 22, 2021, Plaintiffs initiated this action. (Doc No. 1.) Plaintiff Jane Doe brought suit on behalf of her daughter Plaintiff Jill Doe. *See* Fed. R. Civ. P. 17(c); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 26 F. Supp. 2d 1001, 1006 (W.D. Mich. 1998). Plaintiffs elected to proceed pseudonymously in light of their legitimate fear of retaliation from SDUSD officials and other Scripps Ranch students. (*See* Verif. Compl., ¶ 45; Jill Doe Decl., ¶ 6.)

Service of the complaint on all Defendants was completed on November 1, 2021. (Doc. Nos. 5 & 6.) Plaintiffs now move for a temporary restraining order and an order to show cause re: preliminary injunction.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without injunctive relief, (3) that the balance of harm tips in his favor, and (4) that a temporary restraining order is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)).

However, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), "[r]eligious adherents are not required

to establish irreparable harm independent of showing a Free Exercise Clause violation." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020). "Thus, when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, the [first] two prongs of the preliminary injunction threshold merge into one." *Page v. Cuomo*, 478 F. Supp. 3d 355, 364 (N.D.N.Y. 2020) (cleaned up). Similarly, "[w]here the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *South Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1149 (9th Cir. 2021), *abrogated on other grounds*, 141 S. Ct. 716 (2021).

The Ninth Circuit evaluates these factors through a "sliding scale approach." *All. for the Wild Rockies*, 632 F.3d at 1131. So, for example, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id*. The standards for issuing a temporary restraining order and a preliminary injunction are largely the same. *See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## ARGUMENT

### 1. LEGAL & JURISPRUDENTIAL BACKGROUND

Over 150 years ago, the Supreme Court in *Ex Parte Milligan*, 71 U.S. 2 (1866) held that the Founding Fathers took into consideration the fact that emergency circumstances could arise, where leaders would seek to deprive persons of their rights, and *because of that*, created the Bill of Rights: "Those great and good men [the Founding Fathers] foresaw that *troublous times would arise*, when rulers and people would become restive under restraint, and seek by sharp and decisive measures to accomplish ends deemed just and proper; and that the principles of constitutional liberty would be in peril, *unless established by irrepealable law.*" *Id*. at 120 (emphasis added).

According to the Supreme Court in *Milligan*, "[n]o doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any

1  provisions [of the Bill of Rights] can be suspended during any of the great exigencies
2  of government." *Id.* "The history of the world had taught them [the Founding
3  Fathers] that what was done in the past might be attempted in the future." *Id.*

4  "For this, and other equally weighty reasons, they secured the inheritance they
5  had fought to maintain, by incorporating in a written constitution the safeguards
6  which time had proved were essential to its preservation. *Not one of these safeguards*
7  *can the President, or Congress, or the Judiciary disturb,* except the one concerning the
8  writ of habeas corpus." *Id.* at 125 (emphasis added). "[T]hey limited the suspension
9  to one great right [the right of habeas corpus], and *left the rest to remain forever*
10  *inviolable.*" *Id.* (emphasis added). Indeed, "[t]he very purpose of a Bill of Rights was
11  to withdraw certain subjects from the vicissitudes of political controversy, to place
12  them beyond the reach of majorities and officials[.]" *W. Va. State Bd. of Educ. v.*
13  *Barnette*, 319 U.S. 624, 638 (1943).

14  Then, 115 years ago, the Supreme Court addressed whether the U.S.
15  Constitution protected an individual's right to refuse the smallpox vaccine in
16  contravention of a local ordinance—essentially a substantive due process claim.
17  *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). *Jacobson* explained
18  that governments can validly enact restrictions on substantive due process rights to
19  stop the spread of diseases, but they cannot do so in "an arbitrary, unreasonable
20  manner," or in a way that "go[es] so far beyond what was reasonably required for the
21  safety of the public." *Id.* at 28.

22  *Jacobson* was decided before most modern constitutional jurisprudence and is
23  therefore a bit of an outlier. It was decided decades before the First Amendment was
24  held to apply to the States by incorporation, and so it was not a Free Exercise case.
25  Yet, in the hundred years since it was decided, courts have relied on *Jacobson* to
26  dismiss objections of all stripes to compulsory vaccination laws. Whether based on
27  substantive due process, equal protection, or free exercise of religion, all objections
28  fail in the face of *Jacobson*. The Southern District of California was one such court.

1  *See Whitlow v. California*, 203 F. Supp. 3d 1079, 1083 (S.D. Cal. 2016) (Sabraw, J.)

2  (citing and discussing *Jacobson* prominently).

3      Further, *Jacobson* has an ugly history. Twenty years after it was decided, it was

4  held to stand for the proposition that the government has both the right and

5  responsibility to force people to comply with its paternal public health measures:

> It seems to be contended that in no circumstances could
> such an order be justified. . . . [But] Carrie Buck 'is the
> probable potential parent of socially inadequate offspring
> . . . [and] society will be promoted by her sterilization[.]'
> . . . It is better for all the world, if . . . society can prevent
> those who are manifestly unfit from continuing their kind.
> The principle that sustains compulsory vaccination is
> broad enough to cover cutting the Fallopian tubes. *Jacobson
> v. Massachusetts*, 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643, 3
> Ann. Cas. 765. Three generations of imbeciles are enough.

14  *Buck v. Bell*, 274 U.S. 200, 207 (1927).

15      Then, with the emergence of the COVID-19 pandemic, in April 2020, the

16  Southern District of California became the first venue in the nation to apply *Jacobson*

17  to Free Exercise challenges in a pandemic generally—outside the context of

18  compulsory vaccination. *Abiding Place Ministries, Inc. v. Wooten*, No. 3:20-cv-00683-

19  BAS-AHG, ECF Nos. 7 & 10 (S.D. Cal. Apr. 10, 2020), https://bit.ly/3DYZcmt.

20      This was a jurisprudential error that spread as its own pandemic through the

21  federal courts, and which took six emergency trips to the Supreme Court before it

22  was effectively stamped out—including five originating from California and the

23  Ninth Circuit.

24      The first case correcting the erroneous *Jacobson* course was the case of *Roman*

25  *Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In *Roman Catholic Diocese*,

26  concerning restrictions in New York, the Supreme Court made clear that *Jacobson*

27  has no applicability to Free Exercise rights. Despite being cited and discussed by

28  nearly single Circuit opinion addressing COVID-19 restrictions, in the

Supreme Court's majority opinion, *Jacobson* did not even rate a mention. *See Roman Catholic Diocese*, 141 S. Ct. at 66–67.

In his concurrence, Justice Gorsuch made clear that "appl[ying] . . . the traditional legal test associated with the right at issue [is] exactly what the Court does today[.]" *Id*. at 70 (Gorsuch, J., concurring). Justice Gorsuch explained that applying *Jacobson* "was mistaken from the start," and that it never should have operated as a "towering authority that overshadows the Constitution during a pandemic." *Id*. at 71.

Despite the strength and clarity of the decision in *Roman Catholic Diocese*, California did not get the message, and it took three more emergency orders, *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889 (2020); *Gish v. Newsom*, 141 S. Ct. 1290 (2021); *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021), and two more emergency opinions, *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294 (2021), before it came into compliance.

In the opinions, the Supreme Court exasperatedly noted that "[t]his is the fifth time the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise," *Tandon*, 141 S. Ct. at 1297, and explained that "[t]oday's order should have been needless; the lower courts in these cases should have followed the extensive guidance this Court already gave." *South Bay*, 141 S. Ct. at 719 (Statement of Gorsuch, J.).[2]

Finally following this guidance, lower courts in the Second and Sixth Circuits have begun striking down mandatory vaccination requirements that make no exception for religious beliefs. *See Dahl v. Bd. of Trustees of W. Michigan Univ.*, ___ F. Supp. 3d ___, 2021 WL 3891620, at *2 (W.D. Mich. 2021) ("*Dahl I*"); *stay pending*

---

[2] The reasoning in Justice Gorsuch's statement was joined by four other Justices, making it a binding opinion. *See Brach v. Newsom*, 6 F.4th 904, 933 n.26 (9th Cir. 2021) (noting that five Justices joined); *Roman Cath. Archbishop of Washington v. Bowser*, ___ F. Supp. 3d ___, 2021 WL 1146399, at *15 n.15 (D.D.C. 2021) (noting that five Justices joined); *id*. at *6 n.5; *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1296–97 (2021) (citing Justice Gorsuch's statement as if it were binding authority).

1   *appeal denied*, ___ F.4th ___, 2021 WL 4618519, at *2–5 (6th Cir. 2021) ("*Dahl II*");

2   *Dr. A. v. Hochul*, ___ F. Supp. 3d ___, 2021 WL 4734404, at *7–9 & n.6 (N.D.N.Y.

3   2021); Ex. 8, *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, ECF No. 65 (2d Cir.

4   2021), https://bit.ly/3nF48WX. One case from the First Circuit reached the

5   Supreme Court on an emergency application, and although the Court denied

6   extraordinary relief, it made clear that the denial was not an adjudication of the

7   merits. Rather, when the case reaches the Supreme Court in the normal course, the

8   views of the Second and Sixth Circuits will most definitely prevail. *Does 1–3 v. Mills*,

9   ___ S. Ct. ___, 2021 WL 5027177 (2021) (Barrett, J., concurring in denial of

10   application).[3]

11   **2. LIKELIHOOD OF SUCCESS ON THE MERITS & IRREPARABLE HARM**

12   The Free Exercise Clause of the First Amendment provides that "Congress

13   shall make no law respecting an establishment of religion, or *prohibiting the free*

14   *exercise thereof*." U.S. Const., amend. I (emphasis added). "Throughout the ages men

15   have suffered death rather than subordinate their allegiance to God to the authority of

16   the State. Freedom of religion guaranteed by the First Amendment is the product of

17   that struggle." *Girouard v. United States*, 328 U.S. 61, 68 (1946).

18   Under current constitutional jurisprudence, "the right of free exercise does

19   not relieve an individual of the obligation to comply with a 'valid and neutral law of

20   general applicability.' " *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990). Thus, a law

21   that is "neutral" and "generally applicable" is not subject to strict scrutiny even if it

22   has the effect of burdening a religious belief or practice. *See id.*

23   But if laws or regulations that burden religious belief "are not 'neutral' and of

24   'general applicability,' they must satisfy 'strict scrutiny,' and this means that they

25   must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath.*

26

27   _____

[3] *See Roman Cath. Archbishop of Washington*, 2021 WL 1146399, at *6 n.5 (discussing

28   how denial of emergency relief is usually prudential, and therefore not precedential).

*Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 (2017). As discussed below, the Vaccination Roadmap is both subject to, and cannot survive, strict scrutiny.

### 2.1.   The Vaccination Roadmap burdens Plaintiffs' free exercise of their religious beliefs.

"Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists." *Thomas v. Rev. Bd. of Indiana*, 450 U.S. 707, 717–18 (1981); *see also Sherbert v. Verner*, 374 U.S. 398, 404 (1963) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

Here, all three of the COVID-19 vaccines approved by the U.S. Food and Drug Administration are morally tainted by their connection to abortion. (Verif. Compl., ¶¶ 22–24; Bhattacharya Decl., ¶¶ 62–63.) Presently, there is an ongoing debate within many religious traditions about the morality of taking these vaccines, with respected authorities coming to different conclusions. (*See* Verif. Compl., ¶ 42 & n.27; Bhattacharya Decl., ¶ 63 & nn.73–75.) While there are "longstanding objections to vaccines derived using aborted tissue lines" (Bhattacharya Decl., ¶ 63 & n.75), other religious authorities assert that the remoteness of the abortion, coupled with the severity of the COVID-19 pandemic, make the vaccines morally licit on balance. (Bhattacharya Decl., ¶ 63 & n.73.)

For Plaintiffs, however, their faith tradition accepts the longstanding objection to vaccines that were developed or tested using material derived from abortions. (Verif. Compl., ¶ 42; Jill Doe Decl., ¶ 4.) Thus, none of them can receive the vaccines without violating their religious beliefs. (Verif. Compl., ¶ 42; Jill Doe Decl.,

16

¶ 4.) Forcing Plaintiffs to choose between having Jill Doe violate her religious beliefs to attend school, or adherence to those beliefs and exclusion from school, is a substantial burden on the free exercise of their religious beliefs. *See Thomas*, 450 U.S. at 717–18; *Sherbert*, 374 U.S. at 404.

The burden here is also particularly acute because Plaintiff needs to attend classes in-person and participate in extracurricular activities if she has any hope of earning a collegiate sports scholarship (Verif. Compl., ¶¶ 41, 54), with "the thrill of victory, the agony of defeat, and the many tangible benefits that flow from just being given a chance to participate in intercollegiate athletics." *Neal v. Bd. of Trustees of California State Universities*, 198 F.3d 763, 773 (9th Cir. 1999); *see Dahl II*, 2021 WL 4618519, at *3 ("Application of these benchmarks leads us to conclude that the University's failure to grant religious exemptions to plaintiffs burdened their free exercise rights. The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports.").

### 2.2. The Vaccination Roadmap is not neutral and of general application because it imposes more stringent burdens on Religious Exercise than other activities

A law or regulation is not "neutral" and "generally applicable" if the government "openly impose[s] more stringent regulations on religious institutions than on many businesses." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (Statement of Gorsuch, J.). In that context, there is no need to assess "whether a law reflects 'subtle departures from neutrality,' 'religious gerrymander[ing],' or 'impermissible targeting' of religion." *Id.* (cleaned up).

Stated differently, "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (original emphasis). "It is no answer that a State treats some comparable secular businesses or other activities

1  as poorly as or even less favorably than the religious exercise at issue." *Id*.
2  "[W]hether two activities are comparable for purposes of the Free Exercise Clause
3  must be judged against the asserted government interest that justifies the regulation
4  at issue. Comparability is concerned with the risks various activities pose, not the
5  reasons why people gather." *Id*. (citations omitted).

6  　　In other words, the current Supreme Court has fully endorsed then-Judge
7  Alito's rule in *Fraternal Order of Police*. There, the City of Newark required all police-
8  officers to be clean shaven, and only permitted medical exemptions—no religious
9  exemptions. After Sunni Muslim officers filed suit, Judge Alito held that "the
10 Department's decision to provide medical exemptions while refusing religious
11 exemptions is sufficiently suggestive of discriminatory intent so as to trigger
12 heightened scrutiny under *Smith* and *Lukumi*." *Fraternal Ord. of Police Newark Lodge*
13 *No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999); *see also Lukumi*, 508 U.S. at
14 543–45 (a law lacks general applicability if it is underinclusive); *Dr. A. v. Hochul*, 2021
15 WL 4734404, at *8 (New York's vaccine mandate lacked general applicability
16 because it was underinclusive in granting a medical exemption); *Does 1–3 v. Mills*,
17 2021 WL 5027177, at *2 (Gorsuch, J., dissenting from denial of application) (strict
18 scrutiny triggered because "Maine does not suggest a worker who is unvaccinated for
19 medical reasons is less likely to spread or contract the virus than someone who is
20 unvaccinated for religious reasons.").

21 　　Here, Defendants' Vaccination Roadmap specifically contains an exemption
22 for medical purposes, as well as various other prudential purposes, and then also
23 explicitly disclaims any intent to provide a religious exemption. (Verif. Compl., Ex. 1,
24 p.15.) Under *S. Bay* and *Tandon*, this triggers strict scrutiny review.[4]

25 ────────────────
26 [4] Of note, in *Whitlow*, this District held that California's state-wide vaccine mandate
27 did not violate the Free Exercise clause. But in that case, the plaintiffs "d[id] not
   dispute that SB 277 is a neutral law of general application." *Whitlow v. California*, 203
28 F. Supp. 3d 1079, 1086 n.4 (S.D. Cal. 2016). The court in *Whitlow* also stated that

### 2.3. The Vaccination Roadmap is not neutral because it references Religious Exercise for disfavor

"At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or *regulates or prohibits conduct because it is undertaken for religious reasons.*" *Lukumi*, 508 U.S. at 532 (emphasis added); *see also Trinity Lutheran*, 137 S. Ct. at 2021 ("Nor may a law regulate or outlaw conduct *because it is religiously motivated.*") (emphasis added). Any attempt to "impose special disabilities on the basis of religious views" is categorically forbidden. *Smith*, 494 U.S. at 877.

In this context, "[a] law lacks facial neutrality if it refers to a religious practice" unless it is clear that the words used were intended to have "a secular meaning." *Lukumi*, 508 U.S. at 533. Laws that fail to operate "without regard to religion" or that otherwise "single out the religious" for disadvantages "clear[ly] . . . impose[] a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Trinity Lutheran*, 137 S. Ct. at 2020–21.

Even if the government later attempts to identify a purportedly neutral explanation for its classification on the basis of protected characteristics, strict scrutiny is still required. "Status-based discrimination remains status based even if one of its goals or effects is" a valid, neutral goal. *See Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2256 (2020); *see also id.* at 2260 (explaining that this is an "unremarkable" proposition, and citing *Trinity Lutheran*, 137 S. Ct. at 2021).

Moreover, "even slight suspicion" that state action against religious conduct "stem[s] from animosity to religion or distrust of its practices" is enough to require government officials to reconsider. *Masterpiece Cakeshop Ltd. v. Colorado Civ. Rts.*

---

"nowhere in [*Smith*] does the Supreme Court state that if the government provides a secular exemption to a law or regulation that it must also provide a religious exemption." *Id.* at 1086. However, now in *Tandon* and *South Bay*, the Supreme Court has explicitly stated that.

19

Memorandum of Points & Authorities ISO Plaintiffs' Ex Parte Appl. for a TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

*Comm'n*, 138 S. Ct. 1719, 1731 (2018). This is shown where the government "assume[s] the worst" about religious motivations for accommodation "but assume[s] the best" about secular ones. *Tandon*, 141 S. Ct. at 1297 (quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020)).

Here, the Vaccination Roadmap is also not neutral because it directly references religion to identify it as an invalid basis for opting out of vaccination from COVID-19. *See Dr. A. v. Hochul*, 2021 WL 4734404, at *8 (New York's vaccine mandate lacked neutrality due to clear intent to disclaim a religious exemption). Throughout the Vaccination Roadmap, it goes out of its way to expressly disclaim any willingness to accommodate religious practices. (*See* Verif. Compl., Ex. 1, p.15; Ex. 5, p.12.) Under *Lukumi* and *Espinoza*, this triggers strict scrutiny review.

Further, Board President Barrera has stated that SDUSD will not offer personal belief or religious belief exemptions because "that creates kind of a loophole[.]" (Ex. 9.) The use of this "pejorative" term, *see Est. of Clayton v. Comm'r*, 976 F.2d 1486, 1499 (5th Cir. 1992), "assume[s] the worst" about religious-based objections and "assume[s] the best" of medical-based objections. *Tandon*, 141 S. Ct. at 1297. Under *Masterpiece* and *Tandon*, this triggers strict scrutiny review.

## 2.4.   The Vaccination Roadmap is not of general application because it contains a system of individualized exemptions

Recently, a unanimous U.S. Supreme Court explained that "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021) (quoting *Smith*, 494 U.S. at 884). For example, permitting "the government to grant exemptions based on the circumstances underlying each" situation, i.e., a "good cause" exemption, makes the law not generally applicable. *Id*. In that context, "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id*. (quoting *Smith*, 494 U.S.

at 884); *see also Dahl I*, 2021 WL 3891620, at *2 (university's COVID-19 vaccination mandate triggered strict scrutiny due to system of individualized exemptions); *Dahl II*, 2021 WL 4618519, at *3–4 (same).

Here, the Vaccination Roadmap is not of general application because it contains such a system of individualized exemptions for various youth if their circumstances make getting a COVID-19 vaccine a hardship, subject to the discretion of SDUSD officials. The Vaccination Roadmap specifically allows individuals with medical issues, foster youth, homeless youth, migrant youth, students with an IEP, and members of military families to not get vaccinated depending on an individualized exemption crafted by SDUSD officials. (*See* Verif. Compl., ¶¶ 30–31 & n.14, & Ex. 1, p.15.) This triggers strict scrutiny. *See Does 1–3 v. Mills*, 2021 WL 5027177, at *2 (Gorsuch, J., dissenting from denial of application) (Maine's individualized medical exemptions triggers strict scrutiny for religious objections).

### 2.5.   The Vaccination Roadmap cannot satisfy Strict Scrutiny, both facially and as applied.

Once strict scrutiny is triggered, the government must show that the regulations are " 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese*, 141 S. Ct. at 66. Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). "The government's justification 'must be genuine, not hypothesized or invented post hoc in response to litigation.' " *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Even when the government has identified a problem in need of solving, the restriction "must be actually necessary to the solution." *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 799 (2011). "That is a demanding standard." *Id*. And "because [the government] bears the risk of uncertainty, ambiguous proof will not suffice." *Id*. at 799–800 (citations omitted).

"[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too." *Tandon*, 141 S. Ct. at 1296–97; *see also Dr. A. v. Hochul*, 2021 WL 4734404, at *9 (noting that allowing others to remain unvaccinated for medical reasons defeats strict scrutiny); *Dahl II*, 2021 WL 4618519, at *5 (noting that allowing others to remain unvaccinated defeats strict scrutiny); *Dahl I*, 2021 WL 3891620, at *2 (same).

Further, evidence that the regulation is "more severe than what many other jurisdictions have done" "negat[es] any suggestion that [the government] adopted the least restrictive means of accomplishing its compelling interest." *Brach v. Newsom*, 6 F.4th 904, 932 (9th Cir. 2021). "[W]hen so many" other jurisdictions "offer an accommodation, [SDUSD] must, at a minimum, offer persuasive reasons why it believes that it must take a different course." *Holt v. Hobbs*, 574 U.S. 352, 369 (2015); *see also Dahl II*, 2021 WL 4618519, at *5 (citing *Brach*); *Dr. A. v. Hochul*, 2021 WL 4734404, at *9 (noting that since other jurisdictions have religious exemptions, strict scrutiny cannot be satisfied). Also, "broad measures that fail to take proper account of relevant differences between the school-age population and others are, by definition, not narrowly tailored." *Brach*, 6 F.4th at 932.

Here, the Vaccination Roadmap is not narrowly tailored to further any compelling governmental interest for several reasons. *First*, Defendants do not have a "compelling" interest. Defendants' interest in curbing the spread of COVID-19 is not meaningfully served by mandating vaccinations of children generally, nor through refusing to "recognize religious … exemptions for student immunizations." (Compl., Ex. 1, p.15; French Decl., ¶¶ 20–114; Bhattacharya Decl., ¶¶ 12–68.) Even if *mandating* children to get vaccinated against COVID-19 provides some minimal

benefit to society, "this interest cannot qualify as [compelling] forever." *Does 1–3 v. Mills*, 2021 WL 5027177, at *3 (Gorsuch, J., dissenting from denial of application). With "widely distributed vaccines," everybody who wants to get vaccinated has been, and so the government's interest appears less "compelling," and instead dangerous, for "[i]f human nature and history teach anything, it is that civil liberties face grave risks when governments proclaim indefinite states of emergency." *Id.* (Gorsuch, J., dissenting from denial of application).

*Second*, Defendants permit numerous exemptions to their Vaccination Roadmap. Defendants permit students to have in-person learning without vaccination for medical reasons, and if they fall within specific categories of youth. (Verif. Compl., Ex. 1, p.15.) Defendants also permit teachers and other employees to not get vaccinated if, for religious reasons, they cannot. (Verif. Compl., Ex. 3, p.3.) There is no logical reason why teachers' religious rights need to be protected more than students' religious rights when "Covid's effects exhibit a significant age gradient . . . having little impact, statistically speaking, on children." *Brach*, 6 F.4th at 932. The Ninth Circuit came to this conclusion after reviewing "a veritable library of declarations from physicians, academics, and public health commentators." *Id.* Defendants' "decision to deny a religious exemption in these circumstances doesn't just fail the least restrictive means test, it borders on the irrational." *Does 1–3 v. Mills*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting from denial of application).

*Third*, the Vaccination Roadmap is also not narrowly tailored to further any compelling governmental interest because it is "more severe than what many other jurisdictions have done[.]" *Brach*, 6 F.4th at 932. Thus, the fact that the State itself allows religious exemptions in other school districts, and no other State even has a COVID-19 vaccination requirement for students (Verif. Compl., Exs. 6–7), "negat[es] any suggestion that [SDUSD] adopted the least restrictive means of accomplishing its compelling interest." *Brach*, 6 F.4th at 932.

*Finally*, as applied especially to Plaintiff Jill Doe, the Vaccination Roadmap is not narrowly tailored to further any compelling governmental interest because Plaintiff Jill Doe already contracted and recovered from COVID-19. (Verif. Compl., ¶ 44.) This granted her natural immunity to COVID-19 greater than any vaccine. (*See* French Decl., ¶¶ 40–48; Bhattacharya Decl., ¶¶ 12–26); *cf. also United States v. Jordan*, No. 3:18-CR-04496-GPC, 2020 WL 6504958, at *3 (S.D. Cal. Nov. 5, 2020) (noting that convict who had recovered from COVID-19 no longer could justify a compassionate release argument because of present immunity); *United States v. Murphy*, No. 15-CR-03163-CAB, 2021 WL 254267, at *2 (S.D. Cal. Jan. 26, 2021) (similar).

### 3. BALANCE OF HARMS & PUBLIC INTEREST

The balance of hardships and the public interest also favor Plaintiffs. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002); *see also Dahl II*, 2021 WL 4618519, at *6 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights"); *Dr. A. v. Hochul*, 2021 WL 4734404, at *10 ("[T]he public interest lies with enforcing the guarantees enshrined in the Constitution").

With respect to the balance of hardships, where there are "serious First Amendment questions" at play, that "compels a finding that . . . the balance of hardships tips sharply in the plaintiffs' favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (cleaned up). In terms of concrete harm on Defendants' side, the only arguable harm is that granting Plaintiffs a religious exemption to the COVID-19 vaccine mandate will hinder Defendants' efforts to curb the spread of that disease. But this requires that Defendants show that granting Plaintiffs the same exemption (for religious reasons) that is offered to others (for medical or other reasons) would somehow cause different and greater harm to their efforts to curb the spread of COVID-19. *Dr. A. v. Hochul*, 2021 WL 4734404, at *10.

This, Defendants cannot do. (*See* French Decl., ¶¶ 20–39, 69–114; Bhattacharya Decl., ¶¶ 12–26, 35–51.) The balance of hardships favors Plaintiffs.

### 4.  REQUEST FOR DENIAL OF RELIEF PENDING APPEAL

Regardless of how this Court rules, Plaintiffs expect that the losing party will immediately appeal and seek either a stay of the injunction pending appeal or an affirmative injunction pending appeal. However, to do so, the moving party is required to seek such relief from this Court first. Fed. R. App. P. 8(a)(1)(C).

Determining whether to grant a motion for a stay pending appeal or an injunction pending appeal requires the same analysis as a motion for a temporary restraining order or preliminary injunction. *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 769 (9th Cir. 2018). At the same time that the Court rules on this application, Plaintiffs request that the Court rule on whether a stay or injunction pending appeal is appropriate, so that the appealing party is not forced to file contemporaneous motions with both this Court and the Ninth Circuit, *see Marlowe v. LeBlanc*, 810 F. App'x 302, 304 (5th Cir. 2020); *DiMartile v. Cuomo*, No. 1:20-CV-0859 (GTS/CFH), 2020 WL 4877239, *12 & n.8 (N.D.N.Y. Aug. 19, 2020), and can instead proceed directly to the Ninth Circuit. *See South Bay United Pentecostal Church v. Newsom*, 494 F. Supp. 3d 785, 804 (S.D. Cal. 2020) ("For the same reasons, the Court also confirms that an injunction pending appeal is not appropriate."), *vacated on other grounds*, 141 S. Ct. 2563 (2021).

### 5.  REQUEST FOR LEAVE TO PROCEED PSEUDONYMOUSLY

Though generally the names of parties to an action must be included in a pleading under Fed. R. Civ. P. 10(a)(1), use of pseudonyms in civil actions is allowed where "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (citations omitted).

In striking this balance, courts in the Ninth Circuit examine: (1) "the severity of the threatened harm;" (2) "the reasonableness of the anonymous party's fears;"

(3) "the anonymous party's vulnerability to such retaliation," (4) "the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice;" and (5) "the court must decide whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Id.* Like in other COVID-19 vaccine cases where leave to proceed pseudonymously was granted, here, each part of the *Advanced Textile* test is satisfied and weighs in favor of allowing the Doe family to proceed in pseudonym. *See Dr. A. v. Hochul*, 2021 WL 4734404, at *11.

*First* through *third*, Plaintiffs have significant privacy interests that need to be protected. Plaintiff Jill Doe is a minor, and so would normally only be identified in court filings through her initials. Fed. R. Civ. P. 5.2(a)(3). Further, this case concerns what should be private medical decisions, whose discussion is also normally sealed. *See Salgado v. Iqvia, Inc.*, No. 18-CV-2785-BAS-WVG, 2020 WL 1322949, at *2 (S.D. Cal. Mar. 20, 2020) ("Courts throughout the Ninth Circuit have recognized that the need to protect medical privacy generally qualifies as a compelling reason to seal records.").

Further, vaccine mandates are emerging in an atmosphere of fear and irrationality that is particularly disturbing and frightening to those who, for whatever reason, cannot get a COVID-19 vaccine. Plaintiffs seek leave to proceed pseudonymously out of fear that Plaintiff Jill Doe will be the subject of retaliation by SDUSD officials or students. When Plaintiffs first filed suit, there were numerous examples of irrational hate directed towards "anti-vaxxers" to justify their concern. These include:

- MSNBC guest Frank Schaeffer stating that those who are "anti-vaccine" are "bio terrorists" who should be the target of "Drone strikes." (Ex. 10.)
- On ABC News, commentator Margaret Hoover declared that the government, by withholding all benefits from the unvaccinated, should

"just make it almost impossible for people to—to live their lives without being protected and protecting the rest of us." (Ex. 11.)

- On CNN, commentator Don Lemon stated to Chris Cuomo that "[If you] don't get the vaccine, you can't go to the supermarket. Don't have the vaccine, can't go to the ball game. Don't have a vaccine, can't go to work. You don't have a vaccine, can't come here. No shirt, no shoes, no service." (Ex. 12.)

- On his late night "comedy" show Jimmy Kimmel stated that the unvaccinated who contract COVID should be allowed to die rather than being admitted to the hospital: "Rest in peace, wheezy." (Ex. 13.) The audience roared its approval. Kimmel offered no such advice to the millions who seek emergency medical treatment after disregarding constant public health warnings against smoking, drinking, drug abuse, and junk food-induced Type II diabetes.

- In *The Week*, Ryan Cooper declared that "Anti-vaxxers" (i.e. people who decline the COVID vaccines) "should be exiled from society until they get their shots, and their efforts to intimidate people against controlling the pandemic should be met with massive resistance." (Ex. 14.)

After this lawsuit was filed, Plaintiffs' fears have only gotten worse. After this case was filed, Plaintiff Jill Doe "learned that one of the teachers at my school read a news article to the class about this case. In response, certain students at my school got angry and upset about what I am doing. They're so upset that they claim that they want to find out who I am and hurt me." (Jill Doe Decl., ¶ 6.) This incident arguably violated several of SDUSD's own internal policies. (*See* Ex. 15, BP 6141.2(a) ("In order to respect each student's individual right to freedom of religious practice, . . . [i]nstruction about religion shall not promote or denigrate the beliefs or customs of any particular religion or sect" and "[s]taff shall not endorse, encourage or solicit religious or anti-religious expression or activities among students during class

time."); Ex. 16, BP 6144(b) ("The instruction shall not reflect adversely upon persons because of their . . . religion"). It has also caused Plaintiff Jill Doe to fear that her identity will be discovered at her school and released to other students, who may retaliate against her.[5]

*Fourth*, there is no significant prejudice to Defendants. Although Plaintiffs would object to revealing Plaintiff Jill Doe's identity to officials with Scripps Ranch High School, who have no need to know her identity, Plaintiffs do not oppose revealing their identities to defense counsel and necessary officials at SDUSD under a strict protective order. *See Doe v. Smith*, 105 F. Supp. 2d 40, 45 & fn.8 (E.D.N.Y. 1999) (defendant not prejudiced where he would be free to obtain all other information to which he was entitled under the federal rules). And unlike the defendants in cases where the right to proceed in pseudonym has been denied, there is no jury to draw implications of merit from this Court's allowance of anonymity to the Doe family. *See Does I thru XXIII*, 214 F.3d at 1068 (citing *James v. Jacobson*, 6 F.3d 233, 240 (4th Cir. 1993)).

*Fifth*, and finally, the public's access to this case will not be limited apart from its ability to ascertain the exact identity of the Doe family, and the public has no legitimate interest in knowing the identity of the Doe family. For one, "[p]arty anonymity does not obstruct the public's view of the issues joined." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981); *see also Doe v. Smith*, 105 F. Supp. 2d at 45 (finding public would not be prejudiced where plaintiffs were allowed to proceed anonymously because it would otherwise have access to trial and results of the case). Moreover, beyond the facilitation of the Doe family's harassment and intimidation, it is simply not clear what interest might be bolstered by revelation of their identities.

Thus, Plaintiffs respectfully request that this Court grant them leave to proceed pseudonymously in this case.

---

[5] If needed, more detail about this incident can be submitted in a sealed declaration.

## 6. The Court Should Dispense with a Bond Requirement.

Finally, the federal rules provide that a temporary restraining order or preliminary injunction may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Even so, this Court has discretion over whether any security is required and, if so, the amount. *See, e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The Ninth Circuit has "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation," especially "where requiring security would effectively deny access to judicial review." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (citing *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985); *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975)).

Here, Plaintiffs request that the Court waive any bond requirement, because enjoining Defendants from unconstitutionally enforcing their Vaccination Roadmap in the face of religious objections will not financially affect Defendants. A bond would, however, be burdensome on already burdened Plaintiffs under these circumstances. *See, e.g.*, *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1302 n.6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damages to the District of issuing injunction); *Doctor John's, Inc. v. Sioux City*, 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("[R]equiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of such gravity that protection of those rights should not be contingent upon an ability to pay."). In line with the above cases, recent Free Exercise cases enjoining unconstitutional vaccine mandates have waived the bond requirement. *See Dr. A. v. Hochul*, 2021 WL 4734404, at *10 n.10.

1

## CONCLUSION

2       For the foregoing reasons, Plaintiffs respectfully request that this Court grant

3   in full their application for a temporary restraining order and order to show cause re:

4   preliminary injunction, and permit Plaintiffs to proceed pseudonymously in this case.

5

6                                   Respectfully submitted,

7                                   LiMANDRI & JONNA LLP

8

9   Dated: November 1, 2021      By:

10                                  Charles S. LiMandri

11                                  Paul M. Jonna

12                                  Mark D. Myers

                                    Jeffrey M. Trissell

13                                  Robert E. Weisenburger

14                                  Milan L. Brandon II

                                    Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28