ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Law Corporation
Mark R. Bresee          State Bar No. 167346
    MBresee@aalrr.com
Amy W. Estrada          State Bar No. 279969
    AEstrada@aalrr.com
Alyssa Ruiz de Esparza   State Bar No. 306542
    ARuizdeEsparza@aalrr.com
4275 Executive Square, Suite 700
La Jolla, California 92037-1477
Telephone:  (858) 485-9526
Fax:  (858) 485-9412

Attorneys for Defendants

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT, et al.,<br><br>                    Defendants. | Case No.:   3:21-cv-01809-CAB (LL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; AND FOR LEAVE TO PROCEED PSEUDONYMOUSLY**<br><br>Judge:     Hon. Cathy Ann Bencivengo<br>Courtroom: 15A<br><br>Date:     November 19, 2021<br>Time:     2:00 p.m.<br><br>Complaint Filed:  October 22, 2021<br>Trial Date:     None |

005555.00346
35156905.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................7

II. STATEMENT OF FACTS ................................................................8

    A. The District ................................................................................8

    B. Adoption of the Vaccination Roadmap ....................................9

    C. Legal Compliance Associated With Mandate Implementation ..........14

        1. "Conditional Enrollment" ................................................15

        2. Procedural Safeguards for Students With Disabilities ..........16

        3. Compliance with Federal Employment Law ....................17

    D. Medical Exemption ................................................................18

    E. Announcement by the California Governor .............................19

III. ARGUMENT ................................................................................20

    A. Legal Standard ......................................................................20

    B. Mandatory Vaccination Without a Religious Exemption, as a Condition for Admission to School, does not Violate the Free Exercise Clause ........................................................................21

    C. Under *Smith* and its Progeny Rational Basis Applies, and the Mandate is Rationally Related to a Legitimate (Indeed Compelling) Governmental Interest .........................................24

        1. The Mandate is Neutral and of General Applicability ............24

            a) The Mandate does not Contain "a System of Individualized Exemptions," nor does it Imposes a More Stringent Burden on Religious Exercise "Than Other Activities" .................................................25

            b) The Mandate does not Reference Religious Exercise for Disfavor ................................................29

        2. The Mandate is Rationally-Related to a Legitimate (Indeed Compelling) Interest ..........................................30

    D. Even if Strict Scrutiny Applied, the Mandate is Constitutional ........30

    E. Balance of Hardships and Public Interest ..............................31

IV. CONCLUSION ..............................................................................32

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

1

## TABLE OF AUTHORITIES

2

**Pages**

3

**FEDERAL CASES**

4

*Alliance for the Wild Rockies*,
  632 F.3d 1127 (2011) ................................................................................ 20, 21

5

6

*Bd. of Educ. v. Earls*,
  536 U.S. 822 (2002) ........................................................................................ 23

7

*Calvary Chapel Dayton Valley v. Sisolak*,
  982 F.3d 1228 (9th Cir. 2020) ...................................................................... 30

8

9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) .................................................................................. 24, 30

10

*City of Cuyahoga Falls v. Buckeye Cmty. Hope Found*,
  538 U.S. 188 (2003) ........................................................................................ 29

11

12

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
  340 F.3d 810 (9th Cir. 2003) ........................................................................ 20

13

*Dahl v. Board of Trustees of W. Michigan Univ.*,
  15 F.4th 728 (6th Cir. 2021) ......................................................................... 27

14

15

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ........................................................................ 31

16

*Doe v. Kamehameha Schools*,
  596 F.3d 1036 (9th Cir. 2010) ...................................................................... 31

17

18

*Does 1–3 v. Mills*,
  2021 WL 4860328 (2021) .............................................................................. 28

19

*Does 1–3 v. Mills*,
  2021 WL 5027177 (2021) ......................................................................... 26, 28

20

21

*Dr. A. v. Hochul*,
  2021 WL 4734404 (N.D.N.Y. 2021) ........................................................ 27, 30

22

*Emp't Div. v. Smith*,
  494 U.S. 872 (1990) .............................................................................. 22, 24, 26

23

24

*FemHealth USA, Inc. v. City of Mount Juliet*,
  458 F. Supp. 3d 777 (M.D. Tenn. 2020) ...................................................... 29

25

*Fraternal Ord. of Police v. City of Newark*,
  170 F.3d 359 (3d Cir. 1999) ......................................................................... 28

26

27

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ............................................................................ passim

28

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Pages**

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ................................................................. 20

*Honig v. Doe*,
  (1988) 484 U.S. 305 ..................................................................... 16, 17

*Jacobson v. Massachusetts*,
  197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) ..................... 21, 22, 23

*Marshall v. United States*,
  414 U.S. 417 (1974) .............................................................................. 24

*Maryville Baptist Church, Inc. v. Beshear*,
  957 F.3d 610 (6th Cir. 2020) ............................................................... 26

*McCarthy v. Boozman*,
  212 F.Supp.2d 945 (2002) .............................................................. 21, 22

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of
  Psychology*,
  228 F.3d 1043 (9th Cir. 2000) ............................................................. 30

*Phillips v. City of New York*,
  775 F.3d 538 (2d Cir. 2015), cert. denied, 136 S.Ct. 104 (2015) ....... 22

*Prince v. Massachusetts*,
  321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) .......................... 21, 22

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ...................................................................... 23, 30

*South Bay United Pentecostal Church v. Newsom*,
  141 S. Ct. 716 (2021) ........................................................................... 23

*South Bay United v. Newsom*,
  140 S.Ct. 1613 (2020) .......................................................................... 23

*Steel MMA, LLC v. Newsom*,
  2021 WL 778654 .................................................................................. 31

*Stormans, Inc. v. Weisman*,
  794 F.3d 1064 (9th Cir. 2015) ............................................................. 30

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ................................................................... passim

*Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*
  (9th Cir. 2007) 502 F.3d 811 ............................................................... 16

*Vernonia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995) ............................................................................. 22

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

**TABLE OF AUTHORITIES**
**(CONTINUED)**

<u>**Pages**</u>

*We The Patriots USA, Inc. v. Hochul,*
   2021 WL 5121983 (2021) ..............................................................27, 28

*Whitlow v. Cal. Dep't of Educ.,*
   203 F. Supp. 3d 1079 (S.D. Cal. 2016) ........................................passim

*Winter v. Natural Resources Defense Council, Inc.,*
   555 U.S. 7 (2008) ........................................................................20

*Workman v. Mingo County Bd. of Ed.,*
   419 Fed.Appx. 348 (4th Cir. 2011) ............................................21, 22

*Zucht v. King,*
   260 U.S. 174 .................................................................................21, 22

**STATE CASES**

*Brown v. Smith,*
   235 Cal.Rptr.3d 218 (2018) ........................................................7, 8

*Love v. State Dept. of Education,*
   240 Cal.Rptr.3d 861 (2018) ........................................................7, 8

**FEDERAL CODES/STATUTES**

20 U.S. Code § 1414 .........................................................................16

42 U.S. Code § 11432(g)(3)(C) ........................................................15

Americans With Disabilities Act .......................................................17

Civil Rights Act of 1964 Title VII ....................................................17

Individuals with Disabilities Education Act .......................................16

**STATE CODES/STATUTES**

Cal. Code of Regs., Title 17, § 6035 ................................................16

Cal. Education Code § 35160 ............................................................20

Cal. Education Code § 35160.1 .........................................................20

Cal. Education Code § 48204.7(c)(3) ................................................15

Cal. Education Code § 48852.7(c) .....................................................15

Cal. Education Code § 48853.5 (f)(8)(B) ..........................................15

Cal. Education Code §  49069.5 ........................................................15

**TABLE OF AUTHORITIES**
**(CONTINUED)**

<u>**Pages**</u>

Cal. Education Code § 49700 .................................................................. 15

Cal. Education Code § 49701 .................................................................. 15

Cal. Education Code § 51745(a) ............................................................... 9

Cal. Education Code § 54440 .................................................................. 15

Cal. Education Code sections 56300 *et seq.* ........................................... 16

Cal. Education Code § 56346 .................................................................. 16

Cal. Government Code § 54953(e) ............................................................ 9

Cal. Health & Safety Code § 120325(a) ................................................... 7

Cal. Health & Safety Code § 120325(c) .............................................. 7, 18

Cal. Health & Safety Code § 120335(a) ................................................... 7

Cal. Health & Safety Code § 120335(b) ................................................. 18

Cal. Health & Safety Code § 120335(b) ................................................... 7

Cal. Health & Safety Code § 120335(h) ................................................. 16

Cal. Health & Safety Code § 120338 ...................................................... 19

Cal. Health & Safety Code § 120341(a) ................................................. 15

Cal. Health & Safety Code § 120370 ...................................................... 18

Cal. Health & Safety Code § 120372(a) ................................................... 7

Cal. Health & Safety Code § 120372(a)(2)(A)-(I) .................................. 18

Cal. Health & Safety Code § 120375(b) ................................................. 16

**OTHER AUTHORITIES**

First Amendment ............................................................................... 7, 23

Fourth Amendment ................................................................................ 22

Fourteenth Amendment .................................................................... 21, 22

Fed. Rules of Civil Procedure 65(b)(1)(A) ............................................ 20

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

## I.     **INTRODUCTION**

Under California law a school district may not "unconditionally admit" any child who has not been vaccinated against ten (10) enumerated diseases. Cal. Health & Safety Code ("HSC") §§ 120335(a) and (b), 120325(a). California law includes a medical exemption from its vaccine mandate, through a detailed process defined by statute. HSC §§ 120325(c), 120372(a). California law previously had a personal beliefs exemption, which by definition included religious exemptions as a subset of a larger exemption, but it no longer includes such an exemption. Lawsuits contending this change in law was unlawful, including that it violated the Free Exercise Clause of the First Amendment, were rejected in this Court, *see Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1086-87 (S.D. Cal. 2016), and in California courts. *Brown v. Smith*, 235 Cal.Rptr.3d 218, 222 (2018); *Love v. State Dept. of Education*, 240 Cal.Rptr.3d 861 (2018).

On September 28, 2021 the Board of Education ("Board") of the San Diego Unified School District ("District") accepted the recommendation of its staff and a of local pediatricians, epidemiologists, and infectious disease experts ("Expert Panel") from the University of California, San Diego ("UCSD"), and adopted a "Vaccination Roadmap" ("Roadmap"). This action initiated the development and implementation of a requirement that District students be vaccinated from the COVID-19 virus, upon full Food and Drug Administration ("FDA") approval for their age group, as a condition of in-person school attendance and extracurricular sports participation ("the Mandate"). Like California law applicable to all school districts, the Mandate includes a medical exemption, which will be implemented through substantively the same process dictated for medical exemptions from state-mandated vaccines, and it does not contain a religious exemption. The Mandate is consistent with and modeled on state law mandating vaccinations, including the medical exemption process and brief, "conditional enrollment" pending vaccination of new students in certain vulnerable categories.

Plaintiffs readily concede that this lawsuit does not challenge the Mandate on state law grounds, *see* Doc. No. 1, ¶ 37, nor does it challenge the constitutionality of the California laws described above. As will be shown, however, by contending the Mandate is unconstitutional Plaintiffs contend, in effect, that California law is also unconstitutional. In an apparent attempt to avoid that issue and this Court's conclusion in *Whitlow*, Plaintiffs resort to misstating the facts and misstating the law. They claim there are exemptions for certain students, when there is none; they claim the medical exemption is the type of "sole discretion" exemption the Supreme Court recently addressed in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), when it is not; they contend recent Supreme Court decisions addressed and dictate public school student rights vis-à-vis vaccinations, when they did no such thing; they contend the Supreme Court has handed down a "simple rule" that "if exemptions to COVID-19 rules are made for secular purposes, equal or greater exemptions must be made for religious purposes," when they did not.

The list could continue. Plaintiffs' distortion of facts and law should not be given credence by this or any other court. Plaintiffs are demonstrably unlikely to succeed on the merits. The District's Mandate, just like the California law upon which it modeled, is lawful as recognized in *Whitlow*, *Brown*, and *Love* — all of which are consistent with case law including Supreme Court decisions. There is no basis for a temporary restraining order or any other relief.[1]

## II.    <u>STATEMENT OF FACTS</u>

### A.    <u>THE DISTRICT</u>

The District is the second largest school district in California, educating approximately 97,675 students in 176 facilities — 120 elementary schools, 23 middle schools, 24 high schools, 2 atypical schools, and 7 other educational

---

[1] Defendants do not contest Plaintiffs' request for a waiver of the bond requirement, Doc. No. 7-1 at 29, and join Plaintiffs' request for denial of relief pending appeal, *Id.* at 25.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

program sites. Barndollar Decl. ¶ 8. To provide educational and supplemental services to nearly 100,000 students, the District employs approximately 14,000 people in various capacities. Thede Decl. ¶ 2. In the current school year, every school district in the state is required to have an independent study program available to its students. Cal. Educ. Code ("CEC") § 51745(a).

**B.      ADOPTION OF THE VACCINATION ROADMAP**

On September 28, 2021, citing its desire "to ensure the highest-quality instruction in the safest environment possible for all student and employees," and "[s]trong scientific evidence … that vaccinations are an essential part of protecting our communities," the Board took action to approve the Roadmap presented by District staff and medical experts. Doc. No. 1, Ex. 1.[2]

After a review of the science, including statements supporting a vaccine mandate from 7 members of the Expert Panel, Doc. No. 1, Ex. A, pp. 3-5, the Roadmap generally described a plan for vaccination of employees and students, *Id.* at 6-15, and listed several "Next Steps," including the development of a "full implementation plan." *Id.* at 16. The requested Board action vis-à-vis students was to "[a]pprove a staggered approach to have all eligible students vaccinated against COVID-19, as a condition of attending in-person learning," with mandates "aligned to the full FDA approval" for a particular age group. *Id.* at 17.

Consideration of the Mandate was Item H.3 on the agenda, and after briefly introducing the item Board President Richard Barrera ("Barrera") handed the floor to District Superintendent LaMont Jackson ("Jackson"). Bresee Decl. Ex. A, 2:2-5.

---

[2] Plaintiffs attempt to disparage Defendants, stating "[s]trangely, that meeting was held virtually even though there are currently no limitations on large gatherings, and no safety reason to limit them," positing "this is probably explained best by the fact that approximately 1,651 parents signed up to speak in opposition to the COVID-19 vaccine mandate." Doc. No. 1, ¶ 33. What Plaintiffs ignore is that all meetings of the Board during the COVID-19 pandemic have been held with the public participating remotely, based on explicit authorization to do so by state law. Thede Decl. ¶ 7; Cal. Govt. Code § 54953(e).

Jackson spoke generally about District efforts throughout the pandemic "focused on the health and safety of our students and our staff in our community," and "following the health guidelines and the science" including "partner[ing] with … professionals at UCSD" to "ensure our community was healthy and safe" — "I want to remind us," he said, "that the beacon along the way has been working in partnership with our health professionals." *Id.* at 2:6-3:15. After emphasizing that the District "will remain committed to teaching and learning whether students are onsite or virtually," and referencing the District's Virtual Academy online program, he concluded:

> My hope is that we as a community can come together, and I continue to say we because this is a collective community effort to focus on our children, to focus on our staff, and to focus on the health and safety of our great community. And so we may not always agree, but we can have healthy discourse and hear folks. And so I want the greater community to know that I have received e-mails. I've read those e-mails. I've shared those sentiments with the — with staff. And we will come together looking at science, looking at data to make the best decision for our students, and our staff, and our community.

*Id.* at 4:12-25.

Jackson then turned the floor over to Dr. Howard Taras ("Taras"). Taras is a San Diego-based pediatrician licensed by the state and certified by the American Board of Pediatrics, on the faculty of the UCSD School of Medicine, Department of Pediatrics, and the Division of Child and Community Health.[3] Taras opened by speaking about the "medical public health benefits of having a very large portion of students and staff vaccinated for COVID." Bresee Decl. ¶ 1, Ex. A at 5:13-9:14. He spoke about the confidence level that comes with full FDA approval of a vaccine, "that the effectiveness and the benefits of that vaccine clearly outweigh the known or potential risks," that "[u]nlike masking, ventilation, and testing — which are

---

[3] Taras' education, training and experience, including being the contracted physician for the District and over 35 years of advising educational entities regarding child health and wellness, is included in his declaration filed herewith. *See* Taras Decl. ¶¶ 1-4 and Ex. A [curriculum vitae].

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO EX PARTE APPLICATION

extremely important — vaccination protects the students before the virus is ever even introduced into the setting, thereby reducing disease and new mutations," that "[i]t protects unvaccinated family members and other adults who have and haven't been vaccinated — people that are in that child's life," that "school-age children get sick and do contribute to new infections even though their rate of sickness is very low compared to adults," that "they are the greatest proportion of unvaccinated people in the U.S. right now, and more children have been hospitalized recently than in any previous time during the epidemic." *Id.* at 6:22-7:20. He noted that "unvaccinated children do contribute to new variants" of the virus. *Id.* at 7:21-8:3.

Taras referenced the Roadmap slides with Expert Panel member opinions, and described the response of two members whose opinions in favor of the Mandate were not included in the Roadmap. *Id.* at 8:4-9:14.[4] Taras then introduced California State Senator Dr. Richard Pan ("Pan"), a pediatrician and chair of the Senate Committee on Health, who focused on the educational and health benefits of vaccination of students, including:

> There is a myth out there that children are not affected by COVID, and we know that's not true. … Over 500 children have died of COVID in the United States. We see, as Dr. Taras said, hospitalizations rising. We're not even talking about things like long COVID, inflammation, inflammatory disease that's happened afterwards, other types of injury that can happen as a result of COVID. So what's really important is that we have a safe environment so that parents feel safe sending their kids to school, right? Otherwise, if parents are afraid to send their kids to school, they're not going to — you're going to have challenge with education.

Bresee Decl. ¶ 1, Ex. A at 10:8-12:8. Pan praised the District for waiting for full FDA approval, declaring it a "very prudent policy." *Id.* at 13:6-16.

---

[4] Each member of the Expert Panel was asked by Taras: "The school district is going to discuss whether they should mandate vaccines for school entry (versus online learning) once the vaccine is FDA Approved for that age cohort. Can you send please me a sentence or two of why you would, or would not, support such a policy?" The complete answer from each member responding is included as Exhibit P of Taras' declaration.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

Following the presentation from medical experts, District Chief of Human Resources Acacia Thede ("Thede") provided an overview of the staff proposal to mandate that District employees be vaccinated. *Id.* at 14:17-17:22. Thede's duties include overseeing District compliance with the law regarding the rights of District employees, including but not limited to the right, where applicable, to reasonable accommodation of disabilities and religion. Thede Decl. ¶ 3. She concluded:

> As we've shared, the health and safety of our students is paramount. Therefore, we're recommending vaccines be mandated as a condition of employment. As a condition of employment, the district may take disciplinary action up to and including termination for employees who do not comply ....

Bresee Decl. ¶ 1, Ex. A at 17:11-17.

Thede then turned the floor over to Susan Barndollar ("Barndollar"), and Barndollar presented an overview of the staff proposal to implement the Mandate. *Id.* at 17:23-23:12. Barndollar is the District's Executive Director, Nursing & Wellness, and has held District positions related to student health and wellness since 2001. Barndollar Decl. ¶ 1. She is a California licensed Registered Nurse, possesses a Masters in Nursing and other certifications, and her duties include a myriad of responsibilities related to student health and safety including compliance with student vaccine mandates and acting as a liaison with community agencies and social service organizations. *Ibid.* Since the onset of the COVID-19 pandemic, Barndollar has been working with Taras and the Expert Panel on measures to protect the health and safety of District students and staff, of their families, and of the San Diego community, and that involvement helped develop the student vaccination plan. *Id.* at ¶¶ 2-3. Based on her professional training and experience in San Diego in general and in the District in particular, and her interaction and consultation with Taras and the Expert Panel, she was and is of the opinion that adopting a vaccine mandate is necessary to enhance the health and safety of District students and staff, of their families, and of the San Diego community. *Id.* at ¶ 3.

Barndollar's presentation included confirmation that the Mandate would

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO EX PARTE APPLICATION

apply only upon full FDA approval, information on current vaccination rates among students and recent data on students impacted/quarantined based on COVID infections, confirmation that vaccinated students do not have to quarantine after being exposed to an infected individual, and information on the implementation timeline. Bresee Decl. ¶ 1, Ex. A at 17:23-22:21. Barndollar then briefly referenced students who are eligible for "conditional enrollment" "[w]hen enrolling," noted that the Mandate would apply to extracurricular activities, and then asked Taras to briefly address the medical exemption process. *Id.* at 22:22-24:23.[5]

Thede then formally announced the staff recommendations, and turned the floor back over to Barrera, who initiated the public comment portion of the meeting for the "obviously many speakers who [had] signed up to speak." Bresee Decl. ¶ 1, Ex. A at 24:1-25:17. After public comment, Barrera thanked the public for its input, invited comments in writing, thanked the Board for agreeing to extend the length of public comment beyond what is reflected in their bylaws, and asked for a motion on the staff's recommendation. *Id.* at 25:19-26:7. After a motion and a second, a lengthy period of discussion ensued involving the Board members and the student representative on the Board. *Id.* at 26:10-51:17. A Board member asked a question about students with disabilities, to which Barndollar and Taras briefly responded — stating the process would be consistent with that "for all other state-mandated vaccines," and "that for all other previous mandated vaccines by the state, we still have to meet students' IEP [individual education plan] requirements." *Id* at 26:16-28:1. The same Board member asked about "mitigations" for foster children and homeless, and Barndollar answered that those populations of students are given "a longer period of time for them to get their vaccine and get their vaccine records,"

---

[5] As is addressed further below, despite Plaintiffs' characterization otherwise, "conditional enrollment" is <u>not</u> an exemption from the Mandate. It applies to new enrollees only — i.e. "when enrolling" — and it is a required 30-day period under state law that gives these vulnerable groups additional time to comply with the state-mandated vaccine requirements.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

because there is "frequent moving" and there "may be records that are lost or maybe records that haven't arrived in town yet" which leads to "conditional entrance" and an "extra 30 days to get those records" or "get caught up on their immunizations if they need to." *Id.* at 28:2-18. After Board member comments including whether the Mandate should be tied to full FDA approval, the Board voted unanimously to approve staff's recommendation (i.e. a mandate imposed only after FDA approval). *Id.* at 50:23-51:17.

During the entire staff presentation, questions and answers, and Board discussion and vote, the word "religion" or "religious" was uttered exactly <u>once</u> — Barndollar read from the Roadmap document a factually accurate statement about current California law upheld in *Whitlow*: "State law does not recognize religious or personal belief exemptions for student immunizations." *Id.* at 22:19-21.

The day after adoption of the Roadmap, September 29, 2021, the District issued a press release, dispatched a letter to all District parents, and updated the Frequently Asked Questions page of its website. Doc. No. 1, Exs. 3-5.

## C.   <u>LEGAL COMPLIANCE ASSOCIATED WITH MANDATE IMPLEMENTATION</u>

Since the adoption of the Roadmap the process of developing an implementation plan has been spearheaded by Barnhill and Thede, a plan not only including verification of vaccinations but "conditional enrollment" of certain students, procedural safeguards for students with disabilities, the process for students to seek and, where documented as necessary for the health and safety of an individual student, obtain a medical exemption from the Mandate, and compliance with federal employment laws. Barnhill Decl. ¶¶ 4-7; Thede Decl. ¶¶ 4-6.

Plaintiffs go to great lengths, including misrepresenting facts and omitting others, to paint a picture of a Mandate that contains multiple, flimsy exemptions. Their effort falls flat in the face of the facts and the law. The actions of Barnhill and Thede, and others, to implement the Mandate reveal two inescapable truths: 1) the <u>only</u> exemption from the Mandate is a medical exemption; and 2) medical

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

exemptions are granted or denied not through a "sole discretion" process, but through a science-driven, objective process; the <u>same</u> process that is implemented statewide for medical exemptions from state-mandated vaccines.

### 1.   <u>"Conditional Enrollment"</u>

California law requires immediate enrollment of certain subgroups in recognition of the disruptions these groups have historically faced, where it might be difficult to access medical records or obtain access to mandated vaccinations. *See* e.g. CEC § 49069.5 (pupils in foster care); § 48850 (homeless youth); Barnhill Decl. ¶ 6. Specifically, schools "shall immediately enroll [a] foster child even if the foster child has outstanding ... medical records, including, ... proof of immunization history." CEC § 48853.5 (f)(8)(B)); HSC § 120341(a). For homeless youth, schools "shall immediately enroll the homeless child even if the child has outstanding ... records normally required for enrollment such as … records or other proof of immunization history." CEC § 48852.7(c); 42 USC § 11432(g)(3)(C). California has also declared that migrant "children, from among the least affluent segments of American society, tend to move frequently, attend school irregularly," CEC § 54440, and a school "shall immediately enroll the pupil who is a migratory child even if the child ... is unable to produce ... proof of immunization history." CEC § 48204.7(c)(3). Likewise, for children of military families California seeks to remove "barriers to [their] educational success ... due to the frequent relocation and deployment of their parents" by facilitating their "timely enrollment ... and ensuring that they are not placed at a disadvantage due to difficulty in the transfer of educational records ... ." CEC § 49700. School districts therefore must give thirty (30) days from the date of enrollment. CEC § 49701.

The Mandate recognizes and applies these provisions for these students, and it is <u>not</u> an exemption from the Mandate. Barnhill Decl. ¶ 6. Rather, it provides a period of 30 days for the student to get vaccine shots or obtain their vaccine records,

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

1   and it applies only to students enrolling in the District for the first time. *Ibid.*[6]

2   ### 2.   Procedural Safeguards for Students With Disabilities

3   Students with disabilities are afforded significant protection under both
4   federal and state law, and the District is obviously required to provide those
5   protections to students. Barndollar Decl. ¶ 7. The District cannot unilaterally
6   exclude students with disabilities from a school campus without triggering due
7   process procedures under the federal Individuals with Disabilities Education Act
8   ("IDEA") and California Education Code sections 56300 *et seq. Ibid*. California law
9   "does not prohibit a pupil who qualifies for an individualized education program ...
10   from accessing any special education and related services required by his or her"
11   IEP. HSC § 120335(h). In *Whitlow, supra*, 203 F.Supp.3d 1079, 1088, this Court
12   concluded that compliance with state and federal law regarding students with
13   disabilities "ensures that right of access, and furthers the State's legitimate interest
14   in providing special education and related services to those students."

15   More specifically, excluding a student with disabilities from campus would
16   constitute a change in educational placement necessitating parent consent; and
17   without it, the student is still entitled "to remain in his or her current placement."
18   CEC § 56346. "One of the IDEA's most important mechanisms ... is the formulation
19   and implementation of IEPs. Under [20 U.S.C.] § 1414(d), every disabled child
20   must have an IEP ... formulated by a team that includes the child's parents, regular
21   and special education teachers, a district representative and other individuals with
22   relevant expertise. § 1414(d)(1)(B)." *Van Duyn ex rel. Van Duyn v. Baker School*
23   *Dist. 5J,* (9th Cir. 2007) 502 F.3d 811, 818. IDEA's "safeguards include [a parent's]
24   right to examine all relevant records pertaining to the ... educational placement of
25   their child ... and an opportunity for 'an impartial due process hearing' with respect
26   to any such complaints. [20 U.S.C.] §§ 1415(b)(1), (2)." *Honig v. Doe* (1988) 484

27   ---
[6] The length of "conditional enrollment" is set by state law at thirty (30) days. HSC
28   § 120375(b); Title 17, Cal. Code of Reg. § 6035.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

- 16 -

U.S. 305, 311–12. "The 'stay-put' provision ... governs the placement of a child while these often lengthy review procedures run their course. It directs that: 'During the pendency of any proceedings ... the child shall remain in the then current educational placement of such child." *Id.* at p. 312. Students with disabilities are not similarly situated as all other students — they are still subject to the Mandate, and may qualify for a medical exemption based on their disability or disabilities, but cannot be excluded from campus unless or until their IEP addresses the issue.

### 3.  <u>Compliance with Federal Employment Law</u>

After the Board adopted a Roadmap Thede spearheaded the process of notifying employees of the Board's action and information on their rights under state and federal law, e.g. Title VII of the Civil Rights Act of 1964, and the Americans With Disabilities Act ("ADA"). Thede Decl. ¶ 4. The day after adoption she sent a letter to all District employees notifying them of the Board action, as well as an acknowledgment of the legally-mandated "interactive process to determine if a reasonable accommodation exists to permit an employee to continue working who cannot take the vaccine due to disability or sincerely held religious belief." *Id.* at 4(a) and Ex. A. On October 15, 2021 she sent to all employees a correspondence regarding religious accommodation requests, *Id.* at 4(b) and Exs. B, C and D, and she re-distributed a correspondence regarding disability accommodation requests, *Id.* at 4(c) and Exs. E, F, G and H.

During the COVID-19 pandemic the District has received, separate from the employee vaccine mandate, accommodation requests arising from other events and requirements such as returning to work after the closure of schools and offices, the state's mask wearing mandate, etc. For each of these requests the District followed the legal mandates regarding the good faith, interactive process to determine whether employees are entitled to accommodations, and if so what range of accommodation options are available (e.g. continuing to work remotely, approved leave of absence, etc.) This process will continue with accommodation requests

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO EX PARTE APPLICATION

1  related to the vaccine mandate. Regarding the employee vaccine mandate

2  specifically, the District has received 238 requests for religious accommodations,

3  and 26 requests for disability accommodations. Thede Decl. ¶ 6.

4  **D.   MEDICAL EXEMPTION**

5      California law prohibits a school district from "unconditionally admitting" a

6  child who has not been vaccinated against ten (10) enumerated diseases, unless the

7  child obtains a medical exemption, and contains specific requirements for students

8  to obtain a medical exemption. HSC § 120335(b). Under state law medical

9  exemptions may be issued only when the physical condition or medical

10  circumstances of a child are such that immunization is not considered safe, and are

11  granted only if a physician or surgeon provides objective, delineated information.

12  HSC §§ 120372(a)(2)(A)-(I), 120370, 120325(c).

13      A medical exemption to the Mandate is available if certain, objective criteria

14  are met, they directly reflect the above-described state law requirements, and the

15  exemption in state law and in the Mandate exist to ensure the health and safety of an

16  individual student who cannot be safely vaccinated. Barndollar Decl. ¶¶ 4-5. The

17  medical exemption process requires a parent/guardian and a physician to complete a

18  Request for Medical Exemption/Pregnancy Deferral for COVID-19 Vaccine form,

19  the content of which is consistent with state law. Barndollar Decl. ¶¶ 4, 4(a)-(g),

20  Ex. A. Because it is a form specific to the COVID-19 vaccine only, the physician is

21  required to certify that the student has one or more of specifically-identified

22  contraindications or precautions recognized by the CDC or vaccine manufacturer,

23  and a description of the medical basis for the contraindication identified. *Id.* at 4(d)-

24  (e), Ex. A. After receipt of a completed form Taras and a registered nurse in the

25  District's Immunization Program will review the request to determine whether it

26  provides the information required for approval. *Id.* at 5. If a Request does not

27  contain the necessary information to qualify for a medical exemption, i.e. "the

28  exemption request form was not complete and/or the reason provided did not meet

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

applicable Centers for Disease Control and Prevention (CDC), Advisory Committee on Immunization Practices (ACIP), and American Academy of Pediatrics (AAP) criteria or the standard of medical care," the Request will be denied and the student will be enrolled in independent study unless they are vaccinated. *Id.* at 5 and Ex. A. If the Request is complete, and the reason provided meets applicable CDC, ACIP, and AAP criteria or the standard of medical care, it will be approved. *Ibid.*

## E.   ANNOUNCEMENT BY THE CALIFORNIA GOVERNOR

Plaintiffs state "[n]o other State besides California requires vaccination from COVID-19 for students to attend school." Doc. No. 7-1, p. 8. California does not have such a mandate. Plaintiffs mischaracterize a public announcement by the California Governor, two days after the Roadmap was adopted by the Board, and allege that on October 1, 2021 California Governor Gavin Newsom "decided to dictate via executive fiat that all public school students must be vaccinated against COVID-19 in order to attend any school." Doc. No. 1, ¶ 36, Ex. 7 (quoting HSC § 120338). What the Governor did was "announce[] plans to add the COVID-19 vaccine to the list of vaccinations required to attend school in-person," and announce that he directed the California Department of Public Health to initiate the regulatory process aimed at adding a COVID-19 vaccine mandate statewide, with this "plan" to be implemented at future yet undetermined dates. Doc. No. 1, Exs. 6 and 7 (emphasis added). Plaintiffs ask this Court to treat this potential, future mandate as a current mandate "dictate[d] via executive fiat," and Plaintiffs also failed to mention that the same announcement acknowledged the District's adoption of the Roadmap and stated "[l]ocal public health and school officials are encouraged to move forward with their own vaccine mandates." Doc. No. 1, Ex. 7. p. 3.[7]

---

[7] The Governor's statement in support of local district action is consistent with state law, which explicitly provides that "the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established,"

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

### III.     ARGUMENT

#### A.   LEGAL STANDARD

A motion for a temporary restraining order ("TRO") is granted when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). It is an "extraordinary remedy never awarded as a right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a TRO must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The first element, likely success on the merits, is "the most important" and is a threshold inquiry for the court. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Therefore, if the movant fails to establish likelihood of success on the merits, the court need not consider the remaining three elements. *Id.* In contrast, under the "sliding scale" approach permitted in the Ninth Circuit, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies*, 632 F.3d 1127, 1131. In effect, a plaintiff can be granted a preliminary injunction upon a showing of either: 1) that there are "serious questions" on the merits and that the balance of the hardship's tips decidedly in the movant's favor; or 2) that there is a probability of success on the merits and there is more than a possibility of irreparable harm without the preliminary injunction. *Id.; see also Clear Channel Outdoor, Inc. v. City of Los*

and through a series of findings applies that authority "broadly" to allow the "diverse needs unique to their individual communities and programs" to result in "their own unique solutions." CEC §§ 35160, 35160.1. Indeed, on October 29, 2021 a Los Angeles Superior Court judge reinforced this local school district authority in a lawsuit attempting to invalidate a student vaccine mandate in the Los Angeles Unified School District. *See* Bresee Decl. Ex. B.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

*Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). Under the "sliding scale" approach, the moving party must also establish the other two elements of the "traditional test." *All. for the Wild Rockies*, 632 F.3d at 1132.

**B.   MANDATORY VACCINATION WITHOUT A RELIGIOUS EXEMPTION, AS A CONDITION FOR ADMISSION TO SCHOOL, DOES NOT VIOLATE THE FREE EXERCISE CLAUSE**

Long-standing Supreme Court precedent and federal court decisions applying that precedent establishes that the government's interest in protecting health and safety through a vaccine mandate in public schools outweighs free exercise considerations, and the 2020 and 2021 COVID-19 decisions related to pandemic-related restrictions on individual and group conduct did not address let alone negate these decisions.

In *McCarthy v. Boozman*, 212 F.Supp.2d 945 (2002), the district court addressed a First and Fourteenth Amendment challenge to a mandatory vaccination requirement for public school attendance, and concluded:

> Plaintiff's challenge to the constitutionality of mandatory immunization warrants no extensive discussion. It has long been settled that individual rights must be subordinated to the compelling state interest of protecting society against the spread of disease. The Supreme Court long ago held that a state may adopt a program of compulsory immunization for school-age children. *See Zucht v. King*, 260 U.S. 174, 176; 43 S.Ct. 24, 67 L.Ed. 194 (1922); *Jacobson v. Massachusetts*, 197 U.S. 11, 27–29, 25 S.Ct. 358, 49 L.Ed. 643 (1905). It is also well settled that a state is not required to provide a religious exemption from its immunization program. The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children. *See Prince v. Massachusetts*, 321 U.S. 158, 166–67, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ….

*Id.* at 948. Nine years later, in *Workman v. Mingo County Bd. of Ed.*, 419 Fed.Appx. 348 (4th Cir. 2011), the court rejected a free exercise challenge to mandatory vaccination requirement for public school, which included a provision for medical but not religious exemptions, cited and discussed *Jacobson* and *Prince* and concluded the "statute requiring vaccinations as a condition of admission to school

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

does not unconstitutionally infringe [plaintiff's] right to free exercise." *Id.* at 353-354. The court cited numerous consistent decisions, including *McCarthy*. *Id.* at 354. Five years after *Workman*, in *Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015), cert. denied, 136 S.Ct. 104 (2015), the court concluded:

> [W]e agree with the [*Workman*], following the reasoning of *Jacobson* and *Prince*, that mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause. … New York could constitutionally require that all children be vaccinated in order to attend public school. New York law goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs.

*Id.* at 543. Then, the following year, this Court in *Whitlow* discussed *Jacobson* and *Zucht*, quoted from *Prince* that "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death," cited and described *Phillips* and *Workman*, and concluded "it is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements, much less a [personal beliefs exemption]. *Whitlow, supra,* 203 F.Supp.3d at 1083-1085.[8] None of these decisions were related to a pandemic, and all of them are consistent with, among others, opinions of Justices Scalia and Thomas that preceded all of them in decisions also involving enumerated rights in a public school setting. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995) ("Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children. For their own good and that of their classmates, public

---

[8] In *Whitlow* plaintiffs did not dispute that California law, which included a medical exemption and no religious exemption (and still does) "is a neutral law of general application," and the court's analysis under *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990) was limited to correctly rejecting plaintiffs' argument, made here and addressed below, that if there is <u>any</u> secular exemption there must be a religious exemption. Indeed, *Smith* confirmed that the Free Exercise Clause does not "require[] religious exemptions from … health and safety regulation[s] such as … compulsory vaccination laws. *Id.* at 888-889.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

school children are routinely required to submit to various physical examinations, and to be vaccinated against various diseases"); *Bd. of Educ. v. Earls*, 536 U.S. 822, 830–32 (2002) ("A student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety. Schoolchildren are routinely required to submit to … vaccinations against disease. Securing order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults").

Plaintiffs contend the Supreme Court in three recent decisions not involving vaccinations or school attendance "correct[ed] the erroneous *Jacobson* course" and "made [it] clear that *Jacobson* has no applicability to Free Exercise rights." Doc. No. 7-1 at 13. These decisions did no such thing.[9] Moreover, these decisions simply did not address the authority to mandate student vaccinations as a condition of public school attendance, during a pandemic or otherwise. The Supreme Court has noted that enumerated rights "are different in public schools than elsewhere," and that reasonable requirements "to be vaccinated against various diseases" do not implicate First Amendment rights. The high Court has also noted that "medical uncertainties afford little basis for judicial responses in absolute terms," and when

---

[9] In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), in a solo concurrence Justice Gorsuch made several references to *Jacobson*, but his references were limited to taking issue with a single, general reference Justice Roberts made to *Jacobson* in his solo concurrence in a previous denial of an emergency application, and no other Justice joined. *Id* at 70-71, *see South Bay United v. Newsom*, 140 S.Ct. 1613 (2020). Justice Roberts' statement was "Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect,'" and he effectively countered Gorsuch's criticism. 141 S. Ct. at 75-76. In the decisions leading to *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021), *Jacobson* was cited once in this Court, when quoting the entire Roberts' solo concurrence referenced above, 508 F.Supp.3d 756, 759-760, the 9th Circuit did not mention *Jacobson*, 985 F.3d 1128, and neither did the Supreme Court. Finally, in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) there was no citation to *Jacobson*, citations in the district court were limited to a due process claim, 517 F.Supp.3d 922 (2021), and the 9th Circuit did not cite *Jacobson*. 992 F.3d 916 (2021).

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

government officials undertake[] to act in areas fraught with medical and scientific uncertainties" their discretion "must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427 (1974). The District's Mandate, modeled directly on the state law upheld in *Whitlow* and not challenged here, is a reasonable and lawful exercise of that discretion and authority. So is the District's Mandate.

## C.   UNDER *SMITH* AND ITS PROGENY RATIONAL BASIS APPLIES, AND THE MANDATE IS RATIONALLY RELATED TO A LEGITIMATE (INDEED COMPELLING) GOVERNMENTAL INTEREST

If the Court applies the analysis governed by *Emp't Div. v. Smith* and its progeny, it is abundantly clear that Plaintiffs are unlikely to succeed on the merits.

### 1.   The Mandate is Neutral and of General Applicability

Plaintiffs correctly note that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability,'" and that laws meeting this standard are "not subject to strict scrutiny even if it has the effect of burdening a religious belief or practice." *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990). The neutrality inquiry begins with the text of the law in question. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context," *Id.,* or if it is "specifically directed at … religious practice." *Smith*, 494 U.S. at 878. The requirement of general applicability prohibits the imposition "in a selective manner … burdens only on conduct motivated by religious belief," and "protect[s] religious observers against unequal treatment[] and inequality [occurring] when … the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Lukumi*, 508 U.S. at 542–43.

Plaintiffs contend the Mandate is not neutral and/or of general applicability for three reasons: 1) it contains "a system of individualized exemptions" *Id.* at 20-21; 2) it imposes more stringent burden on religious exercise "than other activities,"

005555.00346
35156905.1

Doc. No. 7-1 pp. 17-18; and 3) it references religious exercise for disfavor, *Id.* at 19-20. None of these assertions have factual or legal merit.

a)     The Mandate does not Contain "a System of Individualized Exemptions," nor does it Imposes a More Stringent Burden on Religious Exercise "Than Other Activities"

Plaintiffs' contention that the Mandate is not neutral or of general application because it contains "a system of individualized" exemptions and imposes more stringent burden on religious exercise "than other activities" fails for several reasons.

First, the argument falls flat based solely on its factual inaccuracy. Plaintiffs characterize the Mandate as containing "hardship" exemptions allowing "foster youth, homeless youth, migrant youth, students with an IEP, and members of military families to not get vaccinated depending on an individualized exemption crafted by SDUSD officials." Doc. No. 7-1 at 21. This is simply not true. "Conditional enrollment" of these students is <u>not</u> an exemption from the Mandate, it applies only to newly enrolling students, not the nearly 100,000 students already enrolled, and providing additional time to comply with the Mandate consistent with the mandates of state law is not "an individualized exemption."[10] This leaves the medical exemption, which Plaintiffs also mischaracterize as a flimsy "individualized exemption crafted by SDUSD officials" for "medical issues." It is no such thing, as is described in detail above, and neither is the statutory system for medical exemptions from state-mandated vaccines upon which the exemption is modeled.

Plaintiffs are also wrong on the law. They point to a recent unanimous Supreme Court decision in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), wherein the Court reiterated the longstanding rule that "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a

---

[10] This is also a red herring — granting "conditional enrollment" to Plaintiff Jill Doe would not address her concern.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* at 1877, quoting *Smith*, 494 U.S. at 884. In *Fulton*, the challenged rule "permit[ed] exceptions … at the 'sole discretion' of the Commissioner," and this mechanism for entirely discretionary exceptions rendered the provision not generally applicable "because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude [citation]—here, at the Commissioner's 'sole discretion.'" *Id.* at pp. 1871 and 1878-79. While there is "a rule of thumb" that "the more exceptions to a prohibition, the less likely it will count as a generally applicable, non-discriminatory law," *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020), here there is a single exception and it is not a "mechanism for individualized discretion" of the sort prohibited in *Fulton*.

Plaintiffs' contention that the Supreme Court has announced a "simple rule" "that if exemptions to COVID-19 rules are made for secular purposes, equal or greater exemptions must be made for religious purposes" is also not accurate. The unanimous Supreme Court in *Fulton* did not announce such a rule, nor did Justice Gorsuch when conveying, in *Tandon*, the four "points" he asserted the Court had made "clear." 141 S.Ct. at 1296. Indeed, one need look no further than Justice Gorsuch's dissent in *Does 1–3 v. Mills*, 2021 WL 5027177 at *2 (2021) to undermine what the Plaintiffs advance here — that <u>any</u> secular exemption, no matter how objectively applied, is invalid unless there is also a religious exemption. Justice Gorsuch reaffirmed the rule in *Fulton, supra* that a law only fails to qualify as generally applicable "if it creates a mechanism for 'individualized exemptions," and his dissent did not stop there but went on focus on the <u>nature</u> of the medical exemption, not the mere fact that one existed — his opinion turned on his assessment of the exemption in that case, which was not the objectively-applied exemption to the District's Mandate:

> Nothing in Maine's law requires this [doctor's] note to contain an explanation why vaccination may be medically inadvisable, nor does the law limit what may qualify as a valid 'medical' reason to avoid

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

inoculation. ... [I]ndividuals in Maine may refuse a vaccine for other reasons too [apart from the contraindications recognized by the Food and Drug Administration]. From all this, it seems Maine will respect even mere *trepidation* over vaccination as sufficient, but only so long as it is phrased in medical and not religious terms.

*Ibid*.

Plaintiffs also misleadingly suggest there is a trend in lower federal courts "striking down mandatory vaccination requirements that make no exception for religious beliefs," Doc. No. 7-1, p. 14, and *Dahl v. Board of Trustees of W. Michigan Univ.*, 15 F.4th 728 (6th Cir. 2021). However, in *Dahl* the University's vaccine mandate was not neutral and of general applicability precisely because it invited students to request medical and religious exemptions which University officials considered on an individual basis and at times ignored. The Sixth Circuit explained this was contrary to *Fulton, supra* as follows:

> The University's vaccine mandate likewise provides a "mechanism for individualized exemptions." The policy says that "all student-athletes" must provide proof of at least one dose of a COVID-19 vaccine "to maintain full involvement in the athletic department." But "[m]edical or religious exemptions and accommodations will be considered on an individual basis." ... And, like the city in *Fulton* and the state in *Sherbert*, the University retains discretion to extend exemptions in whole or in part. For this reason, the policy is not generally applicable. As a result, the University must prove that its decision not to grant religious exemptions to plaintiffs survives strict scrutiny. *See Fulton*, 141 S. Ct. at 1881. ...

Plaintiffs also cite to *Dr. A. v. Hochul*, 2021 WL 4734404 (N.D.N.Y. 2021) as a further example of a perceived trend of rulings in their favor, but that case is both distinguishable (the mandate initially "included a medical exemption as well as an explicit religious exemption" until "just eight days later") and it has been reversed. *We The Patriots USA, Inc. v. Hochul*, 2021 WL 5121983 (2021).

On the issue of "other activities," in *Tandon* Justice Gorsuch stated the following relevant to this argument: 1) whenever *any* "comparable secular activity" is treated more favorably than religious exercise, strict scrutiny is triggered even if some secular activities are also treated *less* favorably; and 2) whether two activities are "comparable" must be judged against the "asserted government interest that

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

justifies the regulation at issue," with comparability being "concerned with the risks various activities pose, not the reasons why people gather." 141 S.Ct. at 1296. The Second Circuit's decision last week in *We The Patriots USA, Inc. v. Hochul*, along with the First Circuit's decision last month in *Does 1–3 v. Mills*, 2021 WL 4860328 (2021), undermine Plaintiffs' contention that strict scrutiny applies when a mandate "imposes more stringent burden on religious exercise 'than [presumably any] other activities.'" The standard, of course, is <u>comparable</u> activities, leading in *Tandon* to comparing secular gatherings with <u>comparable</u> religious gatherings. This case, like *Mills* and *We The Patriots*, is different. "[C]arving out an exception for those people to whom [a] physical health risk applies furthers [the District's] asserted interests" — health and safety of students —  "in a way that carving out an exemption for religious objectors would not." *Does 1–3 v. Mills*, 2021 WL 4860328 at *6; *We The Patriots USA, Inc. v. Hochul*, 2021 WL 5121983 at *12 ("[A]pplying the Rule to those who oppose vaccination on religious grounds furthers the State's asserted interests, whereas applying the Rule to those subject to medical contraindications or precautions based on pre-existing conditions would undermine the government's asserted interest in protecting the health of covered personnel").[11]

The District's Mandate includes a single objective medical exemption, not subject to the "sole discretion" of District officials as a unanimous Supreme Court concluded in *Fulton*. The Supreme Court has not held that medical exemptions are unconstitutional absent a religious one, and applying the District's asserted interests here reveals that the "two activities are [not] comparable for purposes of the Free

---

[11] Plaintiffs' citation to then-Judge Alito's opinion in *Fraternal Ord. of Police v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) neglects to note that the court <u>upheld</u> an exemption from the no facial hair policy for undercover officers because those officers were not held out as members of the police force, so exempting them from the policy did not undermine the City's interest in a uniform appearance for its officers. *Id.* at 366. Here, like the undercover officer exception in *Fraternal Order*, providing a medical exemption for students whose health is endangered by a vaccination is consistent with the District's interests.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO EX PARTE APPLICATION

1   Exercise Clause." *Tandon*, 141 S.Ct. at 1296.

2         b)    The Mandate does not Reference Religious Exercise for Disfavor

3        Plaintiffs contend that a factually accurate statement about the law in

4   California — the law upon which the Mandate is modeled — and a statement by a

5   Board member about personal belief exemptions, made after the Board adopted the

6   Mandate, should trigger strict scrutiny because they evidence animosity toward

7   religion and intent to single out and discriminate against religion. This assertion

8   cannot be taken seriously.

9        The primary problem with Plaintiffs' assertion is that it offers up another

10  factual inaccuracy. Desperate to paint Barrera as anti-religions, Plaintiffs contend he

11  asserted the District "will not offer personal belief or religious belief exemptions

12  because 'that creates kind of a loophole,'" then cite to a tax case which states in

13  passing that "loophole" is pejorative when uttered in reference to taxes. Doc. No. 7-

14  1 at 20. The newspaper article cited was in question and answer format, and one

15  question was "Can I get a 'personal belief' exemption from the vaccine mandate?"

16  Barrera is then quoted as saying "we know from states that allow these sort of

17  personal belief (exemptions), that creates kind of a loophole that means large

18  number people don't, in the end, get vaccinated." In addition to the fact that the

19  relevant inquiry is statements during deliberations, prior to taking action, *City of*

20  *Cuyahoga Falls v. Buckeye Cmty. Hope Found*, 538 U.S. 188, 196¬97 (2003);

21  *FemHealth USA, Inc. v. City of Mount Juliet*, 458 F. Supp. 3d 777, 790–96 (M.D.

22  Tenn. 2020), a simple after-the-fact statement about a personal beliefs exemption

23  cannot be the basis for an evidentiary finding that Barrera, let alone the Board or its

24  staff, disfavors religion.[12] And, in the context of deliberations and action to approve

25

26  [12] Plaintiffs note that over 1,600 people expressed opposition to the Roadmap on
27  September 28, 2021, yet now imply that a personal beliefs exemption — for political, sociological, philosophical, and myriad other reasons unrelated to religion
28  — would likely be rarely used.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

the Roadmap, there was a <u>single</u>, factually accurate reference to state law during the September 28, 2021 meeting, hardly analogous to the now-vacated and clearly distinguishable *Hochul* decision on which Plaintiffs rely.

### 2. The Mandate is Rationally-Related to a Legitimate (Indeed Compelling) Interest

When a law "is neutral and of general applicability," "then the law need only survive rationale basis review." *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1232 (9th Cir. 2020), quoting *Lukumi,* 508 U.S. at 531. Under this test, a law must be upheld if it is "rationally related to a legitimate government purpose," *Stormans, Inc. v. Weisman*, 794 F.3d 1064, 1084 (9th Cir. 2015), and there is "a strong presumption of constitutionality and the [government action] will be upheld so long as its goal is permissible and the means by which it is designed to achieve that goal are rational. *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000)). And, Plaintiffs must negate every conceivable basis which might support the Mandate; the District has no duty to produce evidence of a legitimate purpose. *Stormans*, 794 F.3d at 1084.

The interest here is compelling, *Cuomo*, 141 S.Ct. at 67 ("[s]temming the spread of COVID–19 is unquestionably a compelling interest"), and Plaintiffs do not even try to negate a single basis for the Mandate, for good reason. It contains one, narrow exemption, directly and objectively related to the same interest the Mandate is designed to protect; it applies only after full FDA approval, consistent with the health and safety concerns of some parents regarding emergency use authorization; it offers "conditional enrollment" only as required by state law; it is narrowly structured, akin to state law is for state wide mandatory vaccinations; it is based on the objective and extensive advice and input from local public health experts.

### D. EVEN IF STRICT SCRUTINY APPLIED, THE MANDATE IS CONSTITUTIONAL

Rational basis applies here, for the reasons described above. But even if strict scrutiny were applied the Mandate would survive, for the reasons described

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

immediately above, the scientific evidence presented by a local expert who has worked extensively with a number of local epidemiologists and infectious disease experts, and because Plaintiffs' asserted reasons for failing strict scrutiny are faulty: the interest is compelling according to the Supreme Court; the Mandate has one exemption, not "numerous exemptions," for those for whom a vaccine is medically contraindicated; Plaintiffs' assertion that there is no "logical reason" to comply with federal employment law cannot be credited; their attempt to manufacture an existing statewide mandate with a personal beliefs exemption is hollow; a vaccinated individual with natural immunity is more protected than an unvaccinated individual with natural immunity. *See, e.g.* Bresee Decl. Ex. C.

The District, by adopting a Mandate that is modeled on and wholly consistent with longstanding state law regarding ten (10) mandated vaccines, has taken a narrowly-tailored action to serve a compelling interest.

### E.   BALANCE OF HARDSHIPS AND PUBLIC INTEREST

Plaintiffs' failure to demonstrate a likelihood of success on the merits of their claim "is fatal to [their] request," *Steel MMA, LLC v. Newsom*, 2021 WL 778654 at *5, and "the court need not consider the other factors" required for emergency relief. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The irreparable harm Plaintiffs allege is related to Plaintiff Jill Doe's free exercise rights, Doc. No. 7-1 at 24-25, which fails because Plaintiffs have failed to establish likely success on the merits. *Steel MMA, LLC v. Newsom*, 2021 WL 778654 at *5. Further, given the evidence here, the known risk, illness, and death associated with the COVID-19 virus, and the importance of education in a safe environment, "the public interest here lays with the continued protection of the population as a whole." *Ibid*. [13]

---

[13] Plaintiffs' request to proceed pseudonymously. While Defendants are of the opinion that the standard requiring an "unusual case" where plaintiffs "reasonably fear severe harm" is not met here, *Doe v. Kamehameha Schools* 596 F.3d 1036 (9th Cir. 2010), and that fear of severe harm is certainly not established through general statements on MSNBC or CNN, or by Jimmy Kimmel, Defendants are comfortable

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

005555.00346
35156905.1

# IV.    <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that this Court DENY Plaintiffs' Application.

Dated: November 8, 2021                ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By:   /s/ Mark R. Bresee
    Mark R. Bresee
    Amy W. Estrada
    Alyssa Ruiz de Esparza
    Attorneys for Defendants

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
4275 EXECUTIVE SQUARE, SUITE 700
LA JOLLA, CALIFORNIA 92037-1477
TELEPHONE: (858) 485-9526
FAX: (858) 485-9412

with Plaintiffs' offered stipulation based on two facts: 1) the irreparable harm Plaintiffs allege in their brief is related solely to Plaintiff Jill Doe's free exercise rights; and 2) Jill Does' declaration primarily addresses her religious beliefs, which Defendants have no reason to question, and one vague reference to an unidentified teacher and students. In other words, if Plaintiffs' irreparable harm assertions do not expand to issues of in-person school attendance versus distance learning, and the contention that a college athletic scholarship is within Jill Doe's reach but is gone forever if she cannot compete in the upcoming high school season — contentions Defendants are in no position to contest if school officials do not know who she is — Defendants will stipulate.