Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Robert E. Weisenburger, SBN 305682
 rweisenburger@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No.: 3:21-cv-01809-CAB (LL)<br><br>**Reply Memorandum of Points & Authorities in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously**<br><br>Judge: Hon. Cathy Ann Bencivengo<br>Courtroom: 15A<br>Date: November 19, 2021<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................5

REPLY ARGUMENT ....................................................... 6

    1.    Likelihood of Success on the Merits & Irreparable Harm .................. 6

        1.1.    The Vaccination Roadmap imposes more stringent burdens on Religious Exercise than other activities ................ 6

        1.2.    The Vaccination Roadmap is not neutral because it references Religious Exercise for disfavor ............................... 9

        1.3.    The Vaccination Roadmap is not of general application because it contains a system of individualized exemptions ........................................10

        1.4.    The Vaccination Roadmap cannot satisfy Strict Scrutiny, both facially and as applied. ...................................12

    2.    Balance of Harms & Public Interest .................................. 13

CONCLUSION................................................................14

# TABLE OF AUTHORITIES

## CASES

*Brach v. Newsom*, ................................................................ 13
    6 F.4th 904 (9th Cir. 2021)

*CASA de Md., Inc. v. Trump*, ................................................ 14
    971 F.3d 220 (4th Cir. 2020)

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, ............... 9
    508 U.S. 520 (1993)

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, ......................... 6, 10
    15 F.4th 728 (6th Cir. 2021)

*Does 1-10 v. Univ. of Washington*, .......................................... 6
    No. C16-1212JLR, 2018 WL 3417017 (W.D. Wash. July 13, 2018)

*Does 1-3 v. Mills*, ..................................................... passim
    ___ S. Ct. ___, 2021 WL 5027177 (2021)

*Does 1–6 v. Mills*, ................................................... 5, 7, 8
    16 F.4th 20 (1st Cir. 2021)

*Eliott v. QF Circa 37, LLC*, ............................................... 6
    No. 16-CV-00288-BAS-AGS, 2017 WL 5138291 (S.D. Cal. Nov. 3, 2017)

*Emp't Div. v. Smith*, ..................................................... 14
    494 U.S. 872 (1990)

*Fulton v. City of Philadelphia, Pennsylvania*, ..................... 5, 6, 13, 14
    141 S. Ct. 1868 (2021)

*Masterpiece Cakeshop Ltd. v. Colorado Civ. Rts. Comm'n*, ................. 10
    138 S. Ct. 1719 (2018)

*Roberts v. Neace*, ........................................................ 9
    958 F.3d 409 (6th Cir. 2020)

*Roman Cath. Diocese of Brooklyn v. Cuomo*, ............................. 5, 14
    141 S. Ct. 63 (2020)

*South Bay United Pentecostal Church v. Newsom*, ................... 5, 6, 13, 14
    141 S. Ct. 716 (2021)

REPLY MEMORANDUM OF P&As ISO PLAINTIFFS' EX PARTE APPL. FOR A TRO &
OSC RE: PRELIM. INJ.; & FOR LEAVE TO PROCEED PSEUDONYMOUSLY

# TABLE OF AUTHORITIES—CONTINUED

## CASES

*Tandon v. Newsom*, ......................................................... 5, 6, 12, 13, 14
    141 S. Ct. 1294 (2021)

*Vukasovich, Inc. v. Comm'r*, ................................................ 14
    790 F.2d 1409 (9th Cir. 1986)

*We The Patriots USA, Inc. v. Hochul*, .................................. 5, 7, 8, 11
    ___ F.4th ___, 2021 WL 5121983 (2d Cir. 2021)

*Whitlow v. California*, ......................................................... 14
    203 F. Supp. 3d 1079 (S.D. Cal. 2016)

*Yellowbear v. Lampert*, ...................................................... 8, 13
    741 F.3d 48 (10th Cir. 2014)

## RULES, REGULATIONS & STATUTES

10 N.Y.C.R.R. § 2.61(d)(1) ................................................. 11

17 Cal. Code Regs. § 6035(d)(1) .......................................... 9

17 Cal. Code Regs. § 6051 .................................................. 11

Cal. Health & Saf. Code § 120335 ...................................... 10

Cal. Health & Saf. Code § 120338 ...................................... 5, 9

Cal. Health & Saf. Code § 120370 ...................................... 11

Cal. Health & Saf. Code § 120370(a)(1) .............................. 11

Cal. Health & Saf. Code § 120372 ...................................... 11

Cal. Health & Saf. Code § 120372(d)(3)(A) .......................... 11, 12

Cal. Health & Saf. Code § 120372(d)(3)(B) .......................... 12

CivLR 7.1(h) .................................................................... 6

CivLR 83.1 ...................................................................... 6

4

REPLY MEMORANDUM OF P&AS ISO PLAINTIFFS' EX PARTE APPL. FOR A TRO &
OSC RE: PRELIM. INJ.; & FOR LEAVE TO PROCEED PSEUDONYMOUSLY

**INTRODUCTION**

California law provides explicit protection for students with religious or personal belief objections to novel vaccines, such as the COVID-19 vaccines. Cal. Health & Saf. Code § 120338. As such, when the California Department of Public Health ("CDPH") issued a mandate that all students in California must be vaccinated against COVID-19, it specifically mentioned it would allow personal belief exemptions. (Verif. Compl., Ex. 7, p.2.) Despite this, Defendants San Diego Unified School District, its Board of Education, and its Interim Superintendent decided to try finding a way around those protections: by issuing a mandate on their own authority, independent of the public health departments. Plaintiffs are not aware of any other time when a school district has used such a loophole in an attempt to evade religious protections.

At base, Defendants' opposition brief simply resorts to legally arguing that the Supreme Court did not mean what it said in *Roman Catholic Diocese*, *South Bay*, and *Tandon*—and in *Fulton*—and factually pointing to the credentials of its experts to justify its COVID-19 vaccine mandate. Defendants also rely on factually distinguishable cases upholding mandatory vaccinations for healthcare workers, *Mills* and *We The Patriots* (now on emergency application to the Supreme Court), without addressing the obvious: there is a world of difference between requiring healthcare workers to get vaccinated (who are constantly near high-risk, immunocompromised people), and forcing children to get vaccinated (who are generally not at risk) to protect their teachers, most of whom are vaccinated. Society has never sought to protect adults at the expense of children—apparently until now.

For the reasons discussed below, this Court should immediately issue an injunction preventing Defendants from excluding Plaintiff Jill Doe from class or sports on the basis that her faith precludes vaccination from COVID-19.[1]

---

[1] Defendants do not oppose waiving a bond, and also request denial of relief pending appeal. (Opp., 8 n.1.) Further, Defendants do not contest the sincerity of Plaintiffs' religious beliefs, or the burden imposed on them. Finally, Defendants do not oppose

# REPLY ARGUMENT

## 1. LIKELIHOOD OF SUCCESS ON THE MERITS & IRREPARABLE HARM

### 1.1. The Vaccination Roadmap imposes more stringent burdens on Religious Exercise than other activities

In its recent pandemic-related opinions, the Supreme Court announced a bright line rule that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021); *accord South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (Statement of Gorsuch, J.).

In response, Defendants argue that Justice Gorsuch's dissent in *Mills* shows that Plaintiffs have misinterpreted *Tandon/South Bay* because Justice Gorsuch only relied on the Court's recent holding in *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868 (2021). (*See* Doc. No. 15, Opp., 26:12–27:4.) This is simply not true. In *Mills*, Justice Gorsuch made clear that Maine's vaccination mandate for healthcare workers violated both *Fulton* and *Tandon/South Bay*. *See Does 1-3 v. Mills*, ___ S. Ct. ___, 2021 WL 5027177, at *2 (2021) ("*Mills II*") (Gorsuch, J., dissenting) (discussing *Fulton*); *id.* at *2–3 (discussing *Tandon/South Bay*).

Indeed, Justice Gorsuch's dissent discussed *Tandon/South Bay* at far greater length than *Fulton* because he had to address the creative mental acrobatics the lower courts engaged in to hold that medical and religious exemptions to COVID-19 pseudonymity, but only if Plaintiffs waive certain arguments. (Opp., 31 n.13.) Plaintiffs will not waive them: a college sports career provides innumerable intangible benefits for a young woman beyond merely the cost of tuition, *Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728, 732–33 (6th Cir. 2021), and pseudonymous discovery is possible. *See Does 1-10 v. Univ. of Washington*, No. C16-1212JLR, 2018 WL 3417017, at *2 (W.D. Wash. July 13, 2018). In any event, this last discussion occurs on the 26th page of Defendants' overlong opposition brief, which this Court should strike. CivLR 7.1(h); *see* CivLR 83.1; *Eliott v. QF Circa 37, LLC*, No. 16-CV-00288-BAS-AGS, 2017 WL 5138291, at *2 (S.D. Cal. Nov. 3, 2017).

6

REPLY MEMORANDUM OF P&As ISO PLAINTIFFS' EX PARTE APPL. FOR A TRO &
OSC RE: PRELIM. INJ.; & FOR LEAVE TO PROCEED PSEUDONYMOUSLY

vaccination are not "comparable." Here, as Justice Gorsuch explained, the recent opinions of the First and Second Circuits in *Does 1–6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) ("*Mills I*"), and *We The Patriots USA, Inc. v. Hochul*, ___ F.4th ___, 2021 WL 5121983 (2d Cir. 2021), are logically fallacious.

To begin, the opinions' "comparability" analysis is extremely flawed. The question is whether "a worker who is unvaccinated for medical reasons is less likely to spread or contract the virus than someone who is unvaccinated for religious reasons," or stated differently, whether "unvaccinated religious objectors and unvaccinated medical objectors are equally at risk for contracting COVID-19 or spreading it to their colleagues." *Mills II*, 2021 WL 5027177, at *2–3 (Gorsuch, J., dissenting). Since there is no way to answer these questions in the negative (and Defendants offer none), medical and religious exemptions are comparable.

Here, Defendants attempt to resort to the logical fallacy endorsed by the courts in *Mills I* and *We The Patriots*, of "reimagining[]" the governmental interest at too high a "level of generality." *Mills II*, 2021 WL 5027177, at *3 (Gorsuch, J., dissenting). Thus, Defendants say that their interest is promoting the "health and safety of students." (Opp., 28:11; *see also id.* at 21:8–9.) But, as Justice Gorsuch explained, this does not logically work: "Unvaccinated children"—*for whatever reason they are unvaccinated*—"do contribute to new variants." (Opp., 11:8–9 (quoting Dr. Taras, Bresee Decl., Ex. A, 7:21–8:3); Taras Decl., ¶ 29 (opining that "the vaccine lacks 100% effectiveness").) Thus, if Defendants' stated interests were as compelling as they contend, then (1) they would require that any students who could not get vaccinated—for whatever reason—must enroll in independent, online study (which is not the case—unvaccinated students with medical exemptions are deemed safe enough to be on campus); and (2) teachers would not be given any religious exemptions (in fact, SDUSD is giving teachers religious exemptions).

By attempting to imagine their interest at too high a level, Defendants fall into the trap of extreme underinclusivness. "A law's underinclusiveness—its failure to

cover significant tracts of conduct implicating the law's animating and putatively compelling interest—can raise with it the inference that the government's claimed interest isn't actually so compelling after all." *Yellowbear v. Lampert*, 741 F.3d 48, 60 (10th Cir. 2014) (Gorsuch, J.) If the interest of "health and safety" is paramount why allow *any* students (or teachers) to have in-person study, vaccinated or not?

This question was put to the courts in *Mills* and *We The Patriots*, and the answer—that does not apply here—was that a State "must keep its healthcare facilities staffed in order to treat patients." *Mills I*, 16 F.4th at 31; *accord We The Patriots*, 2021 WL 5121983, *12. Why must Defendants allow their students in-person study—including those students who cannot get vaccinated for medical reasons? Presumably the answer is because allowing in-person study actually promotes "health and safety of students" by allowing children the fellowship and personal interaction they absolutely need. (*See* French Decl., ¶¶ 58–68; Taras Decl., ¶ 24)

But this just leads back to the same fallacy. If the mental health needs of students who cannot get vaccinated for medical reasons are important enough to waive the vaccination requirement for them, *then as a matter of law*, the mental health needs of students who cannot get vaccinated for religious reasons are important enough to waive the vaccination requirement for them. *See Mills II*, 2021 WL 5027177, at *3 (Gorsuch, J., dissenting) ("If the State refuses religious exemptions, religious workers will be fired for refusing to violate their faith, which will *also* mean fewer healthcare workers available to care for patients.").[2]

[2] Presumably recognizing this logical fallacy pointed out by Justice Gorsuch, the Second Circuit engaged in a highly factual discussion of how there are likely to be more religious objectors than medical objectors in the healthcare industry in New York, and how medical objections are likely to be short in time, as a second basis for rejecting comparability. *We The Patriots*, 2021 WL 5121983, *12–14 & n.28 (citing *Mills II*, 2021 WL 5027177, at *2 (Gorsuch, J., dissenting)). Here, Defendants seem to fear-monger about a flood of religious objectors (Opp., 29 n.12), but submit no supporting evidence. Further, in one breath Defendants argue that "conditional enrollment" of foster, military, migrant, and homeless youth is not an exemption to COVID-19 vaccination

### 1.2.   The Vaccination Roadmap is not neutral because it references Religious Exercise for disfavor

In Free Exercise analysis, "[a] law lacks facial neutrality if it refers to a religious practice" unless it is clear that the words used were intended to have "a secular meaning." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). Here, the Vaccination Roadmap is not neutral because it refers to religious practices by going out of its way to expressly disclaim any willingness to accommodate them. (*See* Verif. Compl., Ex. 1, p.15 ("State law does not recognize religious . . . belief exemptions for student immunizations"); *id.* at Ex. 5, p.12; Opp., 29:24–30:3 (citing Ms. Barndollar's statement, Bresee Decl., Ex. A, 22:16–21).)

Defendants first argue that this is not enough evidence of "animosity toward religion." (Opp., 29:6–7.) But "[t]he constitutional benchmark is 'government *neutrality*,' not 'governmental avoidance of bigotry.'" *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020). By referencing religion, Defendants' Vaccination Roadmap took itself out of the realm of a neutral and generally applicable law.

Defendants also argue that their Vaccination Roadmap merely contained "a factually accurate statement about the law in California—the law upon which the Mandate is modeled." (Opp., 29:3–4.) Hardly. The description of California law is wrong to the point that it appears intended to mislead. If the CDPH acts alone in requiring vaccination from a disease to attend school, then state law *does recognize religious belief exemptions* for student vaccinations. (*See* Verif. Compl., Ex. 7, p.2 (citing Cal. Health & Saf. Code § 120338).) It is only if the California Legislature adds a

because they can only be conditionally enrolled for 30 days (Opp., 15:4–16:1 & n.6 (citing 17 Cal. Code Regs. § 6035(d)(1)), and in another breath they admit to another exemption of which Plaintiffs were unaware, for pregnant students (Opp., 18:16–18), even though Defendants maintain that "vaccination during pregnancy" is medically "recommended." (Taras Decl., ¶ 34; *accord* Barndollar Decl., Ex. A, p.2 ("COVID-19 vaccination is recommended during pregnancy").) This new exemption—which Defendants do not even argue is needed for public health purposes—also makes the Vaccination Roadmap not generally applicable.

9

Reply Memorandum of P&As ISO Plaintiffs' Ex Parte Appl. for a TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

vaccine to a list of traditional vaccines (currently just 10), then no religious belief exemptions are allowed. *See* Cal. Health & Saf. Code § 120335. And in any event, this whole regime is *irrelevant* to SDUSD's own, separately-issued COVID-19 vaccination requirements. (Bresee Decl., Ex. B, p. 2 (Superior Court order stating that state law does not occupy the field).) Presumably this is why in its most recent statements, Defendants no longer reference state law, and simply state: "San Diego Unified does not allow religious exemptions for this particular vaccine." (Jane Doe Decl., Ex. 1.)

SDUSD is perfectly free to join the CDPH in granting a religious belief exemption, but it prefers to be an outlier, not only in the nation, but also in California. Beyond the lack of facial neutrality in the Vaccination Roadmap, Defendants' dogged attempt to thwart the religious protections in California law by issuing a COVID-19 vaccine mandate independent of the CDPH is more than enough evidence to raise a "slight suspicion" of "distrust of [religious] practices," triggering strict scrutiny. *Masterpiece Cakeshop Ltd. v. Colorado Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1731 (2018).[3]

### 1.3. The Vaccination Roadmap is not of general application because it contains a system of individualized exemptions

The Sixth Circuit and Justice Gorsuch both recently held that a medical exemption to a COVID-19 vaccine mandate was by definition a system of individualized exemptions making the mandate not generally applicable. *Dahl v. Bd. of Trustees of W. Michigan Univ.*, 15 F.4th 728, 733–34 (6th Cir. 2021) ("*Dahl II*"); *Mills II*, 2021 WL 5027177, at *2 (Gorsuch, J., dissenting). In discussing the First Circuit's error on this point, Justice Gorsuch noted the breadth of the discretion afforded to

---

[3] Incredibly, Defendants falsely state "that *all* meetings of the Board during the COVID-19 pandemic have been held with the public participating remotely[.]" (Opp., 9 n.2 (emphasis added) (citing Thede Decl., ¶ 7 ("[S]ince the beginning of the COVID-19 pandemic all public participation at all Board of Education meetings has been remote, not in-person.")).) A simple review of the Board's website puts the lie to this, as well as the Board's posted YouTube videos of its meetings. (*See* Supp. Trissell Decl., ¶¶ 2–8 & Exs. 19–22_ (citing YouTube video of July 21, 2021 Board Meeting, public comment section, https://youtu.be/tjTF68WMVoQ?t=2207).)

10

Reply Memorandum of P&As ISO Plaintiffs' Ex Parte Appl. for a TRO & OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

doctors to certify a medical exemption, noting that "mere *trepidation* over vaccination [is] sufficient, but only so long as it is phrased in medical and not religious terms." *Mills II*, 2021 WL 5027177, at *2 (Gorsuch, J., dissenting).

Responding to both cases, the Second Circuit in *We The Patriots* argued that New York's medical exemption was much more tightly crafted, permitting medical exemptions only for specifically delineated medical contraindications. *We The Patriots*, 2021 WL 5121983, *14–15 & nn.28–29. Understandably, Defendants attempt to portray their medical exemption as similar to the one described in *We The Patriots* (Opp., 25:18–22; 28:18–20 (citing Opp., 18:4–19:6)), but this fails for two reasons.

*First*, the Second Circuit in *We The Patriots* exaggerated the medical exemption in that case. There, the statute at issue states that the medical exemption "*must be* in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services)[.]" 10 N.Y.C.R.R. § 2.61(d)(1) (emphasis added). Plaintiffs dispute the Second Circuit's conclusion that "[o]n its face, the Rule affords no meaningful discretion to the State or employers," *We The Patriots*, 2021 WL 5121983, *14, and note that the case is now before the Supreme Court.

*Second*, the statute here is not like the statute in New York. Defendants state that they have decided to follow the medical exemption standards for state-mandated vaccines for their own vaccine mandate. (Opp., 18:8–12 (citing Cal. Health & Saf. Code §§ 120370, 120372); Barndollar Decl., ¶ 4.) According to that state-wide regime, a student need only submit "a written statement by a licensed physician and surgeon to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe[.]" Cal. Health & Saf. Code § 120370(a)(1); 17 Cal. Code Regs. § 6051.

If the basis of the medical exemption is not one known by "CDC, ACIP, or AAP," then the CDPH "*may* contact the . . . issuing physician to request additional information to support the medical exemption," Cal. Health & Saf. Code

§ 120372(d)(3)(A) (emphasis added), and, "based on the medical discretion of the clinically trained immunization staff member," the CDPH "*may* accept a medical exemption that is based on other contraindications or precautions" if it "is consistent with the relevant standard of care." *Id.* at subd. (d)(3)(B) (emphasis added).

As applied here, the medical exemption will not be reviewed by the CDPH (because it is independent of any State-wide mandate), but rather by Dr. Howard Taras. (*See* Barndollar Decl., ¶ 5.) In response to Plaintiffs' expert's concern that the effect of the interaction of COVID-19 vaccines with many chronic diseases is not yet known, (Bhattacharya Decl., ¶¶ 10, 32–34), Dr. Taras responded simply that he and treating physicians will have adequate discretion to deal with these situations. (Taras Decl., ¶ 30.) This is essentially an admission that, in reality, the novelty of the COVID-19 vaccines means that physicians must exercise wide discretion in issuing medical exemptions (*see* Supp. French Decl., ¶ 50)—discretion that makes clear that the Vaccination Roadmap here is essentially the same as the vaccine mandate discussed by Justice Gorsuch in *Mills*, triggering strict scrutiny.

### 1.4. The Vaccination Roadmap cannot satisfy Strict Scrutiny, both facially and as applied.

Once strict scrutiny is triggered, "the government has the burden to establish that the challenged law satisfies strict scrutiny." *Tandon*, 141 S. Ct. at 1296. Defendants try to meet this burden in 15 lines of text, that incorporates their rational basis analysis by reference. (Opp., 30:26–31:13 (citing Opp., 30:17–25).)[4] To begin, Defendants argue that their medical exemptions are in the interest of public health. (Opp., 30:19–21, 30:23.) But framing the compelling interest at the high level of generalization of "public health" does not work. "[T]he government must prove the 'compellingness' of its interest in the context of 'the burden on *that person*'[.]"

---

[4] Plaintiffs do not concede that Defendants' Vaccination Roadmap is even rational. *See Mills II*, 2021 WL 5027177, at *4 (Gorsuch, J., dissenting) (stating that Maine's refusal of religious exemptions "borders on the irrational.").

*Yellowbear*, 741 F.3d at 57 (Gorsuch, J.); *accord Fulton*, 141 S. Ct. at 1881. Thus, in response to the fact that Plaintiff Jill Doe already recovered from COVID-19 and has natural immunity *greater* than vaccinated students (*see* French Decl., ¶¶ 40–48; Bhattacharya Decl., ¶¶ 12–26; Supp. French Decl., ¶¶ 51–58), Defendants state that getting vaccinated will boost her immunity even further. (Opp., 31:8–10 (citing Bresee Decl., Ex. C, p.7).)

But under this reasoning, Defendants should force all vaccinated students to also contract COVID-19, to boost their immunity (*see* Bhattacharya Decl., ¶ 50), because this burden of boosting immunity by a "vanishingly small" amount (*id*. at ¶ 49) cannot be imposed solely on religious objectors. *Tandon*, 141 S. Ct. at 1296–97. In any event, Defendants ignore that still no State has a COVID-19 vaccine mandate for students (Supp. French Decl., ¶ 66); California's mandate allows for religious exemptions for students; and teachers can get religious exemptions. Each of these necessarily defeats strict scrutiny. *Brach v. Newsom*, 6 F.4th 904, 932 (9th Cir. 2021); *South Bay*, 141 S. Ct. at 717 (2021) (Statement of Gorsuch, J.) ("California is the only State in the country that has gone so far").

## 2. BALANCE OF HARMS & PUBLIC INTEREST

Defendants' argument here is that (1) Plaintiffs will suffer no injury because their Free Exercise rights are not actually violated (Opp., 31:15–21); and (2) given "the known risk, illness, and death associated with the COVID-19 virus, and the importance of education in a safe environment," the public interest favors them. (Opp., 31:21–24.) The first argument is a concession that if Plaintiffs' constitutional rights are being violated, they are suffering irreparable and irremediable harm. The second argument is not supported by any factual citation, but seems supported by Dr. Taras. In his declaration, he states that despite "other mitigations in school," "new Covid Hospital admissions are increasing among young individuals . . . here in San Diego[.]" (Taras Decl., ¶ 33.) This is cherry picked data. Hospitalizations in San Diego County are falling (Supp. French Decl., ¶ 64), and the hospitalization rate of

1    young people has been, and continues to be, de minimis compared to others. (*Id.*)
2    COVID-19 cases in children have also always been extremely small, and are falling.
3    (*Id.* at ¶ 65.) That Defendants did not submit the County's own, readily available
4    data posted online, is telling.

5                                **CONCLUSION**

6          Five years, ago, a Court in this District engaged in what was presumably a
7    proper application of the law when it applied *Employment Division v. Smith*, 494 U.S.
8    872 (1990), to a Free Exercise challenge to the California Legislature's decision to
9    remove a "personal belief" exemption from its list of 10 mandated vaccines for
10   students. *Whitlow v. California*, 203 F. Supp. 3d 1079 (S.D. Cal. 2016). Defendants
11   rely on this, and similar cases, to argue that this Court should not track a new course.
12   (Opp., 21:7–23:7.) But this Court's "function cannot be limited to a mere blind
13   adherence to precedent." *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1416 (9th Cir.
14   1986). The Court must "decide [this] case[] according to [its] reasoned view of the
15   way [the] Supreme Court would decide the pending case today," for "a later
16   [Supreme Court] decision in conflict with prior ones has the effect to overrule them,
17   whether mentioned and commented or not." *Id.* (cleaned up).

18         In the past year, the Supreme Court has announced how it now views the Free
19   Exercise clause in *Roman Catholic Diocese*, *South Bay*, *Tandon*, and *Fulton*—which
20   this Court must follow. Even though Justice Gorsuch's application of the *Tandon/*
21   *South Bay* analysis in *Mills II* is not "technical[ly]" binding, since two more Justices
22   wrote separately to make clear they do not disagree with it, "every maxim of
23   prudence suggests" that it should be followed. *See CASA de Md., Inc. v. Trump*, 971
24   F.3d 220, 229–30 (4th Cir. 2020). Thus, for the foregoing reasons, Plaintiffs
25   respectfully request that this Court grant their application in full.

26

27

28

14

REPLY MEMORANDUM OF P&AS ISO PLAINTIFFS' EX PARTE APPL. FOR A TRO &
OSC RE: PRELIM. INJ.; & FOR LEAVE TO PROCEED PSEUDONYMOUSLY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: November 12, 2021        By: _____

Charles S. LiMandri
Paul M. Jonna
Mark D. Myers
Jeffrey M. Trissell
Robert E. Weisenburger
Milan L. Brandon II
Attorneys for Plaintiffs

Reply Memorandum of P&As ISO Plaintiffs' Ex Parte Appl. for a TRO &
OSC re: Prelim. Inj.; & for Leave to Proceed Pseudonymously

## CERTIFICATE OF SERVICE

### *John Doe, et al. v. San Diego Unified School District, et al.*

USDC Court Case No.: 3:21-cv-1809-CAB-LL

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **Reply Memorandum of Points & Authorities in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously;**
- **Plaintiffs' Evidentiary Objections in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously;**
- **Supplemental Declaration of Jeffrey M. Trissell, Esq. in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously;**
- **Supplemental Declaration of Richard Scott French, M.D., in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously; and**
- **Declaration of Plaintiff Jane Doe in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, and Order to Show Cause re: Preliminary Injunction; and for Leave to Proceed Pseudonymously.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Mark R. Bresee, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
4275 Executive Square, Ste. 700
La Jolla, CA 92037
Tel: (858) 485-9526; Fax: (562) 653-3658
E-Mail: MBresee@aalrr.com
**Attorneys for Defendants**

_____ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on November 12, 2021, at Rancho Santa Fe, California.

_____
Kathy Denworth