UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT et al.,<br><br>　　　　　　　　Defendants. | Case No.: 21-CV-1809-CAB-LL<br><br>**ORDER VACATING HEARING AND DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Doc. No. 7] |

This matter is before the Court on Plaintiffs' application for a temporary restraining order. The application has been fully briefed, and a hearing is currently on calendar for November 19, 2021. Upon review of the briefs, however, the Court deems the application suitable for submission without oral argument. Accordingly, the hearing is **VACATED**, and for the reasons set forth below, the application is **DENIED**.

**I.     Background**

**A. SDUSD's Vaccination Roadmap**

On September 28, 2021, Defendant San Diego Unified School District ("SDUSD") adopted, via a document called a Vaccination Roadmap, a requirement that all students eligible for a fully FDA approved COVID-19 vaccine receive all required doses of that vaccine by December 20, 2021, to attend school in-person and participate in extra-

curricular activities. [Doc. No. 1 at 31-34.] At the time the Vaccination Roadmap was published, and currently, the only COVID-19 vaccine fully FDA approved for minors is the BioNTech-Pfizer vaccine, now marketed as "Comirnaty," which is full approved only for individuals age 16 and older. [Doc. No. 15-2 at 5.] Thus, the Vaccination Roadmap currently requires only students age 16 and over to be vaccinated by December 20, 2021. [*Id.* at 33-34.] The BioNTech-Pfizer vaccine consists of two injections 21 days apart, meaning that students age 16 and older must receive their first dose by November 29, 2021, to complete the two dose regimen by December 20, 2021, in compliance with the Vaccination Roadmap. [*Id.*]

The Vaccination Roadmap allows for medical exemptions to the vaccination requirement, and also allows foster youth, homeless, migrant, military family, and students with an Individualized Education Program ("IEP") to conditionally enroll, consistent with state law applicable to other immunizations required for students. *See, e.g.,* Cal. Educ. Code §§ 48204.7, 48850, 48852.7, 49069.5, 49701; Cal. Health & Safety Code § 120341. Contrary to Plaintiffs' arguments, the Vaccination Roadmap does not exempt these students from receiving a fully FDA approved COVID-19 vaccine. [Doc. No. 15-4 at 5, ¶ 6.] The Vaccination Roadmap does not provide for religious or personal belief exemptions to the COVID-19 vaccine requirement, just as the state does not provide for such exemptions to state-wide immunization requirements for ten other diseases as a precondition for admission to school. Cal. Health & Safety Code § 120325 *et seq.*

### B. Plaintiffs' Free Exercise Claim

Plaintiff Jill Doe is a 16-year-old student in her junior year at Scripps Ranch High School in SDUSD. [Doc. No. 1 at ¶ 10.] She asserts that her religious beliefs preclude her from taking any of the available COVID-19 vaccines. [Doc. No. 7-4.] On October 22, 2021, she and her parents filed this lawsuit against SDUSD and the individual members of SDUSD's board claiming that the Vaccination Roadmap violates her rights under the Free Exercise Clause of the First Amendment to the Constitution. They also request leave to proceed pseudonymously for fear of harassment by SDUSD officials, teachers, or students.

[Doc. No. 1 at ¶ 45.] In the prayer for relief, Plaintiffs ask that the Vaccination Roadmap, facially and as applied to Jill Doe, be declared as violating the First Amendment, and seek preliminary and permanent injunctions preventing SDUSD from granting any exemptions to the Vaccination Roadmap "unless they give the exact same exemption to individuals who cannot get vaccinated for religious reasons." [*Id.* at 18.]

On November 1, 2021, Plaintiffs filed the ex parte application for a temporary restraining order ("TRO") and for leave to proceed pseudonymously that is currently before the Court. Pursuant to a briefing scheduled agreed upon by the parties, Defendants filed their opposition on November 8, 2021 [Doc. No. 15], and Plaintiffs filed a reply on November 12, 2021 [Doc. No. 18].

The briefing includes various declarations with exhibits from the parties and their experts. Each side also submitted objections to the other side's evidence [Doc. Nos. 15-5, 15-6, 18-1, 19], most of which are based on relevance. Because the Court is competent to determine whether evidence is relevant and to disregard any evidence that is not, all of the evidentiary objections are overruled.

## II.   Standing for Scope of Injunction Sought

Although Defendants do not address the issue, "standing is a threshold issue" and the Court must "consider whether [the plaintiff] has demonstrated standing for the form of relief that is sought." *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (internal quotation marks, brackets and ellipses omitted) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). At the preliminary injunction stage, the plaintiff "'must make a clear showing of each element of standing,' proving (1) an injury in fact that is 'concrete and particularized' and 'actual or imminent'; (2) 'a causal connection between the injury and the conduct complained of'; and that (3) 'the injury will likely be redressed by a favorable decision.'" *Id.* (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013)). "'[S]tanding is not dispensed in gross': A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S.Ct. 1916, 1934 (2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 354 (2006)).

Although Plaintiff Jill Doe satisfies the first two requirements, the injunction Plaintiffs[1] seek here is not tailored to redress the injury Plaintiffs claim they will suffer as a result of the Vaccination Roadmap.  The Vaccination Roadmap requires Jill Doe to either get vaccinated for COVID-19, which she is unwilling to do based on her religious beliefs, or stop attending in-person classes and participating in extra-curricular activities.  Thus, the injury to Jill Doe is her inability to attend in person classes and participate in extra-curricular activities.  The injunction Plaintiffs seek, however, does not require Defendants to allow Jill Doe to continue attending in-person classes and participating in extra-curricular activities without being vaccinated for COVID-19.  Instead, Plaintiffs ask for the following injunction:

> Defendants, their agents, employees, and successors in office, are restrained and enjoined from granting any exemptions to the Vaccination Roadmap for medical reasons, foster youth, homeless youth, migrant youth, students with an IEP, and members of military families, unless they give the exact same or a better exemption to Plaintiff Jill Doe, who cannot get vaccinated for religious reasons.

[Doc. No. 7 at 2.]  Although Defendants could comply with this injunction by granting an exemption to Jill Doe, they could also comply while preventing Jill Doe from attending in-person classes and participating in extra-curricular activities unless she gets vaccinated for COVID-19.  Specifically, if the Court enters this injunction, Defendants could comply by eliminating all exemptions or exceptions to the vaccination requirements in the Vaccination Roadmap, in which case Jill Doe will be in the same position she is now—unable to attend in-person classes and unable to participate in extra-curricular activities.  Thus, any claim that this injunction will redress Jill Doe's injury is merely speculative.  *Lujan v. Defs. of*

---

[1] It also bears noting that although the complaint purports to assert claims on behalf of Jill Doe as well as individual claims by each of her parents, the complaint only asserts one claim for violation of the Free Exercise clause of the First Amendment to the Constitution.  It is unclear how the Vaccination Roadmap, which does not require the parents to receive a COVID-19 vaccine, implicates the parents' free exercise rights or how they have individual standing to contest its constitutionality.

*Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"). In sum, Plaintiffs do not make a clear showing that a favorable decision on the broad injunction they seek is likely to redress Jill Doe's injury.[2]  Accordingly, the instant motion can be denied on this ground alone.

### III.  Discussion

Even if Plaintiffs have standing for the injunction they seek, or actually sought an injunction tailored to their alleged injury, their motion fails on its merits.  The standards for a TRO and preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (internal quotation marks and citation omitted) (*emphasis* in original).  "[The] purpose of a preliminary injunction ... is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)).

---

[2] Relatedly, the TRO Plaintiffs seek is overbroad.  Overbreadth, though not typically addressed in the caselaw as such, appears to be another way of saying that the plaintiffs lack standing for the breadth of injunctive relief sought.  *See generally Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (noting that an overbroad injunction is an abuse of discretion and that the "district court abused its discretion in enjoining the rules themselves as opposed to enjoining their enforcement as to the plaintiffs before him who asserted religious objections . . ."); *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987) ("Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown."); *cf. Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1049 (9th Cir. 2013) ("Injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court.") (internal quotation marks and citation omitted).  The fact that Plaintiffs seek a declaration that the Vaccination Roadmap is unconstitutional does not warrant a *preliminary* injunction that would preclude enforcement as to anyone other than Jill Doe.  *See McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012) (holding that the fact that the plaintiff may ultimately be entitled to declaration that the statute in question is unconstitutional and thus unenforceable against anyone "does not mean that the *preliminary* injunction should apply so broadly, at least in the absence of class certification.") (*emphasis* in original).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *City & Cty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 788–89 (9th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Defendants here focus their opposition on the first requirement (likelihood of success on the merits), which "is the most important" factor. *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

### A. Likelihood of Success on the Merits

The complaint asserts one claim under 42 U.S.C. § 1983—that the Vaccination Roadmap violates the Free Exercise clause of the First Amendment to the United States Constitution. Although the COVID-19 vaccines are new, the argument that vaccine requirements generally, and requirements that children obtain vaccinations to attend school, violate free exercise rights is not, and courts have consistently rejected it. *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) ("The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."); *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) ("New York could constitutionally require that all children be vaccinated in order to attend public school."); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353–54 (4th Cir. 2011) ("In sum, following the reasoning of *Jacobson* [*v. Massachusetts*, 197 U.S. 11 (1905)] and *Prince*, we conclude that the West Virginia statute requiring vaccinations as a condition of admission to school does not unconstitutionally infringe [the plaintiff's] right to free exercise. This conclusion is buttressed by the opinions of numerous federal and state courts that have reached similar conclusions in comparable cases."); *Klaassen v. Trustees of Indiana Univ.*, No. 1:21-CV-238 DRL, 2021 WL 3073926, at *39 (N.D. Ind. July 18, 2021) ("[C]ourts have consistently held that schools that provided a religious exemption from mandatory vaccination requirements did so *above and beyond* that mandated by the Constitution.") (*emphasis* in original) (citing cases); *Whitlow v.*

*California*, 203 F. Supp. 3d 1079, 1084 (S.D. Cal. 2016) ("[I]t is clear that the Constitution does not require the provision of a religious exemption to vaccination requirements."); *McCarthy v. Boozman*, 212 F. Supp. 2d 945, 948 (W.D. Ark. 2002) ("It is also well settled that a state is not required to provide a religious exemption from its immunization program. The constitutional right to freely practice one's religion does not provide an exemption for parents seeking to avoid compulsory immunization for their school-aged children."). In light of the overwhelming weight of authority upholding vaccination requirements in response to free exercise challenges, the Court finds that Plaintiffs are not likely to succeed on the merits of their claim.

Indeed, in the conclusion to their reply [Doc. No. 18 at 14], Plaintiffs acknowledge that the weight of authority (both Supreme Court and otherwise) is against them, arguing that this Court should ignore these cases and instead base its decision on a guess that the Supreme Court may overrule this precedent. Although they do not say so outright, Plaintiffs ask the Court to disregard *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990), and any other cases that relied on *Smith* when upholding laws in the face of free exercise challenges. The Supreme Court, however, expressly declined to revisit *Smith* in *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1876-77 (2021), and this court declines Plaintiffs' invitation to disregard *Smith* here.

In *Smith*, the Court stated that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 494 U.S. at 879 (internal quotation marks and citation omitted). "*Smith* held that laws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton*, 141 S.Ct. at 1876. Thus, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi*

*Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Further, "nowhere in [*Smith*] does the Supreme Court state that if the government provides a secular exemption to a law or regulation that it must also provide a religious exemption. Indeed, a majority of the Circuit Courts of Appeal have 'refused to interpret *Smith* as standing for the proposition that a secular exemption automatically creates a claim for a religious exemption.'" *Whitlow*, 203 F.Supp. 3d at 1086 (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006)).

Plaintiffs point to recent Supreme Court cases finding a likelihood of success on free exercise challenges to restrictions on gatherings intended to curtail the spread of COVID-19,[3] and to *Fulton*, as supporting their position that the Vaccination Roadmap is not neutral and generally applicable and therefore is subject to strict scrutiny. Yet, circuit courts have distinguished these cases, holding that COVID-19 vaccination requirements that include medical exemptions[4] but do not allow for religious exemptions are subject to rational basis review and that plaintiffs seeking preliminary injunctions do not have a likelihood of success on their free exercise challenges to those mandates. *See We The Patriots USA, Inc. v. Hochul,* No. 21-2179, 2021 WL 5121983, at *14 (2d Cir. Nov. 4, 2021) (noting that "an exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons" and that a medical exemption to a COVID-19 vaccination requirement did not "'invite' the government to decide which reasons for not

---

[3] In particular, Plaintiffs rely on *Tandon v. Newsom*, 141 S.Ct. 1294 (2021); *South Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (2021); and, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63 (2020).

[4] Plaintiffs also point to the provisions for conditional enrollment of certain categories of students without proof of vaccination as further evidence that the Vaccination Roadmap is not neutral and generally applicable. However, that the Vaccination Roadmap accommodates the unique circumstances of some students by giving them additional time to comply with the vaccine requirement does not mean that Defendants must allow others to avoid the vaccination requirement entirely to preserve the general applicability of the plan. *See generally Stormans, Inc.*, 586 F.3d at 1135 ("That the pharmacy regulations recognize some exceptions cannot mean that the Board has to grant all other requests for exemption to preserve the 'general applicability' of the regulations.'").

complying with the policy are worthy of solicitude.") (quoting *Fulton*, 141 S. Ct. at 1879); *Does 1-6 v. Mills,* 16 F.4th 20, 31 (1st Cir. 2021) ("The medical exemption is meaningfully different from exemptions to other COVID-19-related restrictions that the Supreme Court has considered. In those cases, the Supreme Court addressed whether a state could prohibit religious gatherings while allowing secular activities involving everyday commerce and entertainment and it concluded that those activities posed a similar risk to physical health (by risking spread of the virus) as the prohibited religious activities.") (citing *Tandon*, 141 S.Ct. at 1297, *Roman Cath. Diocese of Brooklyn*, 141 S.Ct. at 66-68, and *S. Bay Pentecostal Church*, 141 S.Ct. at 717); *cf. Klaassen*, 2021 WL 3073926, at *24 (noting "the consistent use of rational basis review to assess mandatory vaccination measures."). Like these other cases, the Court finds that the Vaccination Roadmap is subject only to rational basis review. Further, the Roadmap easily passes that test as "a reasonable exercise of the State's power to enact rules to protect the public health." *We the Patriots*, 2021 WL 5121983, at *15.

In sum, "State Legislatures have a long history of requiring children to be vaccinated as a condition to school enrollment, and for as many years, both state and federal courts have upheld those requirements against constitutional challenge. History, in itself, does not compel the result in this case, but the case law makes clear that States may impose mandatory vaccination requirements without providing for religious or conscientious objections." *Whitlow*, 203 F. Supp. 3d at 1092. The mere possibility that the Supreme Court could hold that these cases were decided incorrectly is insufficient for this Court to find that Plaintiffs have a likelihood of success on their free exercise claim here.

### B. Irreparable Harm

Because Plaintiffs fail to demonstrate a likelihood of success on the merits, "the court need not consider the other factors" required for a preliminary injunction. *Disney Enter.,* 869 F.3d at 856. For completeness, however, the Court also finds that Plaintiffs do not establish irreparable harm as required for the issuance of a TRO.

Plaintiffs point out that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of*

*Brooklyn*, 141 S.Ct. at 67 (quoting *Elrod v. Burns*, 427 U.S. 347, 373, (1976) (plurality opinion)).  Plaintiffs also quote another case involving COVID-19 capacity restrictions on religious services for the proposition that "[r]eligious adherents are not required to establish irreparable harm independent of showing a Free Exercise Clause violation." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020).  Plaintiffs make no other argument as to how a failure to issue a TRO here will constitute irreparable harm to Jill Doe (or her parents).

The flaw in Plaintiffs' argument is that unlike either of these New York cases, where the restrictions in question, if not enjoined, would preclude people from attending religious services, failure to issue a TRO here will not cause Jill Doe to lose her right to free exercise of her religion.  She asserts that taking any of the available COVID-19 vaccines would violate her religious beliefs.  The Vaccination Roadmap, however, does not require her to take a COVID-19 vaccine; it just precludes her from attending in-person classes or participating in extra-curricular activities if she is not vaccinated.  Thus, the harm Jill Doe will suffer if a TRO does not issue is not, like the plaintiffs in *Roman Catholic Diocese of Brooklyn* and *Agudath Israel of America*, the loss of a First Amendment freedom, but rather the ability to attend in-person classes or participate in extra-curricular activities at her current public high school.  Because Plaintiffs make no effort to demonstrate how this harm would be irreparable in the absence of the injunction they seek here, they have not satisfied this requirement for the issuance of a TRO.

**IV.   Request to Appear Pseudonymously**

Within the same application for a TRO, Plaintiffs ask for permission to proceed using pseudonyms.  The Court finds this issue more suitable for a separate motion than for inclusion in a TRO application.  Further, the Court is not persuaded that Plaintiffs have overcome the presumption that parties must use their real names in litigation.[5]

---

[5] *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) ("To determine whether to allow a party to proceed anonymously when the opposing party has objected, a

Nevertheless, in light of the instant ruling and Plaintiffs' professed intention to file an immediate appeal, the Court will temporarily permit Plaintiffs to proceed anonymously. The Court will revisit this permission if and when this case returns after Plaintiffs' appeal, and it is without prejudice to Defendants filing a motion seeking to require Plaintiffs to reveal their real names.

## V. Conclusion

For the foregoing reasons, the Court finds that Plaintiffs lack standing for the injunction they seek in the instant application, and that they have not established a likelihood of success on the merits or that they will suffer irreparable harm if the Court does not issue a TRO. Accordingly, Plaintiffs' application for a TRO is **DENIED**. For the same reasons, an injunction pending any appeal of this ruling is not warranted.

It is **SO ORDERED**.

Dated: November 18, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

district court must balance five factors: '(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest.") (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir.2000)).