Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Mark D. Myers, SBN 235719
 mmyers@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Robert E. Weisenburger, SBN 305682
 rweisenburger@limandri.com
Milan L. Brandon II, SBN 326953
 mbrandon@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual; JANE DOE, individually and as parent and next friend of JILL DOE, a minor child; JILL DOE, a minor child, by and through her next friend, JANE DOE; TIFFANY ROE, an individual and as parent and next friend of TERRY ROE and TAYLOR ROE, minor children; TERRY ROE, a minor child, by and through their next friend, TIFFANY ROE; TAYLOR ROE, a minor child, by and through their next friend, TIFFANY ROE; ANDREW POE, an individual and as parent and next friend of ADRIAN POE, a minor child; and ADRIAN POE, a minor child, by and through their next friend, ANDREW POE, | Case No.: 3:21-cv-01809-LL-MDD **VERIFIED FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF** |
| Plaintiffs, | |
| v. | |
| SAN DIEGO UNIFIED SCHOOL DISTRICT; RICHARD BARRERA, | |

individually and in his official capacity as Board member; SHARON WHITEHURST-PAYNE, in her official capacity as Board President; MICHAEL MCQUARY, in his official capacity as Board member; KEVIN BEISER, in his official capacity as Board member; SABRINA BAZZO, in her official capacity as Board Vice President; and LAMONT JACKSON, individually and in his official capacity as Superintendent,

Defendants.

# INTRODUCTION

1.     Two years into the pandemic, nearly every other school district in the nation has found a way to protect students from COVID-19 without banishing the handful of students with religious objections. But not San Diego Unified School District ("SDUSD"). Ignoring the pleas of thousands of parents, the Board of Education of the San Diego Unified School District voted to make vaccination from COVID-19 a requirement to attend school—but only for a small minority of its students.

2.     Under its mandate, on any given day, SDUSD exempts 85%+ of its students, for reasons ranging from medical accommodations (because they might have allergic reactions) to administrative convenience (because they had turned 16 a day after the semester started). But SDUSD expressly forbids accommodations for religious believers like the Plaintiffs.

3.     Plaintiffs thus face a stark choice: violate their religious beliefs, or receive "severe punishment"—"Expulsion from school. Kicked off sports teams. Isolated from teachers and classmates." *Doe v. San Diego Unified Sch. Dist.*, 22 F.4th 1099, 1109 (9th Cir. 2022) (Bumatay, J., dissenting) ("*Doe I*"). Under clear Supreme Court and Ninth Circuit precedent, SDUSD's imposition of that forced choice triggers strict scrutiny. That is why eleven judges of the Ninth Circuit took the unusual step of favoring en banc review of a motions panel decision declining to protect Plaintiffs. As Judge Bumatay observed—along with eleven other Ninth Circuit judges who found that strict scrutiny applies—SDUSD's mandate "*expressly targets the religious for worse treatment.*" *Doe I*, 22 F.4th at 1103.

4.     That is also why the Supreme Court, in denying emergency relief, noted that SDUSD "ha[s] delayed implementation of the challenged policy" and stated that "[t]he Court's denial is without prejudice to applicants seeking a new injunction[.]" *Doe v. San Diego Unified Sch. Dist.*, 142 S. Ct. 1099, 1100 (2022) ("*Doe II*").

5.     SDUSD's schools "are teeming with students who are unvaccinated, because of either their birthdays, allergies, learning disabilities, or familial statuses." *Doe I*, 22 F.4th at 1108. Under the Supreme Court's recent decisions in *Fulton, South Bay, Tandon,* and *Diocese of Brooklyn* this underinclusiveness and targeting are more than enough to trigger strict scrutiny, a standard that SDUSD cannot hope to meet.

6.     In the month since the Supreme Court denied emergency relief, SDUSD's argument for punishing Plaintiffs and other people of faith has only weakened. SDUSD has now postponed its mandate until the 2022 Summer Semester. The CDC has admitted that COVID survivors with natural immunity, like Plaintiffs, may have less risk of re-infection than those who acquired immunity through vaccination alone. SDUSD's own behavior, the behavior of other school districts across the country, basic science, and common sense all confirm that the school district has no compelling interest that requires the exclusion of Plaintiffs from school.

7.     *Tandon* was "the fifth time the [Supreme] Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). As Judge Bumatay noted in dissent from the denial of en banc review, this case has come dangerously close to inviting a sixth rebuke. *Doe I*, 22 F.4th at 1100. Instead, the courts can and should apply bedrock First Amendment law and protect the Plaintiffs' Free Exercise rights.

8.     Thus, Plaintiffs bring this action, presenting both facial and as-applied challenges to San Diego Unified School District's vaccination mandate under the Free Exercise Clause of the First Amendment.

## JURISDICTION AND VENUE

9.     This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to freedom of religion under the First Amendment to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

10.     This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1021.5.

11.     The Southern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and will enforce their COVID-19 vaccine mandate; and it is the District in which substantially all of the events giving rise to the claims occurred.

### THE PARTIES

12.     Plaintiff John Doe is the father and legal guardian of Jill Doe, a minor, who is a student over the age of 16 enrolled at Scripps Ranch High School within the San Diego Unified School District. Plaintiff John Doe is suing on his own behalf. At all relevant times, Plaintiff John Doe resided within the County of San Diego.

13.     Plaintiff Jane Doe is the mother and legal guardian of Jill Doe, a minor, who is a student over the age of 16 enrolled at Scripps Ranch High School within the San Diego Unified School District. Plaintiff Jane Doe is suing on her own behalf and on behalf of Jill Doe as her next friend. At all relevant times, Plaintiff Jane Doe resided within the County of San Diego.

14.     Plaintiff Jill Doe is a minor child over the age of 16 enrolled at Scripps Ranch High School within the San Diego Unified School District. Plaintiff Jill Doe is suing through her next friend, Jane Doe. At all relevant times, Plaintiff Jill Doe resided within the County of San Diego.

15.     Plaintiff Tiffany Roe is the mother and legal guardian of Terry and Taylor Roe, minor children, enrolled at a high school within the San Diego Unified School District. Plaintiff Tiffany Roe is suing on her own behalf and on behalf of Terry and Taylor Roe as their next friend. At all relevant times, Plaintiff Tiffany Roe resided within the County of San Diego.

16.     Plaintiff Terry Roe is a minor child over the age of 16 enrolled at a high school within the San Diego Unified School District. Plaintiff Terry Roe is suing through their next friend, Tiffany Roe. At all relevant times, Plaintiff Terry Roe resided within the County of San Diego.

17.     Plaintiff Taylor Roe is a minor child who will turn 16 before the beginning of the Spring 2023 semester enrolled at a high school within the San Diego Unified School District. Plaintiff Taylor Roe is suing through their next friend, Tiffany Roe. At all relevant times, Plaintiff Taylor Roe resided within the County of San Diego.

18.     Plaintiff Andrew Poe is the father and legal guardian of Adrian Poe, a minor, who is a student over the age of 16 enrolled at a high school within the San Diego Unified School District. Plaintiff Andrew Poe is suing on his own behalf and on behalf of Adrian Doe as their next friend. At all relevant times, Plaintiff Andrew Poe resided within the County of San Diego.

19.     Plaintiff Adrian Poe is a minor child over the age of 16 enrolled at a high school within the San Diego Unified School District. Plaintiff Adrian Poe is suing through their next friend, Andrew Poe. At all relevant times, Plaintiff Adrian Poe resided within the County of San Diego.

20.     Defendant San Diego Unified School District ("SDUSD") is a public entity established and organized under California law and subject to the restrictions of the United States Constitution. SDUSD may sue and be sued in its own name. SDUSD serves more than 121,000 students and is the second largest school district in California.

21.     Defendant Richard Barrera, at all relevant times, was a member of the Board of Education for SDUSD acting under color of state law. At the commencement of this litigation, he served as Board President, but he is now serving as a member at large. The Board of Education, alternatively called the Board of Trustees, (the "Board") is SDUSD's governing body and is responsible for creating,

VERIFIED FIRST AMENDED COMPLAINT

adopting, and implementing its policies, practices, customs, acts, and omissions, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Barrera is sued in both his official and individual capacities.

22.     Defendant Sharon Whitehurst-Payne, at all relevant times, was a member of the Board acting under color of state law. At the commencement of this litigation, she served as Board Vice President, but she is now serving as Board President. Defendant Whitehurst-Payne is sued in her official capacity.

23.     Defendant Michael McQuary, at all relevant times, was a Board member for SDUSD acting under color of state law. Defendant McQuary is sued in his official capacity.

24.     Defendant Kevin Beiser, at all relevant times, was a Board member for SDUSD acting under color of state law. Defendant Beiser is sued in his official capacity.

25.     Defendant Sabrina Bazzo, at all relevant times, was a member of the Board under color of state law. At the commencement of this litigation, she served as a member at large, but she is now serving as Board Vice President. Defendant Bazzo is sued in her official capacity.

26.     Defendant Lamont Jackson, at all relevant times, was the Superintendent of SDUSD. At the commencement of this litigation, he served as Interim Superintendent, but is no longer interim. Defendant Jackson is responsible for creating, adopting, and implementing SDUSD policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Jackson is sued in both his official and individual capacities.

## FACTUAL ALLEGATIONS

### A.   THE PLAINTIFFS: THE DOE, ROE, & POE FAMILIES

27.     The Plaintiffs are three families with children enrolled in high schools within the San Diego Unified School District. All three families attend Christian churches in San Diego County and have sincere Christian beliefs that prevent them

1  from taking any of the currently available COVID-19 vaccines due to their association

2  with abortion.

3      28.    The children of all three families are also involved in extracurricular

4  activities with SDUSD. Some of those children are currently aged 16 and up; others

5  will turn 16 before the start of the Spring 2023 semester. All of the children have also

6  already tested positive for, or been diagnosed with, COVID-19 at some time during

7  the pandemic.

8      29.    The Plaintiffs all seek to proceed pseudonymously in this case for fear of

9  retaliation and harassment by SDUSD officials, teachers, or students. Similar

10 requests have recently been granted in similar COVID-19 vaccination cases.

11     ***i.    The Doe Family***

12     30.    The Doe family consists of one child, Jill Doe, and her parents John and

13 Jane Doe. Jill Doe is a Junior enrolled at Scripps Ranch High School within the San

14 Diego Unified School District. Jill Doe is currently 16 years old and has played

15 multiple extracurricular sports for Scripps Ranch High School in various seasons

16 throughout the year.

17     31.    Last spring, Jill Doe and several others were exposed to an individual

18 who tested positive for COVID-19. All of the other individuals in the group quickly

19 contracted COVID-19, but Jill Doe never got sick and never tested positive.

20 Confused by this, Jill Doe took an antibody test which showed that she had already

21 contracted the virus much earlier. Thus, Jill Doe has natural immunity that is

22 sufficiently potent to prevent her from catching and spreading COVID-19 even when

23 those immediately around her contract it.

24     32.    After this litigation commenced, one of the teachers at Scripps Ranch

25 High School read a news article about this case to her class. In response, several

26 students expressed their anger that a religious student might object to COVID-19

27 vaccination and seek an exemption. Those students claimed that they were so upset

28 that they wanted to discover Jill Doe's identity and physically attack her. Had

1  Plaintiffs known that something like this would occur, they would not have revealed
2  Jill's gender or high school in previous legal filings.

3      ii.    **The Roe Family**

4      33.    The Roe Family consists of two children, Terry and Taylor Roe, and
5  their mother, Tiffany Roe. Terry and Taylor are siblings enrolled at a high school
6  within the San Diego Unified School District. Terry Roe is currently 16 years old.
7  Taylor Roe will turn 16 before the beginning of the Spring 2023 semester.

8      34.    Terry and Taylor are both in extracurricular performing arts programs at
9  their high school. They do not identify their high school or their genders for fear that
10  their identities will be discovered.

11     35.    Taylor has previously tested positive for COVID-19 twice. In both
12  instances, Taylor was asymptomatic and suffered no adverse symptoms whatsoever.
13  When Taylor first tested positive for COVID-19, along with the rest of the family,
14  Terry was also diagnosed by their doctor as having COVID-19. Terry did have minor
15  symptoms. Taylor tested positive for COVID-19 the second time after having close
16  exposure to a friend-group where everyone else was vaccinated. Although several of
17  the friends had symptoms, Taylor did not. When Taylor tested positive the second
18  time, the rest of Taylor's family also took tests, including Terry. Nobody else in the
19  Roe family tested positive that second time. Thus, Taylor and Terry have natural
20  immunity sufficient to avoid having symptoms, and for Terry, sufficient to prevent
21  acquiring a COVID-19 infection despite a family member testing positive.

22     iii.   **The Poe Family**

23     36.    The Poe Family consists of one child, Adrian Poe, and Adrian's father,
24  Andrew Poe. Adrian Poe is currently 16 years old and is enrolled at a high school
25  within the San Diego Unified School District.

26     37.    Adrian Poe will be in an extracurricular sports program in the Fall 2022
27  semester. Adrian has participated in this program in prior years. Plaintiffs do not

28

1  identify Adrian's high school or gender for fear that Adrian's identity will be
2  discovered.

3      38.    Adrian has previously tested positive for COVID-19. Adrian thus has
4  natural immunity.

5      **B.    THE COVID-19 PANDEMIC & VACCINES**

6      39.    In response to the SARS-CoV-2 virus, the U.S. Food and Drug
7  Administration approved three COVID-19 vaccines for emergency use in the United
8  States. These vaccines—in order of approval—were produced by Pfizer-BioNTech
9  (Dec. 11, 2020) (Ex. 1), Moderna (Dec. 18, 2020) (Ex. 2), and Janssen Biotech, a
10 subsidiary of Johnson & Johnson (Feb. 27, 2021) (Ex. 3). The Pfizer vaccine was
11 approved for emergency use with individuals age 16 and up, but the Moderna and
12 Johnson & Johnson vaccines were only approved for individuals age 18 and up.

13     40.    In 2021, approval of use of the Pfizer vaccine has expanded. On May 10,
14 2021, emergency use of the Pfizer vaccine was expanded to include children age 12
15 and up, and on August 23, 2021, full approval was granted for the Pfizer vaccine for
16 individuals age 16 and up. (Ex. 4.) Pfizer boosters have also been approved, with a
17 single dose available for children age 12 and up, and two boosters available for
18 individuals age 50 and up. (Ex. 1.) The Moderna and Johnson & Johnson vaccines
19 remain available solely for adults. (Ex. 2; Ex. 3.)

20

21

22
23  Ex. 1: *Comirnaty and Pfizer-BioNTech COVID-19 Vaccine*, U.S. FOOD & DRUG
    ADMIN. (Apr. 13, 2022 update), https://bit.ly/36TzFQu.

24  Ex. 2: *Spikevax and Moderna COVID-19 Vaccine*, U.S. FOOD & DRUG ADMIN. (Mar.
25  29, 2022 update), https://bit.ly/3DhXZrl.

26  Ex. 3: *Janssen COVID-19 Vaccine*, U.S. FOOD & DRUG ADMIN. (Apr. 7, 2022 update),
    https://bit.ly/3NsnH0W.

27  Ex. 4: *FDA Approves First COVID-19 Vaccine*, U.S. FOOD & DRUG ADMIN. (Aug. 23,
28  2021), https://bit.ly/3qNaoP4.

41.     All three of these vaccines have been manufactured or tested using material derived from stem cell lines from aborted fetuses. (Ex. 5.) Making the vaccines in this manner conflicted with many Americans' belief that abortion is a grave evil in which they cannot participate, and from which they cannot benefit, even remotely.

## C.     SDUSD Imposes a COVID-19 Vaccine Mandate

42.     On September 15, 2021, the Board of San Diego Unified School District held a closed-door session to consider imposing a COVID-19 vaccine mandate for its students. This was apparently in response to two other school districts imposing similar mandates earlier in August and September. As a result of this closed-door session, SDUSD scheduled a vote on a COVID-19 vaccine mandate for its next regular meeting, set for Tuesday, September 28, 2021. (Ex. 6.)

43.     In advance of that meeting, SDUSD then-Board President Beiser shared then-Interim Superintendent Jackson's proposed Vaccination Roadmap (Ex. 7), and in interviews made clear that no religious objection would be considered. (Ex. 8.) According to the Vaccination Roadmap, students who had turned age 16 before November 1, 2021, would be required to be fully vaccinated in advance of the Spring 2022 semester.

---

Ex. 5: David Prentice, Ph.D., *Update: COVID-19 Vaccine Candidates and Abortion-Derived Cell Lines*, Charlotte Lozier Inst. (Jun. 2, 2021 update), https://bit.ly/3IThp6M.

Ex. 6.1: Rory Devine, *San Diego Unified Mulls Vaccine Mandate for Students, Staff*, NBC 7 San Diego (Sep. 15, 2021), https://bit.ly/3IMQnhD; Ex. 6.2: *San Diego Unified to publicly discuss potential vaccine mandate for eligible students*, KUSI News (Sep. 16, 2021), https://bit.ly/35hUAfp.

Ex. 7: *Vaccination Roadmap*, San Diego Unified Sch. Dist. (Sep. 28, 2021), https://bit.ly/3IH7f9z.

Ex. 8: Allie Raffa, *San Diego Unified School District to Vote on Vaccine Mandate For Students, Staff*, NBC 7 San Diego (Sep. 26, 2021), https://bit.ly/3724y4Y.

44.    Strangely, the September 28 meeting was held virtually even though there were no limitations on large gatherings, and no safety reason to limit them. Indeed, all Board of Education meetings in July and August 2021 had been held in person. However, this was probably explained best by the fact that approximately 1,651 parents signed up to speak in opposition to the COVID-19 vaccine mandate. (Ex. 9.) At the end of the meeting, the Board voted unanimously to approve the vaccination mandate.

45.    The next day, September 29, 2021, SDUSD issued a press release (Ex. 10), sent a letter to all parents (Ex. 11), held a press conference (Ex. 12), updated their FAQ page (Ex. 13), updated their COVID-19 website (Ex. 14), and gave an interview to the San Diego Union-Tribune (Ex. 15), all to update the public about its new mandate.

---

Ex. 9: Transcript of *San Diego Unified School District, Board of Education Meeting*, YouTube (Sep. 28, 2022), https://youtu.be/ve3YmKiOoY8.

Ex. 10: *San Diego Unified to Require COVID-19 Vaccines*, San Diego Unified Sch. Dist. (Sep. 29, 2021), https://bit.ly/3tQygTC.

Ex. 11: Letter from San Diego Unified School District to San Diego Unified Families (Sep. 29, 2021), https://bit.ly/36TQJ8I.

Ex. 12.1: *Media Advisory: New Vaccine Mandate*, San Diego Unified Sch. Dist. (Sep. 29, 2021), https://bit.ly/3NvJxk0; Ex. 12.2: Melissa Adan, *SDUSD Board Members Explain New COVID-19 Vaccine Mandate For Eligible Students and Staff*, NBC 7 San Diego (Sep. 29, 2021), https://bit.ly/3qKBKVL.

Ex. 13: *Back to School FAQ*, San Diego Unified Sch. Dist. (Sep. 29, 2021 update), https://bit.ly/3LuMsYn.

Ex. 14: Nursing & Wellness, *COVID-19 Vaccine*, San Diego Unified Sch. Dist. (Oct. 31, 2021 update), https://perma.cc/EAG9-RSFF.

Ex. 15: Kristen Taketa, *What you need to know about San Diego Unified's vaccine mandate*, S.D. Union Tribune (Sep. 29, 2021), https://bit.ly/3Luc3kc.

### D.   OTHER APPROACHES TO COVID-19 VACCINATION

46.     Across the nation, only 6 states do not allow for religious exemptions to student vaccine requirements: 44 states and the District of Columbia require such exemptions. (Ex. 16.) Further, only a few school districts have imposed COVID-19 vaccination requirements. Of these, the vast majority only impose the requirement for participation in extracurricular activities. (Ex. 17.) No school district outside of California requires COVID-19 vaccination for in-person learning without offering a religious exemption.

47.     Within California, two small school districts have imposed either a COVID-19 vaccine requirement or mandatory weekly testing: Hayward Unified School District (Ex. 18) and Berkeley Unified School District. (Ex. 19.)

48.     Two somewhat larger school districts have imposed a COVID-19 vaccine requirement while allowing students to opt out due to personal or religious beliefs: Oakland Unified School District (Ex. 20) and Sacramento City Unified School District. (Ex. 21.)

---

Ex. 16: *States With Religious and Philosophical Exemptions From School Immunization Requirements*, NCSL (Jan. 10, 2022), https://bit.ly/3DqTaMj.

Ex. 17: Matt Zalaznick, *Vaccine tracker: Schools in 14 states now require students to get COVID shots*, DIST. ADMIN. (Nov. 15, 2021), https://bit.ly/35jEDW5.

Ex. 18: Resolution No. 2122-19, Requiring COVID-19 Vaccination for Eligible Students, HAYWARD UNIFIED SCH. DIST. (Sep. 22, 2021), https://bit.ly/3NmUT9Y.

Ex. 19: Board Policy 5141.3, BERKELEY UNIFIED SCH. DIST. (Oct. 6, 2021), https://bit.ly/3JRMDfW.

Ex. 20.1: Board Policy 5141.29, OAKLAND UNIFIED SCH. DIST. (Oct. 27, 2021), https://bit.ly/3LqQTng; Ex. 20.2: Supporting Students Together, *Vaccine Requirement*, OAKLAND UNIFIED SCH. DIST. (Sep. 22, 2021), https://bit.ly/3Nw6t2P.

Ex. 21.1: Resolution No. 3233, Requiring COVID-19 Vaccination for Staff and Students Aged 12 and Over, SACRAMENTO CITY UNIFIED SCH. DIST. (Oct. 12, 2021), https://bit.ly/3ISpjO1; Ex. 21.2: Return Together, *COVID-19 Vaccination Requirement FAQs*, SACRAMENTO CITY UNIFIED SCH. DIST. (Oct. 12, 2021), https://bit.ly/35idvqs.

49.     One school district imposed a COVID-19 vaccine mandate, without a religious exemption, but quickly rescinded it: Piedmont Unified School District. (Ex. 22.)

50.     Only five school districts have imposed and retained a COVID-19 vaccine mandate without offering a religious exemption, and all within California: San Diego Unified School District (Ex. 7), Los Angeles Unified School District (Ex. 23), Culver City Unified School District (Ex. 24), West Contra Costa Unified School District (Ex. 25), and El Monte Union High School District. (Ex. 26.)

### E.   Delay of the COVID Vaccine Mandates

51.     Despite the above five school districts imposing an onerous COVID-19 vaccine mandate without any religious exemption, they could not enforce them. All five were forced to delay their vaccine mandates due to significant noncompliance. (Ex. 27.)

---

Ex. 22.1: *Superintendent's Message–Jan.27th–Vaccination Requirements*, Piedmont Unified Sch. Dist. (Jan. 27, 2022), https://bit.ly/389HemE; Ex. 22.2: Administrative Regulation 5141.31, Piedmont Unified Sch. Dist. (Jan. 26, 2022), https://bit.ly/3wPmJWt.

Ex. 23: Safe Steps to Safe Schools, *Frequently Asked Questions*, Los Angeles Unified School District (Sep. 9, 2021), https://bit.ly/3qIE6Vd.

Ex. 24: COVID-19 Resources & Updates, *COVID FAQs*, Culver City Unified Sch. Dist. (Aug. 20, 2021), https://bit.ly/3wIQTdY.

Ex. 25: *West Contra Costa Unified School District Approves Vaccination Mandate*, West Contra Costa Unified Sch. Dist. (Sep. 30, 2021), https://bit.ly/35htapY.

Ex. 26: Resolution No. 13-21/22, El Monte Union High Sch. Dist. (Oct. 6, 2021), https://bit.ly/3DqT9ry.

Ex. 27.1: Jacey Fortin & Giulia Heyward, *Why Los Angeles Delayed Enforcing Its Student Vaccine Mandate*, N.Y. Times (Dec. 18, 2021), https://nyti.ms/3rL7N9c (Los Angeles Unified School District); Ex. 27.2: Melissa Gomez, *L.A. school board delays enforcement of student vaccine mandate to fall 2022*, L.A. Times (Dec. 14, 2021), https://lat.ms/382mHQJ (Culver City Unified School District); Ex. 27.3: Julia Métraux, *WCCUSD Still Not Ready to Meet Student Vaccine Mandate*, Richmond Pulse (Feb. 3, 2022), https://bit.ly/3JTwmXZ (West Contra Costa Unified School

52.     For example, Los Angeles Unified School District determined that even with over 87% compliance, its mandate would force 30,000 students into online learning, which was not feasible. (Ex. 27.1 at 2.)

53.     SDUSD made its determination to delay its mandate in early January 2022. Although SDUSD did not explain the basis of its decision, it stated that it was not due to any pending litigation. (Ex. 28.) Notably, despite the mandate, by January 17, 2022, only 77% of SDUSD students aged 16 and up were fully vaccinated, meaning thousands would have been transferred to online learning. (See Ex. 30 at Slide 6.)

### F.   SDUSD's Current COVID-19 Vaccine Mandate

54.     On February 22 and March 8, 2022, the SDUSD Board discussed and voted on a new COVID-19 vaccine mandate plan and timeline in advance of the Fall 2022 semester. (Ex. 29.)

55.     At the February 22, 2022 meeting, SDUSD's Executive Director of Nursing & Wellness, Susan Barndollar, gave a slideshow presentation on the new COVID-19 vaccine mandate. Her new slideshow presentation was modified from her prior slideshow used at the September 28, 2021 meeting. (Ex. 30.)

56.     Oddly, at the February 22 meeting, Superintendent Jackson stated that there would be a further presentation on the details of implementing the vaccine mandate at the March 8 meeting, but there was not. (Ex. 29.1 at 2:17-20.) At the

---

District); Ex. 27.4: Resolution No. 27-21/22, El Monte Union High School (Jan. 5, 2022), https://bit.ly/3Dj3llX (El Monte Union High School District).

Ex. 28: Email from Mark R. Bresee to Jeffrey M. Trissell (Feb. 1, 2022, 4:15 p.m.).

Ex. 29.1: Transcript of *San Diego Unified School District, Board of Education Meeting*, YouTube (Feb. 22, 2022), https://youtu.be/O3gsORttXJo; Ex. 29.2: Transcript of *San Diego Unified School District, Board of Education Meeting*, YouTube (Mar. 8, 2022), https://youtu.be/kqB9Ab8vvsE.

Ex. 30: *Student COVID Vaccination*, San Diego Unified Sch. Dist. (Feb. 2, 2022 update), https://bit.ly/3tKeRUu.

March 8 meeting, there was no substantive discussion of the COVID-19 vaccine mandate. The Board simply heard public comment and then voted on a new resolution, which passed unanimously. (Ex. 31.) These changes were then incorporated into SDUSD's FAQ page for students (Ex. 32) and its COVID-19 website. (Ex. 33.)

57. Substantively, the new Vaccination Roadmap continues the prior document's lack of religious neutrality by stating that "religious or personal belief exemptions will not be permitted." (Ex. 30 at Slide 10.)

58. Despite containing this explicit "religious students need not apply" statement, exempted students and staff include:

> a. ***Students under 16.*** The mandate categorically does not apply to students under 16. (Ex. 30 at Slide 10; Ex. 31 at 4, ¶¶ 2-5; Ex. 32 at 10-11; Ex. 33 at 14-15.) SDUSD "serves more than 121,000 students" (Ex. 34), with about 36,260 students in grades 9-12. (Ex. 35.) SDUSD estimates that the 16-and-older group to whom the mandate applies consists of only 15,732 students. (Ex. 30 at Slide 7.) This means that "more than" 105,268 students, or 87% of SDUSD's total students, are exempt. Similarly, 56.6% of SDUSD's high school

Ex. 31: Resolution in the Matter of Implementation of Student Vaccination Requirement Beginning with the 2022-2023 School/Fiscal Year, SAN DIEGO UNIFIED SCH. DIST. (Mar. 8, 2022), https://bit.ly/3wKWUab.

Ex. 32: *Safe Schools During COVID FAQ*, SAN DIEGO UNIFIED SCH. DIST. (Apr. 3, 2022 update), https://bit.ly/3qNMsuR.

Ex. 33: Nursing & Wellness, *COVID-19 Vaccine*, SAN DIEGO UNIFIED SCH. DIST. (as of Apr. 19, 2022), https://bit.ly/3JQiKNh.

Ex. 34: *About Us*, SAN DIEGO UNIFIED SCH. DIST. (as of Mar. 29, 2022), https://bit.ly/36wrIAZ.

Ex. 35: *San Diego Unified District Summary*, ED-DATA (as of Mar. 29, 2022) https://perma.cc/Q2V5-7BX9 (adding total enrollment listed separately for grades 9-12 in SDUSD for the 2020-2021 school year).

students—that is, 20,528 teenagers attending Plaintiffs' school(s) or one like it—are allowed to remain unvaccinated while attending school in person.

b. ***Students who turn 16 in the Middle of a Semester.*** Students who turn 16 after the beginning of the Fall 2022 semester on August 29, 2022, but before the beginning of the Spring 2023 semester, are not required to begin the vaccination process immediately. Rather, SDUSD permits them to remain in school until the next semester, including in-person instruction, extracurricular activities, and sports. They do not need to start the vaccination process until the next semester, receiving their first shot 7 days after the start of the next semester. (Ex. 31 at 4, ¶ 7; Ex. 32 at 11; Ex. 33 at 14-15.)

c. ***Students and staff with medical exemptions.*** Students and staff can apply for medical exemptions to vaccination, for which they can be eligible if a state-licensed medical professional articulates a medical rationale supporting exemption. (Ex. 30 at Slide 5; Ex. 31 at p. 4, ¶ 2; Ex. 32 at 10, 12; Ex. 33 at 14-15 [students]; Ex. 10 at 3; Ex. 36 at 3, ¶¶ 4.c, 6 [staff] [noting 26 employee medical exemption requests].)

d. ***Staff with religious exemptions.*** Staff members can apply for religious exemptions to COVID-19 vaccination. (Ex. 10 at 3; Ex. 36 at 2-3, ¶¶ 4.a, 4.b.) Contrary to the Board President's assertion that religious exemptions are a "loophole" that results in "large numbers" of people not getting vaccinated (Ex. 15 at 4), only 1.7% of SDUSD staff—238 out of 14,000—had requested religious accommodations as of November 8, 2021. (Ex. 36 at 2-4, ¶¶ 2, 6.).

---

Ex. 36: Declaration of Chief Human Resources Officer Acacia Thede (Nov. 8, 2021), ECF No. 15-3 in Case No. 3:21-cv-1809.

e. ***Exemptions Created by Discretion of the Superintendent.*** SDUSD's Superintendent has discretion to create his own exemptions, without approval from the Board of Education. After instituting a COVID-19 vaccine mandate in October 2021, the Superintendent unilaterally chose to insert an exemption for pregnant students. In response to this litigation, the Superintendent "authorized and directed that the option for pregnant students to request a deferral of the vaccine mandate be removed from the vaccine mandate program and requirements." In doing so, he explained that because the exemption had been initially approved on his own authority, he could rescind it on his own authority. (Ex. 37 at 2-3, ¶¶ 2, 3.)

f. ***Other exceptions.*** SDUSD also allows students and others to be present on campus without vaccination. This includes some students with Individualized Education Programs (IEPs) covered by 20 U.S.C. § 1415(j). (Ex. 30 at Slide 11; Ex. 31 at 5, ¶ 8; Ex. 32 at 12; Ex. 33 at 15.) It also includes public visitors, such as visiting sports teams, and attendees at performing arts shows or athletic events, since SDUSD has chosen to resume all such activities, and requires proof of vaccination only for mega-events of more than 10,000 attendees. (Ex. 32 at 15-16, 26-28; Ex. 13 at 12.) SDUSD has also approved all field trips, allowing students to come into contact with unvaccinated members of the public. (Ex. 32 at 15.) SDUSD also recommends, but does not require, booster shots for students and staff. (Ex. 32 at 3, 13; Ex. 33 at 16.) This is despite the fact that the Omicron variant now

---

Ex. 37: Declaration of Superintendent Lamont Jackson (Nov. 29, 2021), ECF No. 13 in Case No. 21-56259.

makes up 100% of all COVID-19 cases (Ex. 38), but vaccine effectiveness against the Omicron variant without boosters dissipates to between 0% and 20%. (Ex. 39 at 2.)

59.    SDUSD's permission for the vast majority of its students to attend classes unvaccinated is reasonable. Although even a single death is tragic, the County of San Diego reports that only two individuals under the age of 18 have ever died from COVID-19. (Ex. 40.) And COVID-19 rates among SDUSD students have dropped precipitously since the beginning of the year (Ex. 41):



Ex. 38: COVID Data Tracker, *Variant Proportions*, CDC (Mar. 31, 2022 update), https://bit.ly/3iU6fEw.

Ex. 39: Emily Head & Savine L. van Elsland, *Omicron largely evades immunity from past infection or two vaccine doses*, Imperial Coll. London (Dec. 17, 2021), https://bit.ly/3tWzMDM.

Ex. 40: Coronavirus Disease 2019, *Cases Hospitalizations, and Deaths by Demographics*, County of San Diego (Apr. 16, 2022 update), https://bit.ly/3LxA2iI.

Ex. 41: *COVID-19 Dashboard*, San Diego Unified Sch. Dist. (Apr. 16, 2022 update), https://bit.ly/3LGDqs6.

1

### G.   THE NEED FOR PROMPT RELIEF

2   60.   SDUSD's COVID-19 Vaccine Mandate applies to students who turn

3   age 16 before the start of the next semester. If so, the student must obtain the first

4   dose of the Pfizer vaccine (the only vaccine available for minors), at the very latest,

5   within 7 days after the start of the semester. The student must then obtain a second

6   shot within 28 days thereafter. (Ex. 31 at 3; Ex. 30 at Slides 12, 16.) Thus, for in-

7   person learning, the following are the two next timelines:

8   　　　a. Summer Semester: Timeline for students who turn 16 before June 21:

9   　　　　　i. Classes Start:   June 21, 2022

10   　　　　　ii. First Shot:   June 28, 2022

11   　　　　　iii. Second Shot:   July 26, 2022

12   　　　b. Fall Semester: Timeline for students who turn 16 before August 29:

13   　　　　　i. Classes Start:   August 29, 2022

14   　　　　　ii. First Shot:   September 6, 2022

15   　　　　　iii. Second Shot:   October 4, 2022

16   61.   SDUSD's COVID-19 vaccine mandate also applies to extracurricular

17   activities, not just in-person schooling. For those activities, students begin practicing

18   over the summer, and so SDUSD has imposed a separate timeline in advance of the

19   beginning of practices. (Ex. 31 at 3; Ex. 30 at Slide 14.) That timeline is as follows:

20   　　　a. Fall Extracurricular Activities: Timeline for students who turn 16

21   　　　　　before July 30:

22   　　　　　i. Practices Start: July 30, 2022

23   　　　　　ii. First Shot:   August 6, 2022

24   　　　　　iii. Second Shot:   September 3, 2022

25   62.   For the Summer semester and Fall extracurricular activities, students

26   will not be allowed to continue participating unless they follow the vaccine timeline,

27   and presumably show proof of compliance, as it progresses. (Ex. 30 at Slides 14, 16.)

28   In contrast, for the Fall semester, SDUSD will identify students who have not

followed the timeline on October 18, 2022, and then at that time find "Other Learning Opportunities" for them. (Ex. 30 at Slide 12.)

## CLAIMS FOR RELIEF

### First Claim for Relief:

**Violation of Free Exercise Clause of First Amendment to U.S. Constitution:**

**Not Generally Applicable due to Categorical Exemptions**

*(By all Plaintiffs against All Defendants)*

63.   Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

64.   The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. I. This Free Exercise clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

65.   Under the Free Exercise clause, if "challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

66.   A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021).

67.   "[G]overnment regulations are not … generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (original emphasis). "It is no answer that a State treats some comparable secular … activities as poorly as or even less favorably than the religious exercise at issue." *Id*.

68.     Here, Plaintiffs' religious faith precludes them from receiving any of the FDA approved COVID-19 vaccines because those vaccines were either manufactured or tested using material derived from stem cell lines from aborted fetuses. Excluding the minor Plaintiffs from school on the basis of their religious beliefs is a substantial burden on the Free Exercise of Religion.

69.     SDUSD's Vaccination Roadmap, however, is not generally applicable due to its categorical exemptions. SDUSD enrolls more than 121,000 students and more than 36,000 high school students. Nevertheless, SDUSD has chosen to exempt thousands of these students—and many of its own employees—from its COVID vaccine mandate because of their age, medical condition, secular status, or simply its own administrative convenience. Each of these exemptions presents "similar risks" to SDUSD's interest in protecting health and safety because each of them results in unvaccinated people present during in-person learning.

70.     As a result, SDUSD's policy is not generally applicable, and SDUSD must meet strict scrutiny. But SDUSD does not have a compelling reason for its distinction between Plaintiffs' religious activity and similar activity. Further, SDUSD has not selected the means least restrictive of religious exercise in order to fulfill its interests.

71.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Vaccination Roadmap.

72.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Vaccination Roadmap.

73.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of

1  attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc.
2  § 1021.5.

3  **Second Claim for Relief:**

4  **Violation of Free Exercise Clause of First Amendment to U.S. Constitution:**
5  **Not Generally Applicable due to Discretionary Exemptions**

6  74.    Plaintiffs incorporate by reference all allegations contained in the
7  preceding paragraphs as though fully set forth herein.

8  75.    The First Amendment to the U.S. Constitution provides that "Congress
9  shall make no law respecting an establishment of religion, or prohibiting the free
10 exercise thereof[.]" U.S. Const., amend. I. This Free Exercise clause applies to the
11 states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v.*
12 *Connecticut*, 310 U.S. 296 (1940).

13 76.    Under the Free Exercise clause, if "challenged restrictions are not
14 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this
15 means that they must be 'narrowly tailored' to serve a 'compelling' state interest."
16 *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

17 77.    Where a policy "incorporates a system of individual exemptions," or
18 includes "a formal system of entirely discretionary exceptions," strict scrutiny is
19 triggered. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021). "The creation of
20 a formal mechanism for granting exceptions renders a policy not generally applicable,
21 regardless whether any exceptions have been given[.]" *Id.* at 1879.

22 78.    Here, Plaintiffs' religious faith precludes them from receiving any of the
23 FDA approved COVID-19 vaccines because those vaccines were either manufactured
24 or tested using material derived from stem cell lines from aborted fetuses. Excluding
25 the minor Plaintiffs from school on the basis of their religious beliefs is a substantial
26 burden on the Free Exercise of Religion.

27 79.    SDUSD's Vaccination Roadmap, however, is not generally applicable
28 due to its discretionary exemptions. Superintendent Jackson demonstrated his

discretionary authority by inserting an exemption for pregnant students without consulting with the Board of Education, and then removing that exemption in response to this litigation, and implying such discretion will not be used in the future. But like the unused discretion in *Fulton*, the existence of this discretion makes SDUSD's COVID-19 vaccination policy subject to strict scrutiny.

80.    As a result, SDUSD's policy is not generally applicable, and SDUSD must meet strict scrutiny. But SDUSD does not have a compelling reason for its distinction between Plaintiffs' religious activity and similar activity. Further, SDUSD has not selected the means least restrictive of religious exercise in order to fulfill its interests.

81.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Vaccination Roadmap.

82.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Vaccination Roadmap.

83.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1021.5.

### Third Claim for Relief:

### Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Interference with Parental Rights

84.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

85.    The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free

exercise thereof[.]" U.S. Const., amend. I. This Free Exercise clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

86.    "[T]he traditional interest of parents with respect to the religious upbringing of their children" is a "fundamental right[] and interest[]" and is "specifically protected by the Free Exercise Clause of the First Amendment." *Wisconsin v. Yoder*, 406 U.S. 205, 214, (1972).

87.    Government actions that interfere with parents' ability to direct the religious upbringing of their children are subject to strict scrutiny. *Id.* at 214 (when government action "interferes with the practice of a legitimate religious belief, … the State [must] not deny the free exercise of religious belief by its requirement" or the State must demonstrate an "interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause").

88.    Here, Plaintiffs' religious faith precludes them from receiving any of the FDA approved COVID-19 vaccines because those vaccines were either manufactured or tested using material derived from stem cell lines from aborted fetuses. Excluding the minor Plaintiffs from school on the basis of their religious beliefs is a substantial burden on the Free Exercise of Religion.

89.    SDUSD's Vaccination Roadmap, however, triggers strict scrutiny under the *Yoder* line of cases because it interferes directly with the ability of the parent-Plaintiffs from directing the upbringing of their children. By forcing the parent-Plaintiffs to have their child vaccinated—a medical procedure both they and their children have sincere religious objections to—SDUSD is directly interfering both with the parents' right to direct the religious upbringing of their children, and with the children's right to have their upbringing controlled by their parents rather than a local government.

90.    As a result, SDUSD's policy must meet strict scrutiny. But SDUSD does not have a compelling reason for its distinction between Plaintiffs' religious

activity and similar activity. Further, SDUSD has not selected the means least restrictive of religious exercise in order to fulfill its interests.

91.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Vaccination Roadmap.

92.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Vaccination Roadmap.

93.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1021.5.

## FOURTH CLAIM FOR RELIEF:

### Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Facially Neutral

94.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

95.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. I. This Free Exercise clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

96.     Under the Free Exercise clause, if "challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

97.    "[T]he minimum requirement of neutrality is that a law not discriminate on its face." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993). "A law lacks facial neutrality if it refers to a religious practice," *id.*, and "openly impose[s] more stringent regulations on religious" activity than secular activity, *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (2021) (Statement of Gorsuch, J.); *see id.* (Barrett, J., concurring), or "single[s] out" religious activity for "harsh treatment." *Diocese of Brooklyn*, 141 S. Ct. at 66 & n.1.

98.    Here, Plaintiffs' religious faith precludes them from receiving any of the FDA approved COVID-19 vaccines because those vaccines were either manufactured or tested using material derived from stem cell lines from aborted fetuses. Excluding the minor Plaintiffs from school on the basis of their religious beliefs is a substantial burden on the Free Exercise of Religion.

99.    SDUSD's Vaccination Roadmap, however, is not facially neutral because it openly states that no religious exemptions will be allowed. The Vaccination Roadmap thus singles out religious activity for more stringent treatment.

100.    As a result, SDUSD's policy is not neutral, and SDUSD must meet strict scrutiny. But SDUSD does not have a compelling reason for its distinction between Plaintiffs' religious activity and similar activity. Further, SDUSD has not selected the means least restrictive of religious exercise in order to fulfill its interests.

101.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Vaccination Roadmap.

102.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Vaccination Roadmap.

103.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of

1  attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc.
2  § 1021.5.

3  <center>**FIFTH CLAIM FOR RELIEF:**</center>

4  <center>**Violation of Free Exercise Clause of First Amendment to U.S. Constitution:**</center>

5  <center>**Not Neutral Due to Hostility and Distrust of Religion**</center>

6  104.   Plaintiffs incorporate by reference all allegations contained in the
7  preceding paragraphs as though fully set forth herein.

8  105.   The First Amendment to the U.S. Constitution provides that "Congress
9  shall make no law respecting an establishment of religion, or prohibiting the free
10 exercise thereof[.]" U.S. Const., amend. I. This Free Exercise clause applies to the
11 states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v.*
12 *Connecticut*, 310 U.S. 296 (1940).

13 106.   Under the Free Exercise clause, if "challenged restrictions are not
14 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this
15 means that they must be 'narrowly tailored' to serve a 'compelling' state interest."
16 *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).

17 107.   Government action is not neutral if it "stem[s] from animosity to
18 religion or distrust of its practices." *Masterpiece Cakeshop Ltd. v. Colorado Civ. Rts.*
19 *Comm'n*, 138 S. Ct. 1719, 1731 (2018). This is clear where the government
20 "assume[s] the worst" about religious motivations for accommodation "but
21 assume[s] the best" about secular ones. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297
22 (2021).

23 108.   Here, Plaintiffs' religious faith precludes them from receiving any of the
24 FDA approved COVID-19 vaccines because those vaccines were either manufactured
25 or tested using material derived from stem cell lines from aborted fetuses. Excluding
26 the minor Plaintiffs from school on the basis of their religious beliefs is a substantial
27 burden on the Free Exercise of Religion.

28

109.   SDUSD's Vaccination Roadmap, however, is not neutral because it denies any possibility of a religious exemption due to SDUSD's hostility towards, and distrust of, people of faith:

    a.  SDUSD implemented its mandate knowing that it would burden religious believers while exempting thousands of students for secular reasons. This intentional lack of concern for burdens unequally imposed on people of faith indicates hostility.

    b.  SDUSD then-Board President Barrera explained in an interview that SDUSD would not offer religious exemptions because "that creates kind of a loophole" and his fear that "large numbers" of people of faith would abuse that loophole. This indicates distrust of religious practices.

    c.  After imposing its vaccine mandate, SDUSD discovered that only 1.7% of its staff requested a religious exemption, showing that there need be no fear that people of faith would abuse a loophole. But SDUSD still chose not to offer religious exemptions. This indicates hostility to religion.

    d.  In response to this litigation, after the Ninth Circuit questioned the pregnancy exemption, SDUSD removed its discretionary exemption for pregnant students for the sole basis of retaining the ability to exclude religious students. This indicates hostility to religion.

110.   As a result, SDUSD's policy is not neutral, and SDUSD must meet strict scrutiny. But SDUSD does not have a compelling reason for its distinction between Plaintiffs' religious activity and similar activity. Further, SDUSD has not selected the means least restrictive of religious exercise in order to fulfill its interests.

111.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Vaccination Roadmap.

112.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Vaccination Roadmap.

113.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1021.5.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants and request the following relief:

A. An order and judgment declaring that the Vaccination Roadmap, facially and as-applied to Plaintiffs, violates the First Amendment to the U.S. Constitution;

B. An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing their unlawful policies against Plaintiffs, and from engaging in any practices or conduct that chills Plaintiffs' free exercise of religion;

C. Nominal and actual damages;

D. Attorneys' fees and costs; and

E. Such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 29, 2022          By: _____

Charles S. LiMandri
Paul M. Jonna
Mark D. Myers
Jeffrey M. Trissell
Robert E. Weisenburger
Milan L. Brandon II
Attorneys for Plaintiffs

# VERIFICATION OF JANE DOE

I, Jane Doe, am a plaintiff in this action. I have read the above Verified First Amended Complaint and know its contents. The information supplied in the foregoing is based on my own personal knowledge or has been supplied by my attorneys or other agents or compiled from available documents. The information in the foregoing document is true to the extent of my personal knowledge. As to the information provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, I do not have personal knowledge but made a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations, and believe it is true.

Thus, I am informed and believe that the matters stated in the foregoing document are true and on that ground certify or declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 19 day of April 2022, at San Diego, California.

Jane Doe

## VERIFICATION OF TIFFANY ROE

1

2     I, Tiffany Roe, am a plaintiff in this action. I have read the above Verified First

3 Amended Complaint and know its contents. The information supplied in the

4 foregoing is based on my own personal knowledge or has been supplied by my

5 attorneys or other agents or compiled from available documents. The information in

6 the foregoing document is true to the extent of my personal knowledge. As to the

7 information provided by my attorneys or other agents or compiled from available

8 documents, including all contentions and opinions, I do not have personal knowledge

9 but made a reasonable and good faith effort to obtain the information by inquiry to

10 other natural persons or organizations, and believe it is true.

11     Thus, I am informed and believe that the matters stated in the foregoing

12 document are true and on that ground certify or declare under penalty of perjury

13 under the laws of the United States and the State of California that the foregoing is

14 true and correct.

15     Executed this _19th_ day of April 2022, at San Diego, California.

16

17

          Tiffany Roe

18

19

20

21

22

23

24

25

26

27

28

VERIFIED FIRST AMENDED COMPLAINT

## VERIFICATION OF ANDREW POE

I, Andrew Poe, am a plaintiff in this action. I have read the above Verified First Amended Complaint and know its contents. The information supplied in the foregoing is based on my own personal knowledge or has been supplied by my attorneys or other agents or compiled from available documents. The information in the foregoing document is true to the extent of my personal knowledge. As to the information provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, I do not have personal knowledge but made a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations, and believe it is true.

Thus, I am informed and believe that the matters stated in the foregoing document are true and on that ground certify or declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 19 day of April 2022, at San Diego, California.

Andrew Poe

**CERTIFICATE OF SERVICE**

***John Doe, et al. v. San Diego Unified School District, et al.***

USDC Court Case No.: 3:21-cv-1809-CAB-LL

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **VERIFIED FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Mark R. Bresee, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
4275 Executive Square, Ste. 700
La Jolla, CA 92037
Tel: (858) 485-9526; Fax: (562) 653-3658
E-Mail: MBresee@aalrr.com
**Attorneys for Defendants**

__X__ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on this date following our ordinary practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

Executed on April 29, 2022, at Rancho Santa Fe, California.

_____
Kathy Denworth