UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT, et al.<br><br>　　　　　　　　　Defendants. | Case No.: 3:21-cv-1809-LL-MDD<br><br>**ORDER REGARDING PLAINTIFFS' SHOW CAUSE SUBMISSION REGARDING JUSTICIABILITY OF CASE [ECF No. 55];**<br><br>**ORDER DENYING AS MOOT PLAINTIFFS' MOTION TO CONTINUE PROCEEDING PSEUDONYMOUSLY [ECF No. 54]**<br><br>**ORDER DISMISSING AMENDED COMPLAINT** |

Pending before the Court is Plaintiffs' Response to the Court's Order to Show Cause re: Justiciability (ECF No. 55), and Defendants' Response to Plaintiffs' Order to Show Cause Submission. ECF No. 57. Plaintiffs also filed a Reply in Response to the Court's Order to Show Cause re: Justiciability. ECF No. 58. Based on the reasons set forth in this Order, the Court finds that the claims in Plaintiffs' operative Complaint (ECF No. 34) are

not ripe for adjudication, and that the Court lacks subject matter jurisdiction. Accordingly, this case is hereby **DISMISSED**.[1]

## I. BACKGROUND

The operative Complaint in this case contains five claims all of which allege that the San Diego Unified School District's vaccination requirement violates the Free Exercise Clause of the Free Exercise clause of the First Amendment to the United States Constitution. ECF No. 34 at ¶¶ 21-30. On September 28, 2021, Defendant San Diego Unified School District ("SDUSD") approved, via a document called a Vaccination Roadmap, a requirement that all students eligible for a fully FDA-approved COVID-19 vaccine receive all required doses of that vaccine by December 20, 2021, to attend school in-person and participate in extra-curricular activities. ECF No. 1 ¶¶ 31-34; ECF No. 34 ¶¶ 42-45. However, the vaccination requirement was never implemented. SDUSD delayed the implementation of the student vaccination requirement multiple times including in December 2021. ECF No. 38-2, Declaration of Lamont Jackson ("Jackson Decl.") ¶ 3 and Ex. A. On February 22, 2022, and on March 8, 2022, the SDUSD Board approved revisions to the student vaccination requirement including the implementation dates. Jackson Decl. ¶ 4 and Ex. A. On May 24, 2022, the SDUSD Board postponed the vaccination plan to at least July 2023. Jackson Decl. at ¶ 5 and Ex. A. The SDUSD Superintendent, whose duties include oversight of the planning, attainment, and implementation of a requirement that all district students and staff be vaccinated against the COVID-19 virus, stated in a signed declaration on June 1, 2022 that "[b]ased on the action of the Board of Education on May 24, 2022, [] there is no student vaccination requirement in the San Diego Unified School District, if there is ever a student vaccination requirement it will not be implemented prior

---

[1] Also before the Court is Plaintiffs' Motion to Continue Proceeding Pseudonymously (ECF No. 54), Defendants' Response thereto (ECF No. 56), and Plaintiffs' Reply (ECF No. 59). In light of the Court's Order dismissing the case for lack of subject matter jurisdiction, Plaintiffs' Motion to Proceed Pseudonymously is **DENIED AS MOOT**.

to July, 2023 [and] the nature and scope of the requirement will be based on the data and the conditions at the time of implementation." Jackson Decl. ¶¶ 1, 6.

On September 21, 2022, the Court issued an Order to Show Cause directing Plaintiffs to set forth why their claims are justiciable at this time. ECF No. 51. Plaintiffs timely submitted their response (ECF No. 55), and Defendants timely submitted their response thereto (ECF No. 57).

## II. DISCUSSION

### a. Ripeness

Notwithstanding that the Vaccination Roadmap has never been implemented in SDUSD and that there are no plans to implement it until at the earliest, July 2023, Plaintiffs still contend that they have standing and the issues are ripe. ECF No. 55 at 9-11. The Court is not persuaded. "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring . . . that claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "[R]ipeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler*, 598 F.3d at 1122. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Trans. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

"The central concern of the ripeness inquiry is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Chandler*, 598 F.3d at 1122-23; *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that my not occur as anticipated, or indeed may not occur at all"). "The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022).

    "Ripeness has two components: constitutional ripeness and prudential ripeness." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009). "The constitutional component of ripeness is a jurisdictional prerequisite," while the prudential component is not. *Id.* at 1005. (citations omitted). Like the "injury in fact" element of standing, constitutional ripeness is meant to ensure that the issues presented are concrete, rather than hypothetical. *Id.* When a dispute is dependent on "future contingencies that may or may not occur it may be too impermissibly speculative to present a justiciable controversy." *Id.* (internal quotation marks and citations omitted).

    In their respective briefing, Plaintiffs and Defendants address constitutional and prudential ripeness together. Plaintiffs argue that "this case is ripe because: (1) the issues in this case are ready for judicial decision because Defendants previously solidified their mandate into a binding policy, immediately enforceable; and (2) exclusion from school due to inability to be vaccinated, or violation of religious beliefs, are both severe hardships." ECF No. 55 at 11 (citing *Skyline, Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 752-53 (9th Cir. 2020); *Stormans Inc. v. Selecky*, 586 F.3d 1109, 1122-26 (9th Cir. 2009)). Defendants argue the claim is not ripe because "there is no student vaccination policy in place, [and] there is therefore currently no direct and immediate impact on any Plaintiff, no Plaintiff has to presently comply with any policy or requirement, and it is speculative to assert that they will ever have to comply with a policy and what form that policy may take." ECF No. 57 at 10.

    As an initial matter, the Court finds that Plaintiffs' claim is not constitutionally ripe. Here, the present controversy is hypothetical as there is no COVID-19 student vaccination requirement in effect at SDUSD. No vaccination requirement has ever been implemented, and the District has formally postponed any vaccination requirement until at least July 2023. Additionally, "it is undetermined whether there will ever be a student vaccination requirement [for COVID-19] in the San Diego Unified School District…." ECF No. 38-2, ¶ 6. "[I]f there is a student vaccination requirement in or after July 2023, the nature and scope of [any such] requirement will be based on the data and conditions at the time of

implementation." *Id.* This dispute is solely based on the "future contingency" that the vaccine policy will be reinstated, and such contingency is "too impermissibly speculative to present a justiciable controversy." *See In re Coleman*, 560 F.3d at 1005.

Both *Skyline* and *Stormans* are distinguishable. In *Skyline*, a challenged rule was already in effect and the court did not face hypothetical facts of a policy that may or may not be implemented. 968 F.3d 738, 752. The court reasoned in *Skyline* as follows:

> Skyline's challenge to the Coverage Requirement is fit for decision now. After the DMHC [California Department of Managed Health Care] formalized the Coverage Requirement by issuing the Letters, there was an immediate effect upon Skyline: its insurer promptly amended Skyline's plan.

*Id*. Similarly, in *Stormans*, the challenged rule was already in effect. The Court in *Stormans* reasoned as follows:

> Here, the record is admittedly sparse, but the circumstances presented by Appellees are not hypothetical. If a patient enters their pharmacies requesting Plan B, which the record reflects has occurred, Appellees will refuse to deliver the medication. . . Because there are no incomplete hypotheticals or open factual questions [] we hold that despite the preliminary nature of the record, Appellees' claims satisfy the requirements of prudential standing.

586 F.3d at 1126. Unlike in *Skyline* and *Stormans*, here the present controversy is hypothetical as there is no vaccination policy in place and no plans to implement one until, at the earliest, July 2023. Additionally, the parameters of any potential vaccine policy will be determined based on the ever-evolving COVID-19 pandemic and the science and data available at that time. Accordingly, the present controversy is not constitutionally ripe, and this Court lacks subject matter jurisdiction.

Additionally, this case is not prudentially ripe. Prudential ripeness requires an evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Ass'n of Irritated Residents v. United States EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (overruled on other grounds)). As to the fitness prong, "'[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Skyline Wesleyan Church*, 968 F.3d at 752. Thus, "a case is

more likely to be 'fit' if it involves pure legal questions that require little factual development." *In re Coleman*, 560 F.3d at 1009 (citations omitted). Regarding the hardship prong, a legal harm is required or "something that imposes a significant practical harm upon the plaintiff." *Colwell v. HHS*, 558 F.3d 1112, 1128 (9th Cir. 2009) (quoting *Natural Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004)). The hardship must be "immediate, direct, and significant." *Colwell*, F.3d at 1128 (quoting *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992)).

Here, Plaintiffs' claim does not meet the fitness prong because it requires "further factual development" because the vaccine mandate has never been implemented and may never be implemented. As to the hardship prong, Plaintiffs have not suffered an "immediate, direct, and significant" hardship. *Colwell*, F.3d at 1128 (citations omitted). Plaintiffs have never been "exclu[ded] from school" nor have their religious beliefs been violated because the vaccine mandate was never implemented. Accordingly, the present controversy is also prudentially unripe.

### b. Standing

"Ripeness and standing are closely related because they 'originate from the same Article III limitation.'" *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (citing *Susan B. Anthony List v. Driehause*, 134 S. Ct. 2334, 2341 n.5 (2014)). "Ripeness coincides squarely with standing's injury in fact prong.'" *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1189 (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). Thus, the analysis for ripeness and standing is materially the same. *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1189. To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The elements of standing must be supported in the same way as any other matter for which the plaintiff bears the burden of proof, "*i.e.*, with the manner and degree of evidence required at the

successive stages of the litigation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citing *Lujan*, 504 U.S. at 561).

Plaintiffs argue that they have "an injury in fact through the violation of their Free Exercise rights, requiring them to choose between abandoning their religious beliefs or keeping their minor children in school." ECF No. 55 at 10. Plaintiffs have never suffered an injury in fact because they have never been excluded from school, nor have their religious beliefs been violated because the vaccine mandate was never implemented. Plaintiffs also argue that they need injunctive relief because "Defendants intend to 'reinstate' their policy." *Id.* As set forth above, SDUSD has formally postponed any vaccination requirement until at least July 2023. The facts in this case would require the Court to speculate about whether Plaintiffs will ever be subject to a vaccine requirement for COVID-19 at SDUSD, and what the details of such a requirement may be. In sum, Plaintiffs' claim hangs on a future contingency that is too speculative to create a justiciable controversy and they lack standing to bring their claim.

### c. Voluntary Cessation Doctrine

Plaintiffs also argue that the voluntary cessation doctrine applies. ECF No. 55 at 11-16. Plaintiffs state that under the voluntary cessation doctrine, "once an action has commenced, it is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 12 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Defendants argue that the voluntary cessation doctrine does not apply because "for the doctrine to apply the cessation must be because of the litigation." ECF No. 57 at 14. Here, the Court finds that the voluntary cessation doctrine does not apply. The challenged policy in this case is merely hypothetical as it was never implemented and may never be implemented. Even if the SDUSD's board approval of the Vaccination Mandate was sufficient to trigger the voluntary cessation doctrine, "the voluntary cessation must have arisen because of the litigation." *Sze v. I.N.S.*, 153 F.3d 1005, 1008 (9th Cir. 1998) (citing *Public Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir.

1996))(abrogated on other grounds). Here, Defendants' decision to initially delay and eventually postpone and cancel the vaccination requirement was due to reasons other than the litigation, including the ever-evolving nature of the COVID-19 pandemic, actions by state and local agencies, etc. Accordingly, Plaintiffs' argument that the voluntary cessation doctrine applies is without merit.

### III.   CONCLUSION

For the reasons stated herein, is hereby **ORDERED** that the operative Complaint is **DISMISSED** for lack of subject matter jurisdiction. In light of the Court's Order dismissing the case for lack of subject matter jurisdiction, Plaintiffs' Motion to Proceed Pseudonymously (ECF No. 54) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated:  November 16, 2022

_____
Honorable Linda Lopez
United States District Judge